## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **Amelia Ingrao and Elisabeth Pacana,** | : | |
| | : | |
| | : | **CIVIL ACTION NO.** |
| *Plaintiffs* | : | |
| **v.** | : | |
| | : | **2:24-cv-01022-JHS** |
| **AddShoppers, Inc.,** | : | |
| **Nutrisystem, Inc., and** | : | |
| **Vivint, Inc.** | : | |
| | : | **(Oral Argument Requested)** |
| *Defendants* | : | |
| | : | |

### NUTRISYSTEM, INC.'S MOTION TO DISMISS THE COMPLAINT

Plaintiff Ingrao, a California resident and the only named plaintiff suing Nutrisystem, failed to allege facts establishing Nutrisystem violated the wiretapping and computer hacking statutes underlying her claims. The complaint also establishes that she cannot represent any class. Rather, Ingrao already is a member of two putative classes in a class action lawsuit her counsel in this case filed in California more than a year ago that alleges the same nationwide and California class claims. She therefore cannot represent any class here for this and many additional reasons. Accordingly, the Court should dismiss the complaint as to Nutrisystem pursuant to Federal Rule of Civil Procedure 12(b)(6). Alternatively, the Court should strike the class claims brought by Ingrao against Nutrisystem, and stay the litigation of her individual claims pending the outcome of the further-advanced California lawsuit. Nutrisystem respectfully requests oral argument on this motion.

### I.      INTRODUCTION

Ingrao is a California resident who visited Nutrisystem's website one time. (Compl. ¶¶ 6, 55.) She did not provide any personal information during her visit. (Id. at ¶ 55.) She later received

an email advertising Nutrisystem allegedly because AddShoppers a/k/a SafeOpt inserted a cookie into her browser during her Nutrisystem website visit. (Id. at ¶¶ 36–39, 57.)

Although the AddShoppers cookie allegedly allows AddShoppers to "monitor the user's browsing activity across the internet" and "track[] the user's activity on the website, including the user's detailed referrer Uniform Resource Locator ('URL')," Ingrao does not allege what information Nutrisystem captured. (Id. at ¶ 37.)  Instead, Ingrao merely alleges that AddShoppers' cookie "tracked Plaintiff Ingrao's precise webpage visit" on the Nutrisystem website. (Id. at ¶ 56.) She does not allege that she lost any money or property, or other personal injury by reason of the allegations in her complaint.  Nor does she allege any damage to her computer or anything else she used to access Nutrisystem's website.

Whether Ingrao even has standing is an open question.  Despite this, more than a year before Ingrao filed this lawsuit, her counsel had already filed suit against AddShoppers in a putative class action captioned *McClung v. AddShoppers*, No. 3:23-cv-01996 (N.D. Cal.) on April 24, 2023 (the "California Litigation"), wherein the plaintiffs raised California and nationwide class allegations identical to those raised here. (See complaint attached hereto as Exhibit 1.)[1]  Ingrao is a putative class member in the pending California Litigation, and the California Litigation is far more advanced than this one, including because in that case all defendants have answered, and the court has set discovery and class certification deadlines. (Exhibit 2, ECF Nos. 97, 105–07.)

Nonetheless, Ingrao alleges in this case that Nutrisystem violated the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. C.S. § 5701, *et seq.* ("WESCA"), the

---

[1]    On a 12(b)(6) motion to dismiss, the court may consider "allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citing 5A Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990)).

California Invasion of Privacy Act, Cal. Penal Code § 631 ("CIPA"), and the Computer Data Access and Fraud Act, Cal. Penal Code § 502 ("CDAFA"). Ingrao also proposes to represent a nationwide class and California subclass despite that the plaintiff in the California Litigation already seeks to represent her in identical classes, and Ingrao proposes to represent a subclass comprising only Pennsylvania residents notwithstanding that she is a California resident. (Ex. 1 at ¶¶ 7, 79, 89, 98; Compl. ¶ 6.) However, even assuming all of the allegations in Ingrao's complaint are true, her claims fail as a matter of law and she cannot represent any class.

Foremost, Ingrao's WESCA claim fails as a matter of law. Binding Third Circuit precedent require a plaintiff pursuing a WESCA violation like the one Ingrao pursues to allege that the defendant intercepted communications from plaintiff's browser located in Pennsylvania. *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 130 (3d Cir. 2022). However, Ingrao failed to allege, and cannot plausibly allege, that Nutrisystem – or AddShoppers – intercepted anything from her browser in Pennsylvania. Ingrao is a California resident, and she does not allege she or her computer were located in Pennsylvania when any defendant allegedly intercepted her information.

Ingrao's WESCA claim fails for additional reasons, and her CIPA claim fails for those same reasons. To maintain these claims, a plaintiff like Ingrao must allege that the defendant intercepted the "contents" of her communications. "Contents" comprise information that she purposefully conveys, such as her name and contact information as part of a substantive message inquiring about a product or service. But Ingrao does not allege that any defendant captured anything like that. Indeed, she admits that she did not provide *any* information during her Nutrisystem website visit. (Compl. ¶ 55.) Rather, she alleges that Nutrisystem and AddShoppers tracked her "precise webpage visit" which, as a matter of law, is not actionable under the law.

Ingrao also fails to allege facts necessary to establish numerous required elements to state a claim under CDAFA, a criminal computer hacking statute intended to punish behavior bearing

no resemblance to the facts alleged here.  Among other things, Ingrao does not allege that Nutrisystem or anyone else damaged her computer or any device she used to access Nutrisystem's website.

For any and all of these reasons, the Court should dismiss Ingrao's claims as to Nutrisystem.  However, if any of Ingrao's claims survive, the Court should strike the class claims brought by Ingrao.

