**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| AMELIA INGRAO and ELISABETH PACANA, | : | CIVIL ACTION NO. |
| | : | |
| Plaintiffs, | : | Case No: 2:24-cv-1022-JHS |
| | : | |
| v. | : | |
| | : | |
| ADDSHOPPERS, INC., NUTRISYSTEM, INC. and VIVINT, INC. | : | |
| | : | |
| | : | |
| Defendants. | : | |

## DEFENDANT VIVINT, INC.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Defendant Vivint, Inc. ("Vivint") respectfully moves to dismiss the claim asserted against it in Amelia Ingrao and Elisabeth Pacana's (collectively, the "Plaintiffs") Complaint pursuant to Federal Rule of Civil Procedure 12.

## INTRODUCTION

Plaintiffs' Complaint against Vivint should be dismissed with prejudice for multiple reasons. As an initial matter, only Plaintiff Elisabeth Pacana[1] has asserted a claim against Vivint, but she has not alleged facts sufficient to confer this Court with jurisdiction over Vivint, and dismissal is appropriate. In addition to lack of personal jurisdiction, Plaintiff Pacana has not alleged an injury in fact, and as a result, she lacks standing to assert any claim against Vivint. Finally, dismissal is appropriate because Plaintiff Pacana has failed to state a claim for relief against Vivint for violation of the Pennsylvania Wiretapping and Electronic Surveillance Control Act.

---

[1] Given that Plaintiff Amelia Ingrao has not asserted a claim against Vivint, the term "Plaintiff" used herein refers only to Elisabeth Pacana.

## STATEMENT OF FACTS

Vivint sells home-security products and home-monitoring services to consumers in multiple states, including consumers in Pennsylvania.  Plaintiff Amelia Ingrao does not make any claims against Vivint in this matter.  Plaintiff Elisabeth Pacana has asserted a claim against Vivint for an alleged violation of the Pennsylvania Wiretapping and Electronic Surveillance Control Act ("WESCA" or "Act"), 18 Pa. C.S. § 5701, *et seq*., in connection with her alleged visit to Vivint's website on or about January 24, 2023. (Compl., Count 3; Compl. ¶ 66

Pacana, by her own admission, states that "she never provided personal information (including her email) to Vivint." (Compl. ¶ 66).  Plaintiff asserts that Vivint "captured information about Plaintiff Pacana's visit to its website on January 24, 2023," and that "the company carefully tracked her visit and sent information back to AddShoppers." (*Id*.).  Plaintiff's allegations against Vivint are that "Vivint intentionally procures and embeds AddShoppers' SafeOpt tracking technology on their websites to secretly intercept their website visitors' electronic communications with its website in real time." (Compl. ¶ 122).

Plaintiff conclusively alleges that Vivint "purposefully availed itself of the laws and benefits of doing business in this Commonwealth, and Plaintiffs' claims arise out of each of the (sic) Vivint's forum-related activities." (Compl. ¶ 16). Plaintiff Pacana claims that because Vivint offers installation of its home security system throughout Pennsylvania, specifically advertising its services to Pennsylvanians on its website, that Vivint's conduct was expressly aimed at Pennsylvania residents. (*Id*.)

Vivint's website includes a description of the "Legal Terms and Conditions" that apply to any use of Vivint's website.[2]  Specifically, the Legal Terms and Conditions "apply to the

---

[2] A copy of Vivint's Legal Terms and Conditions is attached hereto as **Exhibit A**.  Further, such Legal Terms and

advertising, marketing and/or sale of Vivint, Inc.'s ('Vivint') products and services . . . ." Further, Vivint's website includes a written Privacy Policy, which users can access when visiting the website ("Privacy Policy").[3]  The Privacy Policy describes the "information that Vivint, Inc. and our subsidiaries and affiliates (together, 'Vivint') collect, use, share, and store" when using certain products and services.  Pertinent to the allegations in Plaintiffs' Complaint, the Privacy Policy expressly discloses that Vivint may collect information when users utilize the website:

> Vivint collects, uses, shares, and stores information "when you use the following Vivint products and services: the Vivint home security systems, security cameras, smart home devices, **websites** and mobile apps, sales and customer support, monitoring services, camera services, other subscription services, and other online and offline interactions. This Privacy Notice applies to information we collect about you in many contexts."  (*Id.*) (emphasis added).

Further, Vivint's Privacy Policy also contains the following statements about information it may collect from the website user:

> **Data collected automatically through tracking technologies.**  We may automatically collect information or inferences about you through tracking technologies such as cookies and tools that track your usage of Vivint Websites or the Vivint mobile app.

> **Third parties.**  We may collect information from other parties.  For example, in some cases, devices and products from third parties may connect to our services and the third parties may send us information about the use of those devices, including sensor and activity data.  We may also obtain information about you from service providers, business partners, public sources, social media companies and other parties.

---

Conditions are available for review to any consumer that accesses Vivint's website at: Vivint's Policies | Terms and Conditions.

[3] A copy of Vivint's Privacy Policy is attached hereto as **Exhibit B**.  Further, the Privacy Policy is available for review to any consumer that accesses Vivint's website at: Learn More About Vivint's Updated Privacy Policy.