*First*, certifying a nationwide class would require the Court to apply the wiretapping statutes of each of the 50 states.  This, however, would be unmanageable and violate Federal Rule of Civil Procedure 23(b)'s requirements for cohesiveness and superiority because there are material variations among the states' wiretapping laws. *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 602–03 (N.D. Cal. 2015).  These material variations thus preclude class certification. *Id.*

*Second*, Ingrao cannot maintain any claim under Pennsylvania or California law, nor is Ingrao a Pennsylvania resident, a requirement of the Pennsylvania subclass.  Thus, she cannot represent any nationwide class or subclass because she has no claim to pursue on behalf of any putative class member. *Zimmerman v. HBO Affiliate Grp.*, 834 F.2d 1163, 1169 (3d Cir. 1987) ("It is well settled that to be a class representative on a particular claim, the plaintiff himself must have a cause of action on that claim.").

Finally, if any claims remain then the first-filed doctrine requires staying this litigation because a previously-filed suit includes substantially overlapping subject matter and claims. *Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 220 (3d Cir. 2016).  Plaintiffs' counsel already filed a putative nationwide class action in another district more than a year ago alleging identical claims against AddShoppers and two other merchant websites. (See Ex. 1.)  The case before this Court is substantively identical—just with two different merchant defendants, Nutrisystem and Vivint—a distinction immaterial to warrant maintaining this case.  Indeed, plaintiffs Ingrao and Pacana are

already members of the putative nationwide class in the California Litigation and the continuation of this case will lead to unnecessary and costly duplication that can be easily avoided through a stay.

## II.   THE COURT SHOULD DISMISS INGRAO'S CLAIMS AS TO NUTRISYSTEM PURSUANT TO RULE 12(b)(6)

### A.   Legal Standard

Under Rule 12(b)(6), a complaint cannot survive dismissal without "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A complaint must plead factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (citation omitted).  While all inferences from the factual allegations of the complaint are drawn in the plaintiff's favor, legal conclusions "are not entitled to the assumption of truth." *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).  Ingrao cannot survive dismissal under Rule 12(b)(6) or these binding precedents.

### B.   Ingrao Fails to State a WESCA Claim (Count 1)

Ingrao's WESCA claim fails as a matter of law for two reasons: (1) Ingrao fails to allege that her communications were intercepted in Pennsylvania; and (2) Ingrao fails to allege that Nutrisystem captured any "contents" of her communications as required under WESCA.

#### 1.   *Ingrao fails to allege that her communications were intercepted in Pennsylvania.*

To state a claim under WESCA, Ingrao must show that her communications were intercepted from her browser located Pennsylvania. *Popa*, 52 F.4th at 130.

In *Popa*, Harriet Carter's website embedded third-party marketing company NaviStone's code onto its website so that NaviStone could place third-party cookies onto a user's browser. *Id.*

5

at 124–25.  When a consumer visited Harriet Carter's website, NaviStone's cookie would embed on the consumer's browser, and the cookie would relay the consumer's browsing activity to NaviStone. *Id.* at 125.  NaviStone then used this information to identify which of Harriet Carter's customers might want promotional mailings. *Id.*

The issue before the Third Circuit was where the interception occurred geographically, which was "important because Pennsylvania courts have declined to extend the WESCA to cover conduct wholly outside the Commonwealth." *Id.* at 130 (citing *Larrison v. Larrison*, 750 A.2d 895, 898 (Pa. Super. Ct. 2000)).  The Third Circuit found that in the case of third-party cookies placed by NaviStone onto a consumer's browser, the point of interception occurred at the plaintiff's browser, which is when the code told plaintiff's browser to send communications to NaviStone. *Id.* at 131.  The court noted, "we still don't know exactly where Popa's browser accessed the Harriet Carter website [… but] [t]he parties seem to assume this occurred in Pennsylvania," and remanded to the district court to determine whether there was a genuine issue of material fact about where the interception occurred. *Id.* at 131–32.

Ingrao's allegations track those in *Popa*, which warrants dismissal of this claim because no factual development is needed.  Ingrao alleges that Nutrisystem embedded AddShoppers' code into its website, which enables AddShoppers to place a third-party cookie onto Ingrao's browser. (Compl. ¶¶ 36–37.)  Next, Ingrao alleges that her "electronic communications are intercepted at the same time as their transmission." (Id. at ¶ 93.)  And, Ingrao alleges she is a California resident who only visited the Nutrisystem website one time. (Id. at ¶¶ 6, 55.)

Ingrao does not allege that she viewed Nutrisystem's website while she or her computer were in Pennsylvania.  And, assuming the truth of her factual allegations, the only reasonable inference is that the alleged interception of Ingrao's communications occurred in California where she resides and that her computer was located there when she accessed Nutrisystem's website.  As

such, she fails to state a claim under WESCA because the interception did not occur in Pennsylvania accepting all the allegations in her complaint as true. *Popa*, 52 F.4th at 130.

> 2.    *Ingrao's WESCA claim fails as a matter of law because Nutrisystem did not capture any "content."*

Ingrao's WESCA claim also fails as a matter of law because she failed to allege that Nutrisystem – or any other defendant in this litigation – captured any "content" from her.

To state a claim under WESCA, Ingrao must show that the "contents" of her communications were intercepted. 18 Pa. C.S. § 5702 (defining "intercept" as "[a]ural or other acquisition of the *contents* of any wire, electronic or oral communication through the use of any electronic, mechanical or other device") (emphasis added).

"[T]he *contents* of any wire, electronic or oral communication" means "any information concerning the substance, purport, or meaning of that communication." *Id.* at § 5702 (emphasis added). Pennsylvania's "contents" requirement tracks the federal Wiretap Act. *Popa*, 52 F.4th at 126 n. 2 (citing the federal Wiretap Act, 18 U.S.C. § 2510(4)); *see also Commonwealth v. Spangler*, 570 Pa. 226, 231, 809 A.2d 234, 238 (2002) (noting WESCA is "generally modeled after the federal analogue, 18 U.S.C. §§ 2510–2520").

Notably, Congress in 1986 removed from the federal statute the phrase "information concerning the identity of the parties" from the definition, meaning that identifying information no longer constitutes "contents" covered by the statute. 18 U.S.C. § 2510(8) (1986). Thus, "under the current version of the statute, personally identifiable information that is automatically generated by the communication but that does not comprise the substance, purport, or meaning of that communication is not covered by the Wiretap Act." *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1062 (N.D. Cal. 2012).