**ARGUMENT**

**I.      Pennsylvania does not have personal jurisdiction over Vivint, and Plaintiff's claim against Vivint must be dismissed.**

Plaintiff has failed to establish that this Court has personal jurisdiction over Vivint. There is no general jurisdiction over Vivint in the Commonwealth of Pennsylvania because Vivint is not considered "at home" in Pennsylvania. Moreover, specific jurisdiction is also lacking because the exercise of personal jurisdiction over Vivint is improper under both the traditional "contacts" analysis and the *Calder* effects test. *Calder v. Jones*, 465 U.S. 783, 788–90 (1984).

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff bears the burden of establishing the court's jurisdiction over the moving defendants. *See Steinfield v. EmPG Int'l, LLC*, 97 F. Supp. 3d 606, 611 (E.D. Pa. 2015) (citing *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004) (citation omitted)).   If the court does not hold an evidentiary hearing, the plaintiff must establish a prima facie case of personal jurisdiction. *Id.* The plaintiff satisfies the burden to present a prima facie case by "establishing with reasonable particularity sufficient contacts between the defendant and the forum state." *Id.* (citing *Provident Nat'l Bank v. California Fed. Sav. & Loan Assoc.*, 819 F.2d 434, 437 (3d Cir.1987) (citation omitted)).

Two types of personal jurisdiction exist: general and specific. *Id.* at 612. For general jurisdiction to exist over a foreign corporation, its affiliations with the state must be so continuous and systematic as to render it essentially at home in the forum state. *Daimler AG v. Bauman*, 571 U.S. 117, 138–39 (2014) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)). The place of incorporation and principal place of business are "paradig[m]" bases for general jurisdiction. *Id.* at 137.

For purposes of specific jurisdiction, there are three (3) essential components of the inquiry. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007). First, the defendant must have "purposefully directed" its activities at the forum. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (quotation marks omitted)). Second, the litigation must "arise out of or relate to" at least one of those activities. *Id.* Third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise comports with "fair play and substantial justice." *Id.* (citing *Burger King*, 471 U.S. at 476).

When a plaintiff claims that a defendant committed an intentional tort, the court must consider whether jurisdiction is appropriate under the "*Calder* effects test." *Vonbergen v. Liberty Mut. Ins. Co.*, No. CV 22-4880, 2023 WL 8569004, at *4 (E.D. Pa. Dec. 11, 2023) (citing *Calder* at 788–90). Under the *Calder* test, the plaintiff must allege facts to show (1) the defendant committed an intentional tort, (2) the plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort, and (3) the defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity. *Vonbergen*, 2023 WL 8569004, at *4 (citing *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265–66 (3d Cir. 1998)).

The traditional specific jurisdiction analysis and the *Calder* effects test are different, but they are cut from the same cloth; just as the standard test prevents a defendant from "be[ing] haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts," the *Calder* effects test prevents a defendant from being haled into a jurisdiction solely because the defendant intentionally caused harm that was felt in the forum state if the defendant did not expressly aim his conduct at that state. *Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007) (citing *Burger King*, 471 U.S. at 475 (citations and quotation marks omitted)).

**A.  Vivint is not subject to Pennsylvania's general jurisdiction because Vivint is not "at home" in Pennsylvania.**

Plaintiff has not and cannot show that Vivint is subject to the general jurisdiction of Pennsylvania courts because Plaintiff cannot establish that Vivint has such "continuous and systematic" contacts with Pennsylvania as to render Vivint at home in Pennsylvania. *Daimler*, 571 U.S. at 138–39 (citing *Goodyear*, 564 U.S. 924). Plaintiff alleges that the Court has personal jurisdiction over Vivint because it is an "active corporation in the Commonwealth of Pennsylvania with a registered agent in Harrisburg, Pennsylvania." (Compl. ¶ 15).  That bare and conclusory allegation is insufficient to subject Vivint to the Court's general jurisdiction. (Compl. ¶ 15). A corporation's "'continuous activity of some sorts within a state ... is not enough to support the demand that the corporation be amenable to suits unrelated to that activity.'" *Farber v. Tennant Truck Lines, Inc.*, 84 F. Supp. 3d 421, 427 (E.D. Pa. 2015). The appropriate inquiry here is where Vivint is incorporated and has its principal place of business. The place of incorporation and principal place of business are "paradig[m]" bases for general jurisdiction. *Daimler*, 571 U.S. at 137 . Vivint is incorporated under the laws of Delaware and maintains its principal place of business in Utah. Thus, because Vivint does not have such "continuous and systematic" contacts with Pennsylvania as to be considered "at home," Vivint is not subject to the Court's general jurisdiction.

**B.  This Court lacks specific jurisdiction over Vivint.**

The exercise of specific jurisdiction over Vivint is likewise improper under both the traditional specific jurisdiction analysis and the *Calder* effects test.  Under both analyses, Plaintiff has failed to show that the activities which are the subject of Plaintiff's claim against Vivint were directed at Pennsylvania.

a. <u>Vivint is not subject to specific jurisdiction under the traditional analysis because Plaintiff has failed to show that Vivint directed its activities to Pennsylvania.</u>

Under the traditional analysis for specific jurisdiction, Plaintiff Pacana must establish with reasonable particularity sufficient contacts between Vivint and Pennsylvania. *See Steinfield*, 97 F. Supp. 3d at 611. Specifically, Pacana must demonstrate that (1) Vivint purposefully directed its activities at the forum state, (2) the claim arises out of or relates to those activities, and (3) if the prior two requirements are met, that the exercise of jurisdiction otherwise comports with "fair play and substantial justice." *O'Connor*, 496 F.3d at 317. Plaintiff has failed to show that Vivint purposefully directed the activities that are the subject of Plaintiff's claim to Pennsylvania. Rather, Plaintiff asserts generic, conclusory statements in an attempt to persuade the Court that personal jurisdiction is appropriate. (Compl. ¶ 16). Failing any of the three prongs of the traditional analysis is fatal to Plaintiff Pacana's claim against Vivint.