Thus, "contents" under WESCA is limited to "the intended message conveyed by the communication." *Cook v. GameStop, Inc.*, No. 2:22-CV-1292, 2023 WL 5529772, at *6 (W.D. Pa. Aug. 28, 2023) (quoting *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014) (interpreting Federal Wiretap Act)). And, web tracking information is not "contents" and thus not actionable. *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 137 (3d Cir. 2015); *see also In re Nickelodeon Consumer Priv. Litig.*, No. CIV.A. 12-07829, 2014 WL 3012873, at *15 (D.N.J. July 2, 2014) (IP and email addresses are not "contents" under the federal Wiretap Act, but rather are record information because "URLs […] have less in common with the spoken words of a telephone call than they do with the telephone number dialed to initiate the call").

In *GameStop,* plaintiff alleged that a third-party code tracked her website visit by capturing "mouse movements, clicks, keystrokes (such as text being entered into an information field or text box), URLs of web pages visited, and/or other electronic communications in real-time." 2023 WL 5529772, at *6. However, such allegations "lack[ed] the critical details for the Court's [WESCA] analysis of the type of information allegedly captured." *Id.* at *7. Without such specificity in the allegations, the court found none of those items constituted the "content" of "communications" under WESCA. *Id.* at *7–9. Indeed, mouse movements and clicks "could be considered the cyber analog to record information [GameStop] could have obtained through a security camera at a brick-and-mortar store," which is not actionable under WESCA. *Id.* at *8 (citing *Goldstein v. Costco Wholesale Corp.*, 559 F. Supp. 3d 1318, 1321–22 (S.D. Fla. 2021) (dismissing online wiretapping claims stating, "Just because Plaintiff intended to communicate with Defendant's website […] does not mean his communications revealed any substance")). Thus, the court dismissed plaintiff's WESCA claim. *Id.* at *10.

Here, Ingrao's allegation that AddShoppers tracks her "precise webpage visit" is exactly the type of allegation deemed insufficient in *GameStop*. (Compl. ¶ 56); 2023 WL 5529772, at *7.

Ingrao fails to allege any "intended message conveyed" by her that could amount to "contents" of a communication that were improperly captured. *GameStop*, 2023 WL 5529772, at *6. In fact, she alleges the opposite: she "never provided any personal information to" Nutrisystem. (Compl. ¶ 55.)

Moreover, Ingrao's allegation that AddShoppers "tracked [her] precise website visit" fails to describe or define any information allegedly intercepted by defendants, and therefore, just as in *Gamestop*, Ingrao's allegations are insufficient to state a claim because they lack "critical necessary details for the Court's analysis of the type of information allegedly captured." 2023 WL 5529772, at *7.

Ingrao's allegation that she received an email after visiting Nutrisystem's site also does not mean that "contents" were intercepted or otherwise save her claim from dismissal. At most, this allegation leads to the inference that Nutrisystem acquired her email address. But an email address that Ingrao did not herself provide is merely identifying "record information" that is not actionable. *In re Zynga Priv. Litig.*, 750 F.3d at 1108. Nor is the general allegation that AddShoppers "tracks the user's activity on the website, including the […] URL" (Compl. ¶ 37) an allegation that "contents" were captured because this allegation does not claim that Ingrao provided any information via a search query or anything else during her Nutrisystem website visit. *Id.* at 1109 ("Under some circumstances, a user's request to a search engine for specific information could constitute […] contents of a communication. But the referrer header information at issue here [URL] includes only basic identification and address information [and therefore not contents].").

Accordingly, the Court should dismiss Ingrao's WESCA claim for the independent reason that she failed to allege Nutrisystem intercepted or captured any "contents."

### C.       Ingrao Fails to State a CIPA Claim (Count 4)

Ingrao's CIPA claim, brought against AddShoppers for direct liability and against Nutrisystem for aiding and abetting liability pursuant to Section 631(a), fails to state a claim as to either party.  The Court should therefore dismiss the CIPA claim as to Nutrisystem.

Courts in the Third and Ninth Circuits analyze CIPA claims under the same standards as the federal Wiretap Act. *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 276 (3d Cir. 2016) (affirming dismissal of CIPA claim for same reasons under the federal wiretapping act); *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d at 152 (analogizing CIPA to the federal Wiretap Act) (citing *Tavernetti v. Superior Court*, 22 Cal.3d 187, 148 Cal.Rptr. 883, 583 P.2d 737, 739 (1978)); *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 954 (N.D. Cal. 2014) ("The analysis for a violation of CIPA is the same as that under the federal Wiretap Act."); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020) ("Courts perform the same analysis for both the Wiretap Act and CIPA regarding the party exemption.").

Further, courts interpret CIPA Section 631(a) to include separate clauses that cover "three distinct and mutually independent patterns of conduct: (1) intentional wiretapping, (2) willfully attempting to learn the contents or meaning of a communication in transit over a wire, and (3) attempting to use or communicate information obtained as a result of engaging in either of the two previous activities." *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1134 (E.D. Cal. 2021) (quoting *Tavernetti*, 22 Cal. 3d at 192) (internal quotation marks omitted).

Additionally, Section 631(a) provides for liability "for anyone 'who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the' other three bases for liability." *Id.* (quoting Cal. Penal Code § 631(a)).  However, a claim under this fourth clause can only survive if a predicate violation for clause one, two, or three is stated against the primary violator –here AddShoppers. *Garcia v. Build.Com, Inc.*, No. 22-cv-

10

1985-DMS-KSC, 2024 WL 1349035, at *5, 7 (S.D. Cal. Mar. 29, 2024) (dismissing CIPA claim against alleged aider and abettor where plaintiff failed to state claim against alleged primary violator).

As shown below, Ingrao does not state a claim under any of these clauses.