Plaintiff's allegations against Vivint are that "Vivint intentionally procures and embeds AddShoppers' SafeOpt tracking technology on their websites to secretly intercept their website visitors' electronic communications with its website in real time." (Compl. ¶ 122). Thus, the activity that Plaintiff must demonstrate as directed toward Pennsylvania is Vivint's use of AddShoppers' SafeOpt tracking technology; however, the Complaint is completely devoid of any facts asserting that Vivint directed its use of this software toward Pennsylvania.

Instead, Plaintiff conclusively alleges that Vivint "purposefully availed itself of the laws and benefits of doing business in this Commonwealth, and Plaintiffs' claims arise out of each of the Vivint's forum-related activities." (Compl. ¶ 16). Plaintiff claims that because Vivint offers installation of its home security system throughout Pennsylvania, specifically advertising its services to Pennsylvanians on its website, that Vivint's conduct was expressly aimed at

Pennsylvania residents. (*Id.*) This argument falls flat. As an initial matter, Vivint's advertisements are not the subject of Plaintiff's claim; Plaintiff is not claiming that Vivint misrepresented certain facts or otherwise committed tortious conduct in the manner in which it advertised. Rather, Plaintiff claims that Vivint's alleged interception of communications constitutes a violation of Pennsylvania law.

Even if Vivint's advertising was the subject of Plaintiff's claim, Plaintiff has failed to sufficiently plead that this advertising is more than a benefit of successfully accessing the United States as a national market. *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.* has become the seminal authority regarding personal jurisdiction based on the operation of an internet website. *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997); *see also Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 452 (3d Cir. 2003) (citing *Zippo*, 952 F. Supp. at 1119). *Zippo* stressed that the propriety of exercising personal jurisdiction depends on the sliding scale of commercial interactivity and where the website falls on that scale. 952 F. Supp. at 1119. As *Zippo* and numerous cases thereafter illustrate, the mere operation of a commercially interactive website cannot subject the website operator to jurisdiction anywhere in the world. *Toys "R" Us*, 318 F.3d at 454. In other words, Pennsylvania does not have jurisdiction over Vivint if Vivint's connection to Pennsylvania is merely a "derivative benefit of its successful attempt to exploit the United States as a national market." *D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 104 (3d Cir. 2009). Rather, courts have "repeatedly recognized that there must be 'something more'…to demonstrate that the defendant directed its activity toward the forum state. *Toys "R" Us*, 318 F.3d at 452 (citing *Desktop Technologies, Inc. v. Colorworks Reprod. & Design*, No. CIV.A. 98-5029, 1999 WL 98572, at *5 (E.D. Pa. Feb. 25, 1999) (citation omitted) (emphasis added)).

Setting aside the fact that advertising is not the basis of Plaintiff's claim, advertising its services on a national basis hardly constitutes Vivint purposefully availing itself of the laws of Pennsylvania. Plaintiff has not demonstrated "something more."  Instead, Vivint's website is only a "derivative benefit" of successfully accessing the United States as a national market. *Toys "R" Us*, 318 F.3d at 454 (citing *Desktop Technologies*, 1999 WL 98572, at *5; *D'Jamoos*, 566 F.3d at 104.

Accordingly, Plaintiff has failed to show that Vivint specifically directed any activity to the forum state, let alone the activity which is the basis of Plaintiff's claim against Vivint. Thus, Plaintiff has failed to establish with reasonable particularity sufficient contacts to subject Vivint to specific personal jurisdiction in Pennsylvania, and Plaintiff's claim fails for lack of personal jurisdiction under the traditional analysis.

> b. Vivint is similarly not subject to specific jurisdiction under the *Calder* effects test because Plaintiff has failed to show that Vivint aimed its activities at Pennsylvania.

Should the Court be inclined to apply the *Calder* effects test to this case, Plaintiff's allegations blatantly fail that analysis as well. Where there are allegations that a nonresident defendant committed an intentional tort outside the forum state, the unique effects of which caused damage to the plaintiff within the forum state, Pennsylvania precedent applies the "*Calder* effects test" to jurisdictional disputes, rather than the traditional analysis. *IMO Indus.*, 155 F.3d at 256 (citing *Calder*, 465 U.S. 783).

Under the *Calder* effects test, the plaintiff must show that (1) the defendant committed an intentional tort, (2) the plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort, and (3) the defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be

the focal point of the tortious activity. *IMO Indus.*, 155 F.3d at 265–66. The Court should only consider prongs one and two of the effects test once the third prong is met. *Marten*, 499 F.3d at 298 (citing *IMO Indus.*, 155 F.3d at 266).

To satisfy the third prong, the plaintiff must show that the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum. *IMO Indus.*, 155 F.3d at 266. If the plaintiff fails to show that the defendant "manifested behavior intentionally targeted at and focused on the forum," the plaintiff fails to establish jurisdiction under the effects test. *Marten*, 499 F.3d at 298 (citing *IMO Indus.*, 155 F.3d at 265).