> 1.     *Ingrao cannot state a claim under clause two of CIPA.*

Ingrao's CIPA claim fails as to AddShoppers and Nutrisystem because she does not allege that "contents" of her communications were intercepted by AddShoppers or Nutrisystem.  Further, under the party exception to CIPA, both Nutrisystem and AddShoppers are exempt from liability because they are both parties to the communications.  And without a claim for direct liability against AddShoppers, Ingrao's claim against Nutrisystem for aiding a CIPA claim also fails.

> a.     <u>Ingrao fails to allege that AddShoppers or Nutrisystem intercepted any "contents" of communications covered by CIPA</u>.

The second clause of Section 631(a) subjects to liability any person "who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state." Cal. Penal Code § 631(a).  Ingrao fails to allege that any "contents" of her communications were "read or attempted to be read" by anyone.

As with WESCA, under CIPA, "'[c]ontents' refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication" known as "record information." *In re Zynga Priv. Litig.*, 750 F.3d at 1106.  IP and email addresses are not "contents." *In re Nickelodeon Consumer Priv. Litig.*, 2014 WL 3012873, at *15; *see In re Google Inc. Cookie*

*Placement Consumer Priv. Litig.*, 806 F.3d at 137 (noting URLs are not contents when they are dialing, routing, addressing, or signaling information).

As shown in Section II.B.2., Ingrao alleges that she "never provided any personal information" to Nutrisystem. (Compl. ¶ 55.)  Further, even if "SafeOpt [AddShoppers] tracked [her] precise webpage visit" (id. at ¶ 56) as Ingrao claims, she fails to allege how this precise tracking would constitute the contents of her communications and not just "dialing, routing, addressing, or signaling" record information because Ingrao makes no allegations of communicating any content during her Nutrisystem website. *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d at 137; *In re Nickelodeon Consumer Priv. Litig.*, 2014 WL 3012873, at *15 (dismissing federal wiretapping claim because "Plaintiffs fail to allege that Google intercepted the 'contents' of an electronic communication" when Google tracked the URL input by plaintiff).  Thus, as with her WESCA claim, Ingrao fails to allege that the "contents" of her communications were read in violation of CIPA, warranting dismissal of this claim.

> b.   The party exception exempts Nutrisystem from liability.

A party to a communication is exempt from liability under CIPA. *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 804 F.3d at 151 (affirming the district court's dismissal of the § 631(a) claim because "Google was itself a party to all the electronic transmissions that are the bases of the plaintiffs' wiretapping claims"); *Williams v. What If Holdings, LLC*, No. C 22-03780 WHA, 2022 WL 17869275, at *3 (N.D. Cal. Dec. 22, 2022) ("a party to the communication is exempt from liability under CIPA").

Here, Ingrao alleges that she visited Nutrisystem's website. (Compl. ¶ 55.)  Nutrisystem was a party to any communications as the website host, and CIPA's party exception therefore exempts Nutrisystem from liability.  Accordingly, Ingrao cannot state a claim as a matter of law under clause two of Section 631(a) against Nutrisystem. *Williams*, 2022 WL 17869275, at *3.

c.   The party exception exempts AddShoppers from liability.

Under Third Circuit precedent, AddShoppers is also a party to the communications and therefore exempt from liability under CIPA.  Ingrao alleges "Third-party cookies […] are those created by domains other than the one the user is visiting," and "[t]he cookie is hiding on the user's browser and automatically sends information to AddShoppers' SafeOpt domain 'shop.pe.'" (Compl. ¶¶ 35–36.)  With the cookie installed, "AddShoppers can monitor the user's browsing activity across the internet." (Id. at ¶ 37.)  Ingrao's allegations therefore amount to AddShoppers installing a third-party cookie on Ingrao's web browser and using that third-party cookie to communicate with itself.   Under binding Third Circuit precedent, such allegations make AddShoppers a party to the allegedly intercepted communications such that AddShoppers falls squarely within CIPA's party exception and is exempt from liability as a result.

The Third Circuit's decision in *In re Google Inc. Cookie Placement Consumer Privacy Litig.* is dispositive. 805 F.3d at 143, 152.  There, defendants installed code on first-party host websites that would allow Google and the defendant internet marketers to display third-party advertisements to website visitors. *Id.* at 130.  Defendants then delivered their advertisements directly to users on the host website, directly from their own servers. *Id.* at 131.  The complaint alleged, "[i]n the process of injecting the advertisements into first-party websites, the third-party advertising companies also place third-party cookies on user's computing devices" which "allow these companies to keep track of and monitor an individual user's web activity." *Id.* (quoting complaint ¶ 45).  The Third Circuit found that the defendants were parties to the communications as intended recipients of the transmission at issue, "*i.e.*, GET requests that the plaintiffs' browsers sent directly to the defendants' servers," making multiple defendants parties to the communication and therefore not violating the federal Wiretap Act (or CIPA). *Id.* at 142–43, 152.  The Third Circuit thus affirmed dismissal of the Wiretap Act and CIPA claims.

13

The same reasoning applies here and the same result – dismissal – should follow.  Ingrao alleges that AddShoppers installs a third-party cookie on consumers' browsers and then uses that cookie to communicate with itself at its own servers. (Compl. ¶¶ 35–37.)   Accordingly, AddShoppers was the intended recipient of the communications such that the party exception applies, exempting AddShoppers from CIPA liability. *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 805 F.3d at 142–43.  And, without a claim for direct liability against AddShoppers, Ingrao's claim against Nutrisystem for aiding a CIPA claim also fails. *Garcia*, 2024 WL 1349035, at *7.

> 2.    *None of the other clauses of CIPA apply.*

Ingrao also fails to state a claim under any of the other clauses of Section 631(a).

The first clause of Section 631(a) concerns telephonic wiretapping only and does not apply to internet communications. *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 825 (N.D. Cal. 2020).  No allegations of telephonic wiretapping appear in the complaint, and therefore Ingrao cannot state a claim under clause one.