Plaintiffs' Complaint fails to show jurisdiction under the *Calder* effects test for the same reasons that it fails to show jurisdiction under the traditional analysis: Plaintiff Pacana has failed to demonstrate that Vivint's use of AddShoppers' SafeOpt tracking technology was "aimed" at or "intentionally targeted" toward Pennsylvania. Even if Plaintiff could show that Vivint targeted its use of the technology toward Pennsylvania, which Vivint specifically denies, Plaintiff nonetheless has failed to demonstrate that Vivint knew that Plaintiff would suffer the brunt of the harm allegedly caused by the use of this technology in Pennsylvania.  Indeed, Plaintiff Pacana has not even alleged that she accessed the website while physically located in Pennsylvania. Because Plaintiff has not met the requirements set forth in the third prong of the *Calder* effects test, the Court need not consider the first two prongs, and the exercise of specific jurisdiction over Vivint is improper.

Accordingly, Plaintiff's claim against Vivint fails for lack of personal jurisdiction over Vivint and must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2).

II.     **Plaintiff Lacks Standing to Bring A Claim Against Vivint Because She Does Not Allege "Concrete" Harm.**

Plaintiff's allegation that Vivint violated WESCA does not establish an injury in fact sufficient to confer Article III standing.  Standing is a prerequisite for a federal court's subject matter jurisdiction, and a motion to dismiss for lack of standing is proper under Federal Rule of Civil Procedure 12(b)(1). *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). To establish standing under Article III, a plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.  *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). On a motion to dismiss, the plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing the elements of standing. *Id*. To establish an injury in fact, the plaintiff must "show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id*. at 339. "That a suit may be a class action … adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.'" *Id*. at 338 n.6.

Article III requires that a plaintiff's injury in fact "be 'concrete'—that is, 'real, and not abstract.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021). As the Supreme Court recently reiterated in *TransUnion*, this is the case "even in the context of a statutory violation." *Id*. at 426. Specifically, *TransUnion* "rejected the proposition that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id*. (citation omitted).  In doing so, the Court explained that "an injury in law is not an injury in fact. Only those plaintiffs who

have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id.* at 427. In assessing whether the purported harm caused by a statutory violation is sufficiently concrete, courts must consider whether the alleged harm bears "a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *Id.* at 424.

Plaintiff Pacana has not met her burden to establish standing because she has not pled allegations of having suffered a concrete harm resulting from her visit to Vivint's website, nor can she under Pennsylvania precedent. Here, Plaintiff asserts that her "harm" from Vivint's alleged violation of WESCA is invasion of privacy. (Compl. ¶¶ 4, 5, 46). But under Pennsylvania precedent, this harm cannot constitute an injury sufficient to establish Article III standing.

When faced with nearly identical allegations and the same argument under WESCA, the Western District of Pennsylvania held in *Cook v. GameStop, Inc.* that this "circular reasoning simply folds back onto a bare statutory violation, which the Supreme Court has clarified cannot be the basis for standing." No. 2:22-CV-1292, 2023 WL 5529772, at *3 (W.D. Pa. Aug. 28, 2023). In *Cook*, the plaintiff asserted a putative class action against an online retailer, asserting a claim under the Act and intrusion upon seclusion arising from the retailers' use of a program that recorded, saved, and replayed visitor interactions with the online website. *Id.* The *Cook* plaintiff asserted, as Plaintiff Pacana asserts here, that the act of the wiretap intruded upon her privacy and is both injury under the statute and the basis for harm for "invasion of privacy." *Id.* In other words, the *Cook* claimant (and Pacana in this case) asserted that a violation of the wiretapping statute should constitute a harm, meaning that the Court's analysis should "begin and end with the statutory violation." *Id.*

The *Cook* court rejected this argument, stating that the claimant's argument is "no longer viable," in light of the "Supreme Court's clarification that a 'legislature's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III.'" *Id*. (citing *Lightoller v. Jetblue Airways Corp.*, No. 23-361, 2023 WL 3963823, at *3 (S.D. Cal. June 12, 2023) (citing *TransUnion*, 594 U.S. at 423)). "To put a fine point on it: 'a bare statutory violation by itself is insufficient to demonstrate Article III injury in fact.'" *Id*.

The only "injury" Plaintiff Pacana alleges here is the statutory violation itself. (Compl. ¶¶ 111-125). Under clear Pennsylvania precedent, this is not sufficient to withstand a motion to dismiss for lack of standing. Therefore, Plaintiff fails to allege a concrete harm under WESCA, and her claim must be dismissed.

Plaintiff attempts to circumvent this deficit in her Complaint by generally asserting that Vivint invaded her privacy, and although she does not assert a common law invasion of privacy claim against Vivint, she likewise fails to establish an injury in fact to confer Article III standing with these baseless allegations. (Compl. ¶¶ 4, 5, 46). Plaintiff conceded in her Complaint that she did not provide any personal information, and she has not alleged that Vivint somehow accessed such information.

Although there are "certain harms" that readily qualify as concrete injuries under Article III, Plaintiff's alleged harms do not meet that threshold. *TransUnion*, 594 U.S. at 425. For example, "'traditional tangible harms, such as physical harms and monetary harms' are obviously concrete." *Id*. Other intangible harms are closer calls. *Cook*, 2023 WL 5529772, at *3. These harms can be concrete if "they bear 'a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts.'" *Id*. (citing *TransUnion*, 594 U.S. at 425).