The third clause of Section 631(a) requires the use of information obtained through clauses one or two of Section 631(a). *Id.* at 827.  Because Ingrao does not state a clause one or clause two violation for the reasons set forth above, Ingrao cannot state a clause three violation. *Garcia v. Build.Com, Inc.*, No. 22-cv-1985-DMS-KSC, 2024 U.S. Dist. LEXIS 58421, at *19 (S.D. Cal. Mar. 29, 2024) ("Here, Plaintiff has failed to allege a predicate violation of Clauses One or Two, so she necessarily fails to allege a predicate violation of Clause Three.").

Because Ingrao failed to state a direct claim against AddShoppers under clauses one, two, and three, she also fails to state a claim against Nutrisystem for aiding and abetting a CIPA violation under the fourth clause of Section 631(a). *Garcia*, 2024 WL 1349035, at *7 (dismissing CIPA claim against alleged aider and abettor where plaintiff failed to state claim against alleged

primary violator and holding "Accordingly, because Plaintiff has failed to allege a predicate violation under Clauses One, Two, or Three, Plaintiff has failed to plausibly allege an aiding-abetting claim against Defendant under Clause Four"); *Martin v. Sephora USA Inc.*, No. 1:22-cv-01355-JLT-SAB, 2023 WL 2717636, at *12 (E.D. Cal. Mar. 30, 2023) (same).  Accordingly, the CIPA claim should be dismissed.

### D.      Ingrao Fails to State a CDAFA Claim (Count 5)

Attempting to shove a square peg through a round hole, Ingrao brings a CDAFA claim against Nutrisystem and AddShoppers, ignoring that CDAFA was designed and intended to address entirely different conduct: criminal hackers who damage computer systems or the data stored therein.  "The CDAFA was originally enacted to combat 'computer crime' and hacking." *Heiting v. Taro Pharms. USA*, Inc., No. 2:23-CV-08002-SPG-E, 2023 WL 9319049, at *6 (C.D. Cal. Dec. 26, 2023).  Indeed, "[o]ne of the legislative purposes of Penal Code section 502 was 'to deter and punish ... browsers and hackers—outsiders who break into a computer system to obtain or alter the information contained there....'" *People v. Gentry*, 234 Cal. App. 3d 131, 141, 285 Cal. Rptr. 591, 597 (Ct. App. 1991) (citing *Mahru v. Superior Court* (1987) 191 Cal.App.3d 545, 550, 237 Cal.Rptr. 298).   As courts have further explained, "[t]his need for 'sanctions against unauthorized intrusions into computer systems' was due to an 'increase in the incidence of misuse and intrusions by unauthorized individuals....'" *Id.* (citing *Mahru*, 191 Cal.App.3d at 550, 237 Cal.Rptr. 298, quoting from a legislative declaration of findings and purpose accompanying a 1984 amendment to section 502); *see also Smartrise Eng'g v. Meline*, No. 34-2021-00308769-CU-BC-GDS, 2022 Cal. Super. LEXIS 23893, at *19–20 (Cal. Sup. Ct. Apr. 7, 2022) (citing *Gentry* and dismissing a CDAFA claim because "Plaintiff does not allege that Defendant was an outsider or hacker" or that he altered, damaged, deleted, or destroyed the data).

Ingrao does not allege that any defendant hacked her computer or computer system, or that defendants engaged in a scheme to defraud, deceive or extort Ingrao, as contemplated by the statute and its legislative intent.  Instead, Ingrao recites provisions of the CDAFA without any factual support to state a claim and fails to recite essential elements, warranting dismissal of her claim.

> 1.    *Ingrao fails to allege she is an owner or lessee who suffered a cognizable damage or loss under Section 502(e)(1).*

The CDAFA requires that the "owner or lessee of the computer, computer system, computer network, computer program, or data" suffer "damage or loss" as a prerequisite to bringing a claim. Cal. Penal Code § 502(e)(1).  Thus, in *Wesch v. Yodlee, Inc.*, No. 20-CV-05991-SK, 2021 WL 1399291 (N.D. Cal. Feb. 16, 2021), the court dismissed a CDAFA claim under Section 502(e)(1) where plaintiffs failed to allege "that the data incurred any damage or loss." *Id.* at *7.  Likewise, the court in *In re Google Android Consumer Priv. Litig.*, No. 11-MD-02264 JSW, 2013 WL 1283236 (N.D. Cal. Mar. 26, 2013) dismissed plaintiffs' CDAFA claim because "the allegations regarding the diminished value of Plaintiff's PII [personally identifying information] are not sufficient to allege damage or loss under the CDAFA." *Id.* at *11.

Ingrao similarly fails to adequately allege any "damage or loss."  The complaint contains no allegation of damage in the CDAFA claim, and only contains a rote recitation of "loss," stating, "AddShoppers has caused loss to Plaintiff and the class members in an amount to be proven at trial." (Compl. ¶ 146.)  This is a bare legal conclusion that fails to include specific facts that allege a loss under the CDAFA. *Doe v. Meta Platforms, Inc.*, No. 22-cv-03580-WHO, 2023 WL 5837443, at *9 (N.D. Cal. Sept. 7, 2023) (finding no cognizable form of loss or damage actionable under the CDAFA where plaintiffs only claimed damage based on privacy violations); *In re Google Android Consumer Priv. Litig.*, 2013 WL 1283236, at *11; *see also Santiago*, 629 F.3d at 130 (legal conclusions "are not entitled to the assumption of truth").  Ingrao also fails to allege she

was the owner or lessee of the computer, computer system, computer network, computer program, or data.  Thus, Ingrao failed to allege prerequisite elements of damage or loss under Section 502(e)(1) and the claim should be dismissed. *Wesch*, 2021 WL 1399291, at *7 (dismissing CDAFA claim for failing to allege essential elements).

        2.        *Ingrao fails to allege alteration or deletion of data, or any other misuse of data covered under Section 502(c)(1).*

Ingrao fails to state a claim under Section 502(c)(1), which punishes anyone who "[k]nowingly accesses and without permission alters, damages, deletes, destroys, or otherwise uses any data, computer, computer system, or computer network in order to either (A) devise or execute any scheme or artifice to defraud, deceive, or extort, or (B) wrongfully control or obtain money, property, or data." Cal. Penal Code § 502(c)(1).