Both the common law and literal understandings of privacy encompass an individual's control of information *concerning his or her person*. *See Cook*, 2023 WL 5529772, at *4 (citing *U.S. Dep't of Justice v. Reporters Comm. For Freedom of the Press*, 489 U.S. 749, 763 (1989) (emphasis added)). The information that Vivint allegedly intercepted does not meet this threshold. Plaintiff, by her own admission, states that "she never provided personal information (including her email) to Vivint." (Compl. ¶ 66). Plaintiff merely asserts that Vivint "captured information about Plaintiff Pacana's visit to its website on January 24, 2023," and that "the company carefully tracked her visit and sent information back to AddShoppers." (*Id*.) This is completely inadequate to establish Article III standing. Shopping on a public website, like shopping in a public store, is not an activity one can reasonably expect to keep private from the retailer. *Farst v. AutoZone, Inc.*, No. 1:22-CV-1435, 2023 WL 7179807, at *4 (M.D. Pa. Nov. 1, 2023). The mere fact that Plaintiff presumably used a personal laptop or cell phone to access Vivint's website does not entitle her to a heightened expectation of privacy. *Id*. Indeed, many courts have found that a company's tracking of a customer's shopping activity is not closely related to privacy tort. *Id*.

Not only did Plaintiff fail to demonstrate that Vivint has any of her personal information, but she cannot demonstrate any reasonable expectation of privacy in accessing Vivint's website. Ultimately, Plaintiff has not established a "concrete" injury under either WESCA or a common law privacy harm that can satisfy the injury-in-fact requirement under Article III standing. Consequently, Plaintiff's claim against Vivint fails for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

III.     **Plaintiff fails to state a claim against Vivint under the Pennsylvania Wiretapping and Electronic Surveillance Control Act.**

Plaintiff Pacana sole claim against Vivint is for an alleged violation of WESCA, 18 Pa. C.S. § 5725(a). But Pacana fails to state a viable claim for relief under WESCA. Dismissal is warranted under Federal Rule of Civil Procedure Rule 12(b)(6) when a plaintiff fails to allege facts sufficient "to raise a right to relief above the speculative level" or fails "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 547 (2007). This "plausibility" standard applies to all claims brought in federal court. *See Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009). Although a court generally must accept well-pleaded facts as true on a motion to dismiss for failure to state a claim, this principle does *not* apply to legal conclusions, conclusory allegations, or unwarranted factual inferences. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal,* 556 U.S. at 679. Assuming their veracity, the court must determine whether plaintiff's well-pleaded factual allegations "plausibly give rise to an entitlement to relief." *Id.* Put another way, the complaint must present sufficient factual material to allege a claim that is "plausible on its face." *Twombly,* 550 U.S. at 570. Such facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678.

In resolving a Rule12(b)(6) motion to dismiss, a court may look beyond the complaint to matters of public record and documents referenced in the complaint or those that are essential to a plaintiff's claim that are attached to a defendant's motion. *See Colbert v. Mercy Behav. Health*, 845 F. Supp. 2d 633, 637 (W.D. Pa. 2012) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). Under this standard, these documents may be

considered by the court without converting the motion to dismiss into a motion for summary judgment. *Id*.

"The WESCA offers a private civil cause of action to '[a]ny person whose wire, electronic or oral communication is intercepted, disclosed or used in violation of [that statute]' against 'any person who intercepts, discloses or uses or procures any other person to intercept, disclose or use, such communication.'" *Popa v. Harriet Carter Gifts, Inc*., 52 F.4th 121, 125 (3d Cir. 2022) (citing 18 Pa. C.S. § 5725(a)). Here, Plaintiff fails to satisfy multiple elements required under WESCA. First, the Complaint does not allege that Vivint intercepted any "content of a communication" that is entitled to protection under the Act. Second, Plaintiff has not pled or demonstrated any injury or harm. Third, Plaintiff consented to the use of cookies through her decision to access and browse Vivint's website. Lastly, Plaintiff has suffered no actual harm or injury. Accordingly, her Complaint must be dismissed as a matter of law.

### A. Browsing activity and keystrokes are not "contents of a communication" protected under the Act.

To state a viable claim under the WESCA, Plaintiff must demonstrate that Vivint intercepted the contents of her communications without her consent.  The statute defines "intercept" as the "[a]ural or other acquisition of the ***contents of any*** wire, electronic or oral ***communication*** through the use of any electronic, mechanical or other device." 18 Pa. C.S. § 5702 (emphasis added). "Contents" is defined as "any information concerning the substance, purport, or meaning of that communication." *Id*.

Courts interpreting alleged wiretap statute violations often distinguish between "a record or other information pertaining to a . . . customer" (known as 'record information') and the contents—*i.e.,* 'substance, purport, or meaning'—of the communication itself." *See Goldstein v. Costco Wholesale Corp.*, 559 F. Supp. 3d 1318, 1321 (S.D. Fla. 2021) ("The touchtone in many

cases arising under [Florida's wiretap statute] and similar statutes is the definition of contents. Courts interpreting contents under the [federal wiretap statute] distinguish between a record or other information pertaining to a customer (known as 'record information') and the contents— *i.e.,* 'substance, purport, or meaning'—of the communication itself.").