In *Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*, 315 F. Supp. 3d 1147 (C.D. Cal. 2018), the court held that plaintiff failed to state a section (c)(1) claim because that section "require[s] that the Defendants have altered, damaged, deleted, or destroyed the data in some way," but plaintiff had only conclusorily alleged damage "without providing facts to substantiate the claimed legal conclusions." *Id.* at 1175.

Here, Ingrao alleges that "AddShoppers has violated California Penal Code § 502(c)(1) by knowingly and without permission altering, accessing, and using Plaintiff and class members' personally identifiable data to execute a scheme to defraud consumers by using and profiting from the sale of their personally identifiable data, thereby depriving them of the value of their personally identifiable data." (Compl. ¶ 140.)  As in *Ticketmaster*, this is but a rote legal conclusion that "tracks the language of the statute itself" and is thus insufficient to state a claim under Section (c)(1). 315 F. Supp. 3d at 1175.  Nor does "or otherwise uses" in Section 502(c)(1) prohibit "anything other than use that is similar to alteration, damage, deletion, or destruction," such that

Ingrao cannot state a claim by alleging that her data was merely used without also alleging alteration, damage, or deletion. *Id.* at 1175 n.5.  Without alleging alteration, damage, or deletion of data, Ingrao fails to allege facts to support an essential element of her Section 502(c)(1) claim and thus the claim fails.

> ### 3.   Ingrao fails to allege access without permission under Sections 502(c)(1)–(2) and (6)–(7).

Ingrao fails to allege that defendants acted "without permission" as defined and required to state a claim under the CDAFA. Cal. Penal Code § 502(c)(1)–(7) (all requiring defendant to act "without permission"); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1098–1099 (N.D. Cal. 2015) (noting that California state courts have yet to interpret the phrase "without permission").

A defendant acts "'without permission' when [it] 'circumvent[s] technical or code-based barriers in place to restrict or bar a user's access.'" *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 950 (N.D. Cal. 2014) (quoting *Facebook v. Power Ventures, Inc.*, 844 F. Supp. 2d 1025, 1036 (N.D. Cal. 2012)).  "[T]he mere fact that a plaintiff does not consent to an action does not create liability under the CDAFA." *Gutierrez v. Converse Inc.*, No. 223CV06547RGKMAR, 2023 WL 8939221, at *4 (C.D. Cal. Oct. 27, 2023).

In *Gutierrez v. Converse Inc.*, the plaintiff alleged that defendant's code "embeds content from another website" and "intercepts the inquiries that consumers believe are being sent directly" to the website to another agent of defendant via chatbot technology. 2023 WL 8939221, at *4.  In finding plaintiff had could not maintain her CDAFA claim, the court noted "Plaintiff alleges that Defendant acted without her permission in the ordinary sense," but without any allegations that defendant overcame technical or code-based barriers, plaintiff failed to allege that it was "without permission" as required by the CDAFA. *Id.*

In addressing Ingrao's claims, the Court should follow the "cardinal canon of statutory construction that statutes should be interpreted harmoniously with their dominant legislative purpose," which, in the case of the CDAFA, is to protect consumers from hackers. *Spilker v. Shayne Lab'ys, Inc.*, 520 F.2d 523, 525 (9th Cir. 1975); *Gentry*, 234 Cal. App. 3d at 141.  Here, Ingrao does not allege that defendants overcame any sort of a "code-based barrier" or took any other action to infiltrate her computer or data that was intended to be covered by CDAFA.  Thus, Ingrao fails to allege that defendants acted without permission within the meaning of the CDAFA, and consequently fails to state a CDAFA claim. *Gutierrez*, 2023 WL 8939221, at *4; *see also Heiting*, 2023 WL 9319049, at *6.

> 4.     *Ingrao fails to allege the introduction of a computer contaminant under Section 502(c)(8).*

Section (c)(8) creates liability for any person who "knowingly introduces any computer contaminant into any computer, computer system, or computer network." Cal. Penal Code § 502(c)(8).  A computer contaminant is:

> any set of computer instructions that are designed to modify, damage, destroy, record, or transmit information within a computer, computer system, or computer network without the intent or permission of the owner of the information.  They include, but are not limited to, a group of computer instructions commonly called viruses or worms, that are self-replicating or self-propagating and are designed to contaminate other computer programs or computer data, consume computer resources, modify, destroy, record, or transmit data, or in some other fashion usurp the normal operation of the computer, computer system, or computer network.

Cal. Penal Code § 502(b)(12).  Accordingly, "the section on 'computer contaminants' appears to be aimed at 'viruses or worms,' and other malware that usurps the normal operation of the computer or computer system." *In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2011 WL 4403963, at *13 (N.D. Cal. Sept. 20, 2011).

Ingrao does not allege that the third-party cookie used by AddShoppers functions as a virus, a worm, or other malware that usurps the normal operation of a computer.  Indeed, Ingrao includes

no allegations that her computer acted in any way other than how it normally should operate. Ingrao merely includes the rote legal conclusion that AddShoppers "knowingly and without permission introduc[ed] a computer contaminant into the transactions" in the form of a third-party cookie (Compl. ¶ 144), without alleging that the cookie usurped the normal operation of her computer or otherwise explaining how the cookie constituted a "contaminant" under the CDAFA. Accordingly, this claim should be dismissed. *In re iPhone Application Litig.*, 2011 WL 4403963, at *13 (dismissing CDAFA claim for failure to allege a computer contaminant that usurped normal activity).

### III.     ALTERNATIVELY, THE COURT SHOULD STRIKE INGRAO'S CLASS CLAIMS PURSUANT TO RULE 12(f)

#### A.     Legal Standard

Courts possess "considerable discretion in disposing of a Rule 12(f) motion to strike," whose purpose is "to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *Zarichny v. Complete Payment Recovery Servs., Inc.*, 80 F. Supp. 3d 610, 615 (E.D. Pa. 2015) (internal citations omitted).   A court may grant a motion to strike class allegations "if class treatment is evidently inappropriate from the face of the complaint." *Id.* (citing *Landsman & Funk PC v. Skinder–Strauss Assocs.*, 640 F.3d 72, 93 n. 30 (3d Cir. 2011) (the court may determine class certification before discovery when the "complaint itself demonstrates that the requirements for maintaining a class action cannot be met")).