Keystrokes, website movement, and similar activity do not constitute "contents of a communication" under the meaning of the Wiretapping Act.  *See e.g., Farst*, 2023 WL 7179807, at *1;  *Cook*, 2023 WL 5529772, at *8 ("When a website user moves the cursor or clicks the mouse, it does not plausibly reveal the substance of any communication. . . . Navigating through a website's multiple pages is not the substance of a communication; it's an action taken to go to a digital location.").   Comparing this to a customer visiting a brick-and-mortar store, the keystrokes and mouse movement are similar to customer movements that a salesperson or security camera might observe about the customer's preferences while at the store.  *See Goldstein*, 559 F. Supp. 3d at 1321. But they are not "contents of communication" within the meaning of the Act.

Likewise, "location identifiers [URL's] have classically been associated with non-content means of establishing communication." *In re Google Inc. Cookie Placement Cons. Priv. Litig.*, 806 F.3d 125, 136 (3d Cir. 2015).  Typically, URLs "do not necessarily reveal any more about the underlying contents of communications than do phone numbers." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1108 (9th Cir. 2014).

Unlike the plaintiff in *Popa*, Pacana did not enter her email address or provide any personal information or communication on Vivint's website.  Plaintiff admits that "she never provided personal information (including her email) to Vivint." (Compl. ¶ 66).  Again, however, Ms. Pacana did not identify what information, if any, Vivint allegedly collected from her visit to

its website.  Thus, Plaintiff's complaint against Vivint fails to allege what "contents of a communication" that Vivint collected, and for this reason alone, she fails to state a viable claim against Vivint under the WESCA.

### B.  Plaintiff has not pled or demonstrated any injury or harm.

Just as Plaintiff lacks Article III standing, she has no injury or harm that would allow her to pursue a claim under the WESCA.  Again, "[o]nly those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion*, 594 U.S. at 426. (emphasis in original).  *Lightoller*, 2023 WL 3963823, at *4; *Byars v. Sterling Jewelers, Inc.*, No 5:22-CV-1456, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023).

In *Farst*, the plaintiff alleged that AutoZone used session replay software on its website that allowed the retailer, using a third-party provider and outside vendor, to "contemporaneously observe, record, and store visitors' interactions with the website the moment they access the site." 2023 WL 7179807, at *1.  The plaintiff claimed that AutoZone used the data to "better understand website visitors' shopping habits and preferences." *Id*. When the plaintiff visited the website, "AutoZone allegedly recorded Farst's mouse clicks and movements, keystrokes, search terms, information inputted by [him], pages and content viewed by [him], scroll movements, and copy and paste actions." *Id*. The plaintiff claimed that the session replay software "revealed personalized and sensitive information about [Farst's] internet activity and habits" and allowed AutoZone to "capture, observe, and divulge [his] personal interests, browsing history, queries, and habits." *Id*.  As here, the plaintiff filed a complaint against the retailer, alleging violation of WESCA on behalf of himself and others similarly situated.  *Id*.

The Middle District of Pennsylvania rejected the plaintiff's claims and granted AutoZone's motion to dismiss for lack of any concrete harm.  The Court initially noted that "Farst's allegations involve the novel application of WESCA in the online shopping context. This is clearly not something that has 'long been seen as injurious.'" *Id*. at *3 (citing *Kamal v. J. Crew Grp., Inc.*, 918 F.3d 102, 111 (3d Cir. 2019); *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 638 (3d Cir. 2017)).  Just like the analysis of standing under Article III, the Court rejected the argument that the plaintiff had an expectation of privacy concerning his online shopping activities, comparing them to shopping in a brick-and-mortar store:

> Shopping on a public website, like shopping in a public store, is not an activity one can reasonably expect to keep private from the retailer. *See Cook*, ⸺ F.Supp.3d at ⸺, 2023 WL 5529772, at *5. The mere fact Farst used "a personal laptop or cell phone" while "sit[ting] in the privacy of his home" does not entitle him to a heightened expectation of privacy. (See Doc. 49 at 4-5). The difference in fora between online and in-person shopping outlets does not transform the generally public nature of shopping into a "private affair." See RESTATEMENT (SECOND) OF TORTS § 652B. Reasonable people understand that what they "do on the Internet is not completely private. How could it be?" *See Nickelodeon*, 827 F.3d at 266. Farst's visits to AutoZone's commercial website are not exempt from this basic truth. Other courts within our circuit have similarly found that a company's tracking of a customer's shopping activity using session replay software is not closely related to the tort of intrusion upon seclusion. *See Cook*, ⸺ F.Supp.3d at ⸺ – ⸺, 2023 WL 5529772, at *4-5; *Massie v. Gen. Motors LLC*, No. 21-CV-787, 2022 WL 534468, at *5 (D. Del. Feb. 17, 2022). We echo their compelling analyses.

*Id*. at *4.  The Court also noted that its analysis is supported by "[v]arious courts in other circuits [that] have reached the same conclusion based on similar allegations."  *Id*. n.3.  (citing *Popa v. PSP Grp., LLC,* No. 23-294, 2023 WL 7001456, at *1, 4 (W.D. Wash. Oct. 24, 2023); *Jones v. Bloomingdales.com, LLC*, No. 4:22-CV-1095, 2023 WL 6064845, at *2 (E.D. Mo. Sept. 18, 2023); *Adams v. PSP Grp*., LLC, ⸺ F. Supp. 3d ⸺, ⸺ – ⸺, No 4:22-CV-1210, 2023 WL 5951784, at *7-8 (E.D. Mo. Sept. 13, 2023); *Straubmuller v. Jetblue Airways Corp*., No 23-CV-384, 2023 WL 5671615, at *4-5 (D. Md. Sept. 1, 2023); *Mikulsky v. Noom, Inc*., ⸺ F.