#### B.     The Nationwide Class is Improper and Should be Stricken

If any of Ingrao's individual claims survive dismissal, the Court should nonetheless strike the nationwide class.   The complaint contains no federal cause of action, so a nationwide class would require the application of the laws of 50 individual states, many of which differ materially

from one another, and thus run afoul of Federal Rule of Civil Procedure 23(b)'s requirements for cohesiveness and superiority.

In *In re Yahoo Mail Litig.*, 308 F.R.D. 577 (N.D. Cal. 2015), the court declined to certify a nationwide CIPA class for this very reason. There, the court's choice of law analysis showed that California had no interest in "applying CIPA to protect non-residents when the stated purpose of the law is to protect the privacy right of Californians." *Id.* at 604. Similarly, "the home states of non-California class members have a significant interest in applying their own wiretapping laws to their residents." *Id.* at 605. The court thus found that a nationwide class would require application of the laws of 50 states, but "material differences [exist] between CIPA and the wiretapping statutes of the other 49 states"; for example, some states exclude email from their wiretapping statutes and some states only require single party consent. *Id.* at 602, 605. The court accordingly found "a nationwide class would not satisfy the cohesiveness requirement of Rule 23(b)(2)." *Id.* at 606; *see also James v. Walt Disney Co.*, No. 23CV02500EMCEMC, 2023 WL 7392285, at *2 (N.D. Cal. Nov. 8, 2023), *motion to certify appeal denied*, No. 23CV02500EMCEMC, 2024 WL 664811 (N.D. Cal. Feb. 16, 2024) (dismissing and/or striking the nationwide class and leaving a California subclass for the CIPA claim and a Pennsylvania subclass for the WESCA claim).

The same reasoning applies here. Plaintiffs seek to certify a nationwide class under CIPA, WESCA, and CDAFA, but analogous laws in the other 48 states differ materially. Additionally, each state has an interest in applying its own wiretapping statute, and that the material differences among the states make a nationwide class unmanageable because individualized issues of law will predominate. Where, as here, it is plain from the face of the pleadings that a nationwide class

21

would be inappropriate, the Court should exercise its discretion to streamline the proceedings and conserve judicial resources by striking the nationwide class now. *Zarichny*, 80 F. Supp. 3d at 615.

### C.    The Pennsylvania Subclass Should be Stricken as to Nutrisystem

Ingrao brings her WESCA claim against Nutrisystem "on behalf of a nationwide class" (Compl. ¶ 82), which fails for the reasons set forth above, "or, in the alternative, on behalf of the Pennsylvania Subclass." (Id. at Count 1.)   But Ingrao cannot bring a claim on behalf of the Pennsylvania subclass.  The Pennsylvania subclass is defined as:  "All Pennsylvania residents who had their personal information collected by AddShoppers and whose online activity was tracked by AddShoppers ('Pennsylvania Subclass')." (Id. at ¶ 72.)  Ingrao is a resident of California, not Pennsylvania. (Id. at ¶ 6.)  Therefore, Ingrao cannot bring a claim on behalf of a Pennsylvania subclass because she is not a member of the Pennsylvania subclass. *Sosna v. Iowa*, 419 U.S. 393, 403 (1975) ("A litigant must be a member of the class which he or she seeks to represent."); *see also* Fed. R. Civ. P. 23(a).

### D.    The California Subclass Should be Stricken as to Nutrisystem

Binding Third Circuit precedent holds that where a named plaintiff cannot state a claim, that plaintiff also cannot meet the typicality requirement of Rule 23 to represent a class. *Zimmerman.*, 834 F.2d at 1169 ("It is well settled that to be a class representative on a particular claim, the plaintiff himself must have a cause of action on that claim.").  Because Ingrao does not state a CIPA or CDAFA claim against Nutrisystem for the reasons set forth above in Sections II.C.–D., the corresponding California subclass claims should also be stricken for these counts if for some reason her Pennsylvania claim survives.

### IV.    THE FIRST-FILED DOCTRINE WARRANTS A STAY

If the Court does not dismiss all of Ingrao's claims, then the Court should stay her remaining claims pending the resolution of the first-filed California Litigation.

Courts have broad discretion to manage cases to avoid wasteful and duplicative litigation. *Colorado River Water Cons. Dist. v. United States*, 424 U.S. 800, 817 (1976); *Bechtel Corp. v. Local 215, Laborers' Int'l Union of N.A., AFL-CIO*, 544 F.2d 1207, 1215 (3d Cir. 1976) (recognizing that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself"). One judicial tool to avoid wasteful and duplicative litigation is the "first-filed" doctrine, which recognizes "when duplicative lawsuits are filed successively in two different federal courts, the court where the action was filed first has priority." *Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 220 (3d Cir. 2016).

The first-filed doctrine "encourages judicial administration and promotes comity among federal courts of equal rank" and gives courts the power "to enjoin the subsequent prosecution of proceedings involving the same parties and the same issue already before another district court." *E.E.O.C. v. Univ. of Pennsylvania*, 850 F.2d 969, 971 (3d Cir. 1988), *aff'd*, 493 U.S. 182 (1990). "The applicability of the first-filed rule is not limited to mirror image cases where the parties and the issues perfectly align" but also applies "where the subject matter of the later file case substantially overlaps with that of the earlier one." *Panitch v. Quaker Oats Co.*, No. CV 16-4586, 2017 WL 1333285, at *2 (E.D. Pa. Apr. 5, 2017) (internal quotation omitted). The classes, rather than the class representatives, are compared. *Id.* at *4.