Supp. 3d ——, ——, No. 3:23-CV-285, 2023 WL 4567096, at *5 (S.D. Cal. July 17, 2023);
*Lightoller*, 2023 WL 3963823, at *4; *Byars*, 2023 WL 2996686, at *3; *see also I.C. v. Zynga,
Inc.,* 600 F. Supp. 3d 1034, 1049-50 (N.D. Cal. 2022); *Goldstein*, 559 F. Supp. 3d at 1321).

The Middle District of Pennsylvania also distinguished cases that the plaintiff relied upon
for his argument that he sufficiently pled a concrete harm.  As the Court noted, "[t]hose cases
involve defendants who deceived plaintiffs by secretly collecting their private data after
promising they would not. Farst makes no such claim here." *Farst*, 2023 WL 7179807, at *4
(citing *In re Google*, 934 F.3d at 325; *In re Nickelodeon*, 827 F.3d at 294; *In re Google*, 806 F.3d
at 153). The Court also distinguished the type of data collected in those cases.  The Google
defendants "ostensibly circumvented privacy settings, compiled users' internet-wide search
histories, created detailed user profiles, and served individualized ads based on those profiles,"
and Nickelodeon "allegedly disclosed 'legally protected information,' including, inter alia,
plaintiffs' genders, birthdates, IP addresses, browser settings, and unique device identifiers." *Id.*
(citations omitted). Whereas "Farst, by contrast, merely claims AutoZone observed and recorded
his general actions on its website, revealing his shopping preferences regarding the company's
products." *Id.*

"Farst does not aver AutoZone disclosed his home address, credit card, bank account,
social security number, or any other information that could potentially be used to identify him or
materially increases his risk of future harm." *Id.* (citing *Cook*, 2023 WL 5529772, at *4, *Massie*,
2022 WL 534468, at *5; *Clemens v. ExecuPharm Inc.*, 48 F.4th 146,  155 (3d Cir. 2022)). Rather,
"[m]aking 'scroll movements,' viewing 'pages and content,' and engaging in 'mouse clicks and
movements' are the online analogues of walking down aisles, looking at inventory, and handling

products. Farst's shopping activity on AutoZone's website betrays no 'private facts' about him." *Id*.

As in *Farst*, Plaintiff has failed to demonstrate that Vivint has any of her personal information.  She has not pled that any of her sensitive private information was disclosed. Plaintiff cannot credibly claim that her receipt of marketing emails constituted an injury or harm. Indeed, she does not even allege that she received a marketing email from Vivint.  She alleges that she received a marketing email from third-party and upon inquiry learned that SafeOpt had collected information about her visit to Vivint's website.

Any internet user in the modern age has a reasonable expectation that cookies may be used to track the user's activities on a website.  Many consumers prefer to receive special offers, coupons, or other discounts provided in marketing emails. While Plaintiff herself may have different preferences, her personal dislike of marketing emails does not constitute a cognizable injury or harm under the Act, any more than she could sue a retailer for sending her flyers or coupons to her physical mailbox using her home address.

Plaintiff has not pled or shown that she has sustained any compensable harm caused by any activity by Vivint.  Her claims must be dismissed for this reason as well.

### C. Plaintiff consented to Vivint's Privacy Policy by voluntarily using Vivint's website.

Even if Vivint's conduct constitutes a violation of WESCA, which Vivint expressly denies, Plaintiff has nonetheless failed to state a claim against Vivint under WESCA because she voluntarily used Vivint's website.  Vivint's website contains a clear statement that Vivint may conduct the collection of information about which Plaintiff complains.  As Vivint's website provides:

**Data collected automatically through tracking technologies.** We may automatically collect information or inferences about you through tracking technologies such as cookies and tools that track your usage of Vivint Websites or the Vivint mobile app.

**Third parties.** We may collect information from other parties. For example, in some cases, devices and products from third parties may connect to our services and the third parties may send us information about the use of those devices, including sensor and activity data. We may also obtain information about your from service providers, business partners, public sources, social media companies and other parties.

WESCA includes an exception from liability for situations involving "all-party" consent: it is not unlawful to "intercept a wire, electronic or oral communication, where all parties to the communication have given prior consent to such interception." 18 Pa. C.S. § 5704(4). Thus, even if Plaintiff had adequately alleged a claim against Vivint for violation of WESCA, which she has not, she consented to Vivint's conduct. *Popa*, 52 F.4th at 132.

In *Popa*, the Third Circuit discussed the concept of implied consent to website terms and conditions, but the Court ultimately did not reach a conclusion because the district court had granted summary judgment on other grounds and never addressed the consent arguments. Nonetheless, the Third Circuit noted that the failure to read terms and conditions is not dispositive with respect to consent:

> The Defendants argue Popa impliedly consented to the interception because Harriet Carter included a privacy policy on the website when she visited. Though Popa claims she never saw the policy, the Pennsylvania Supreme Court has said that **"prior consent" in § 5704(4) does not require "actual knowledge."** *Commonwealth v. Byrd*, ⸺ Pa. ⸺, 235 A.3d 311, 319 (2020).