Here, plaintiffs Ingrao and Pacana are both already members of a putative nationwide class, and plaintiff Ingrao is already a member of a putative California subclass, in the first-filed California Litigation. That case has identical class definitions to this one: "All persons who had their personal information collected by AddShoppers and whose online activity was tracked by AddShoppers (the 'Class')" (Compare Ex. 1 at ¶ 79 with Compl. ¶ 72), and "All California residents who had their personal information collected by AddShoppers and whose online activity

23

was tracked by AddShoppers (the 'California Subclass')." (Compare Ex. 1 at ¶ 79 with Compl. ¶ 72.)  Therefore, when the classes are compared under the first-filed rule, "the subject matter of the later file case substantially overlaps with that of the earlier one." *Panitch*, 2017 WL 1333285, at *2.  By plaintiffs' own allegations, defendants Nutrisystem and Vivint also fit into the California Litigation's definition of "John Doe Company" defendants, who allegedly "collected and provided Plaintiffs' personal information to AddShoppers' Data Co-Op *or participated in the Data Co-Op*." (Ex. 1 at ¶ 13 (emphasis added).)

The presence of a Pennsylvania subclass in this lawsuit is insufficient, by itself, to separately maintain this litigation because the California Litigation seeks to certify a nationwide class. (Ex. 1 at ¶ 79).  The California Litigation's complaint contains no federal causes of action, so plaintiff there must seek to certify a nationwide class based on individual state wiretapping laws, including WESCA.  Thus, all claims alleged here already are covered in the California Litigation, and the class definitions and allegations are otherwise virtually identical, reflecting plaintiffs' inappropriate attempt at two chances for class certification in two different circuits, warranting either a dismissal of the class allegations herein, or at least a stay. *Mazzei v. Heartland Payment Sys., LLC*, No. 20CV14929RMBSAK, 2023 WL 6121318, at *7 (D.N.J. Sept. 19, 2023) ("The only conclusion the Court can draw is that the Story plaintiffs' decision to carve-out the New Jersey class and institute a separate and virtually identical class action in this Court with a New Jersey subclass was an effort to have two chances at class certification.  The Court will not tolerate a result that rewards such tactics.").

Nor is this complaint the superior method for "fairly and efficiently adjudicating the controversy" as required by Rule 23(b)(3), when the first-filed California Litigation in which plaintiffs are already putative class members is so much further along. *See* Fed. R. Civ. P. 23(b)(3)(B) (listing as one of the factors for superiority "the extent and nature of any litigation

concerning the controversy already begun by or against class members"); *Shasta Linen Supply, Inc. v. Applied Underwriters, Inc.*, No. 2:16-CV-1211 WBS AC, 2019 WL 358517, at *4 (E.D. Cal. Jan. 29, 2019) ("If the court finds that several other actions are pending and that a threat of inconsistent adjudications exist, a class action may not be appropriate."); *Becker v. Schenley Indus., Inc.*, 557 F.2d 346, 348 (2d Cir. 1977) ("The trial court's discretion has continually been upheld where, as here, it has been exercised so as to avoid duplicative class actions, or where the plaintiff has other, less burdensome methods available by which to resolve the controversy."). Additionally, Rule 12(f) allows the striking of redundant allegations. Fed. R. Civ. P. 12(f).  As shown above, the nationwide class and California subclass are redundant in this case when compared with the California Litigation.  In the alternative to the relief requested in Sections II and III, the Court should stay Ingrao's individual and class claims pending the outcome of the California Litigation.

## V.        THE CALIFORNIA LITIGATION RULING IS INAPPOSITE

The motion to dismiss ruling in the California Litigation, which only granted in part the defendants' (including AddShoppers) motion to dismiss, does not change the result that dismissal of all claims is warranted here.  This motion raises arguments and law that were not specifically addressed or considered, if at all, in the California Litigation court's decision, and which warrant full dismissal of all claims.

For example, in the California Litigation court's order granting in part and denying in part the motion to dismiss, the court noted, "defendants' other arguments against the CIPA claims are also unsuccessful, and too weak or undeveloped to merit a response." *McClung v. AddShopper[s], Inc.*, No. 23-CV-01996-VC, 2024 WL 189006, at *3 (N.D. Cal. Jan. 17, 2024).  The California Litigation court did not address or examine the following dispositive arguments made herein: Ingrao's failure to allege that any "contents" of her communications were intercepted; applicability

25

of the party exception to the communications allegedly intercepted; and Ingrao's failure to allege

facts establishing any of the four clauses of CIPA's Section 631(a). *Id.* at *3. The California

Litigation court also did not consider any of the CDAFA arguments raised herein regarding

Ingrao's failure to allege facts to establish essential elements of specific sections of Section 502.

*See id.* at *4. And, the California Litigation court did not address WESCA at all, because there

was no WESCA cause of action in that case. Accordingly, the ruling in the California Litigation

is inapposite to this motion.

## VI.       CONCLUSION

For the reasons set forth herein, Nutrisystem requests that the Court dismiss the complaint

as to Nutrisystem pursuant to Federal Rule of Civil Procedure 12(b)(6) or, alternatively, strike the

class claims brought by Ingrao against Nutrisystem, and stay the litigation of her individual claims

pending the outcome of the California Litigation, *McClung v. AddShoppers*, No. 3:23-cv-01996

(N.D. Cal.).

Dated:  May 6, 2024                                        Respectfully submitted,

                                                          */s/ Joseph Wolfson*
                                                          Joseph Wolfson
                                                          **STEVENS & LEE, P.C.**
                                                          1500 Market Street
                                                          East Tower, Suite 1800
                                                          Philadelphia, PA 19102
                                                          Telephone: (215) 751-1249
                                                          Email: joseph.wolfson@stevenslee.com

                                                          Ari N. Rothman (*pro hac vice*)
                                                          Jane B. Baber (*pro hac vice*)
                                                          **VENABLE LLP**
                                                          600 Massachusetts Avenue NW
                                                          Washington, D.C. 20001
                                                          Telephone: (202) 344-4000
                                                          Email: anrothman@venable.com
                                                          Email: jbbaber@venable.com

                                                          *Attorneys for defendant Nutrisystem, Inc.*

26