*Id.* (emphasis added). As the court stated, express consent in the context of website terms and conditions is not a prerequisite to application of the "all party" exception to WESCA. "Prior consent, including implied consent, can be demonstrated when the person being recorded knew or should have known[ ] that the conversation was being recorded." *Id.* (internal quotation marks

omitted).  Ultimately, the court stated that "these are arguments that should be addressed first by the District Court."  *Popa*, 52 F.4th at 132.  Despite not rendering an opinion, the logic of the Third Circuit's statements is fatal to Plaintiff's claim against Vivint, and Plaintiff's failure to read the Privacy Policy does not save her claim.

As the *Farst* Court stated, "[r]easonable people understand that what they 'do on the Internet is not completely private. How could it be?'"  *Farst,* 2023 WL 7179807, at *4 (quoting *Nickelodeon*, 827 F.3d at 266).  "Farst's decision to visit AutoZone's publicly accessible website rather than its physical store did not increase his expectation of privacy or expose him to a concrete harm that otherwise did not exist."  *Id*. at *6.  Indeed, any internet user in the modern age has a reasonable expectation that websites may use cookies to track the user's activities on the website.  The Privacy Notice on Vivint's website make this explicitly known to the user: "We may automatically collect information or inferences about you through tracking technologies such as cookies and tools that track your usage of Vivint websites. . . ."  Given that she allegedly visited Vivint's website, Plaintiff knew or should have known that Vivint may be collecting information consistent with its Privacy Policy.  As a result, Plaintiff cannot maintain a claim against Vivint under WESCA.

### D. Plaintiff fails to plead that the alleged interception occurred in Pennsylvania.

While Plaintiff alleges that she is a resident of Pennsylvania, she does not allege where the alleged interception of her communications occurred.  "Pennsylvania courts have declined to extend the WESCA to cover conduct occurring wholly outside the Commonwealth—at least in the context of recording telephone conversations."  *Popa*, 52 F.4th at 130 (citing *Larrison v. Larrison*, 750 A.2d 895, 898 (Pa. Super. Ct. 2000).  In *Popa*, "[t]he parties seem to assume this occurred in Pennsylvania, but they point us to no source in the record confirming this point. We

therefore leave it to the District Court to determine anew whether there is a genuine issue of material fact about where the interception occurred. While we do not resolve this question in this appeal, we do hold that the place of interception is the point at which the signals were routed to NaviStone's servers." *Popa*, 52 F.4th at 131–32.

Plaintiff alleges that Vivint website allowed AddShoppers to place a third-party cookie onto her browser. And then during her visit to Vivint's website, Plaintiff alleges that the cookie allowed interception of her communications. According to the Third Circuit's decision in *Popa*, the "place of interception is the point at which the signals were routed" to the third-party servers. Plaintiff does not allege where she was when the alleged interception took place, nor does she allege where her computer or device was located when the alleged interception took place. She does not specifically allege that any activity related to the alleged interception occurred in Pennsylvania. As a result, Plaintiff has not alleged facts sufficient to support a claim under WESCA. To hold otherwise would extend application of WESCA beyond the borders of Pennsylvania, which is inconsistent with the courts' decisions in *Popa* and *Larrison*.

## CONCLUSION

For these reasons, Vivint respectfully requests that this Court dismiss Plaintiffs' Complaint because (1) Vivint is not subject to the Court's personal jurisdiction, (2) Plaintiff lacks Article III standing, and (3) Plaintiff has failed to state claim under which relief may be afforded.

Dated: May 10, 2024                     Respectfully submitted,


                                        */s/ Tara Hopper Rice*
                                        Tara Hopper Rice
                                        ID# 313724

                                        **FROST BROWN TODD LLP**
                                        Union Trust Building
                                        501 Grant Street, Suite 800
                                        Pittsburgh, Pennsylvania 15219
                                        (412) 513-4300 (phone)
                                        (412) 513-4299 (facsimile)
                                        trice@fbtlaw.com

                                        *Attorney for Defendant Vivint, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, TARA HOPPER RICE, ESQUIRE, certify that on this date, the foregoing Motion to Dismiss Plaintiffs' Complaint has been filed electronically, and is available for viewing and downloading from the ECF System, has been served via the Court's electronic filing service on all counsel of record, and/or was also served via USPS on the following parties who have not consented to electronic service:

Charles E. Schaffer
Nicholas J. Elia
**LEVIN SEDRAN & BERMAN LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone: (215) 592-1500
Email: cschaffer@lfsblaw.com
Email: nelia@lfsblaw.com

Norman E. Siegel (*pro hac vice* forthcoming)
J. Austin Moore (*pro hac vice* forthcoming)
Kasey Youngentob (*pro hac vice* forthcoming)
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: (816) 714-7100
Email: siegel@stuevesiegel.com
Email: moore@stuevesiegel.com
Email: youngentob@stuevesiegel.com

*Attorneys for Plaintiffs*

Tomio B. Narita
**Womble Bond Dickinson**
50 California Street, Ste 2750
San Francisco, California 94111

*Attorney for Defendant AddShoppers, Inc.*

Joseph Wolfson
**Stevens & Lee, P.C.**
1500 Market Street
East Tower, Suite 1800
Philadelphia, PA 19102

Ari N. Rothman
Jane B. Baber
**VENABLE LLP**
600 Massachusetts Avenue NW
Washington, D.C. 20001

*Attorneys for Defendant Nutrisystem, Inc.*

Dated: 05/10/2024                    By: */s/ Tara Hopper Rice*
                                         Tara Hopper Rice