IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **Amelia Ingrao and Elisabeth Pacana,** : | |
| : | |
| : | **CIVIL ACTION NO.** |
| *Plaintiffs* : | |
| v. : | |
| : | **2:24-cv-01022-JHS** |
| **AddShoppers, Inc.,** : | |
| **Nutrisystem, Inc., and** : | |
| **Vivint, Inc.** : | |
| : | **(Oral Argument Requested)** |
| *Defendants* : | |
| : | |

**NUTRISYSTEM, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

Nothing in Ingrao's opposition saves her claims from dismissal, and no fact development is needed to grant Nutrisystem's motion because the issues Nutrisystem raised are purely legal and assume Ingrao's allegations are true. Likewise, nothing in Ingrao's opposition saves her class claims from being stricken because material variances in state wiretapping laws present individualized legal inquires that preclude certification of the nationwide class Ingrao seeks to certify, and no fact discovery is needed because whether to strike those claims turns on pure questions of law. Thus, if the Court does not dismiss her claims against Nutrisystem then it should strike her class claims and/or stay this litigation pending resolution of the duplicative California action in which she is a putative class member.

**I. INGRAO FAILED TO STATE A CLAIM AS TO NUTRISYSTEM**

  **A. Ingrao's WESCA Claim Fails Because She Was Not in Pennsylvania When the Alleged Interception Occurred**

Binding Third Circuit precedent holds that online communications are intercepted where the user's browser is located. *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 131 (3d Cir. 2022). Plaintiffs acknowledge this as to plaintiff Pacana's WESCA claim against Vivint, stating "Because [Pacana] is a Pennsylvania resident, the reasonable inference is she accessed the website using a

computer in the Commonwealth." (ECF No. 39, "Opp." at 13.)  The same is true for Ingrao.  Because Ingrao alleges that she is a California resident (Compl. ¶ 6), the only reasonable inference is that she accessed the Nutrisystem website while using a computer in California – a fact that she does not deny in her opposition.  This alone warrants dismissing her WESCA claim.

Ingrao's argument that WESCA applies because the alleged wiretapping occurred inside Pennsylvania given that Nutrisystem is headquartered there and allegedly operated its website from Pennsylvania (Opp. at 13) is unsupported by any statutory language or caselaw in the record.  It is also contrary to the Third Circuit's holding in *Popa* that the eavesdropper intercepted plaintiff's communications "at the point where it routed those communications to its own servers," which the Third Circuit held was at plaintiff's browser and *not* where the signals were received at the third-party interceptor's servers. 52 F.4th at 131.  Here, that "point" is Ingrao's computer in California.

Ingrao's argument that the court in *Lineberry* rejected the "similar argument that out-of-state plaintiffs' communications were not intercepted in California" (Opp. at 13) does not save her WESCA claim from dismissal either.  *Lineberry* did not address the place of interception or WESCA while Nutrisystem requests that this Court consider both.

Nor should the Court "delay deciding the point of interception until it has the benefit of a full evidentiary record." (Opp. at 13.)  Ingrao specifically alleges how she believes AddShoppers' SafeOpt works, does not deny she was using a computer located in California when the alleged interception occurred, and does not allege she was in Pennsylvania when she visited Nutrisystem's website.  Thus, no discovery is needed.  And, *Russo* is inapposite because it did not involve WESCA at all, much less determining the point of interception under the statute. *Russo v. Microsoft Corp.*, No. 4:20-CV-04818-YGR, 2021 WL 2688850, *4 (N.D. Cal. June 30, 2021).

### B. Ingrao's Wiretapping Claims Fail Because No Contents Were Intercepted

Ingrao's argument that she alleged that Nutrisystem intercepted "contents" because she pleaded "a broad scheme in which the defendants generally acquired and tracked [her] internet usage" (Opp. at 12 (quoting *In re Google Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 139 (3d Cir. 2015)) is wrong. The *Google* court found that plaintiffs alleged the contents of their communications were tracked when they made specific allegations as to queried URLs (URLs that reproduce words from a search engine query). 806 F.3d at 138–39. Ingrao makes no allegations that she queried search terms on Nutrisystem's website and that her query activity was tracked. To the contrary, she alleges she "never provided any personal information," and fails to allege in her complaint or explain in her opposition what contents were intercepted or could have been intercepted given this dispositive admission in her complaint. (Compl. ¶ 55.)

Likewise, Nutrisystem does not claim that "interception of URLs is always 'record information.'" (Opp. at 12.) Rather, given the absence of any allegation that Ingrao provided any personal information or communicated with or through the Nutrisystem website, the only logical inference from her allegations is that any tracked URL *is* merely record information. Thus, nothing in the complaint permits any inference that any URL was the "intended message conveyed" by Ingrao amounting to "contents" as was the case in *Google*. (Mot. at 9.)

Ingrao's own cited caselaw confirms this: *Oliver v. Noom, Inc.*, No. 2:22-cv-1857, 2023 WL 8600576 (W.D. Pa. Aug. 22, 2023) involved a plaintiff who disclosed personal information as part of an online quiz including her "height, weight, gender, age, reason for wanting to lose weight," which were the "contents" of the communication. *Id.* at *7. Similarly, Ingrao's notice of supplemental authority (ECF No. 50) cites *Cole v. Quest Diagnostics, Inc.*, No, 2:23-cv-20647-WJM, 2024 WL 3272789 (D.N.J. July 2, 2024), which found "contents" were intercepted when Facebook intercepted plaintiffs' substantive communications with defendant's medical portals,

3

including information such as descriptive URLs generated with "user-entered and user-specific information," along with users' "internet communications and medical information." *Id.* at *1, 4. Unlike the plaintiffs in *Noom* and *Cole*, Ingrao admits that she did not convey any personal information, and thus conveyed no contents of communications that could have been intercepted. (Compl. ¶ 55.)

Ingrao's reliance on *McClung v. AddShopper[s], Inc.*, No. 3:23-cv-01996, 2024 WL 189006, at *3 (N.D. Cal. Jan. 17, 2024) (now *Lineberry*) is misplaced. The *Lineberry* defendants asserted that referral URLs are not contents under CIPA in a reply brief (No. 3:23-cv-01996, ECF No. 63) and the *Lineberry* court ruled the argument was underdeveloped (presumably because it was left to a reply brief). And, the *Lineberry* defendants did not pursue the arguments or caselaw Nutrisystem advances in its motion, namely that Ingrao alleges she provided no information to the Nutrisystem website and therefore she could not have communicated the *contents* of anything. (Mot. at 7–11.)

### C. Ingrao's CIPA Claim Fails Under the Party Exception

Third Circuit precedent establishes that AddShoppers was a direct party to the communications such that it could not and did not commit a CIPA violation as a matter of law. *In re Google Inc.*, 804 F.3d at 152 (affirming the district court's dismissal of a CIPA claim because "Google was itself a party to all the electronic transmissions that are the bases of the plaintiffs' wiretapping claims"); (Mot. at 12). In opposition, Ingrao cites only cases outside of the Third Circuit to support the notion that "the direct party exception does not extend to retailers when they install a wiretap that financially benefits in the third-party wiretapper" (Opp. at 14), and fails to distinguish the binding Third Circuit precedent on which Nutrisystem relies.

Further, Ingrao's argument that "the Third Circuit only decided direct liability under CIPA, not aiding and abetting" (Opp. at 15), ignores that Ingrao must first prove direct liability as to

4

AddShoppers before she can prove an aiding and abetting claim against Nutrisystem. *Garcia v. Build.com, Inc.*, No. 22-CV-1985-DMS-KSC, 2024 WL 1349035, at *7 (S.D. Cal. Mar. 29, 2024) (holding failure to state a direct liability CIPA claim precluded an aiding and abetting CIPA claim). Nor does Ingrao cite any allegations in her complaint that distinguish how she alleges AddShoppers' cookie works from the cookie at issue in *Google*, where the court determined that Google was a party to the transmission and thus not subject to CIPA liability. 804 F.3d at 152.

Ingrao's supplemental authority, *Cole v. Quest Diagnostics, Inc.*, does not support her argument either. As more fully set forth in Nutrisystem's response to Ingrao's notice of supplemental authority filed concurrently herewith, the district court ignored the Third Circuit's decision in *Google* even after the defendant raised it, and did not address or analyze it in its opinion declining to extend the party exception to the third party. No. 2:23-cv-20647-WJM, 2024 WL 3272789, at *4 (D.N.J. July 2, 2024). Nutrisystem respectfully submits that this Court should follow binding Third Circuit authority and refrain from considering the non-binding *Cole* decision given its failure to consider *Google. Camreta v. Green*, 563 U.S. 692, 709 n.7 ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.") (citation omitted).

Finally, Ingrao does not dispute that Nutrisystem was a party to the communication, and thus cannot be held directly liable under CIPA. (Opp. at 14.)

**D.     Nothing in Ingrao's Opposition Saves Her CDAFA Claim**

Ingrao does not refute, and thus concedes, that she fails to allege she is the "owner or lessee of the computer, computer system, computer network, computer program, or data," a necessary allegation under CDAFA. Cal. Penal Code § 502(e)(1); *Wesch v. Yodlee, Inc.*, No. 20-CV-05991-SK, 2021 WL 1399291, at *7 (N.D. Cal. Feb. 16, 2021). Ingrao also does not refute, and thus concedes, that she failed to allege the introduction of a computer contaminant under Cal. Penal

5

Code § 502(c)(8), or that her data was altered, damaged, deleted, or destroyed by AddShoppers' conduct, as required to state a claim under Section 502(c)(1).  Any of these failures warrants dismissal, and all of them combined mandates it. *Litman v. GEICO Cas. Co.*, No. 22-CV-04530-RAL, 2023 WL 5985286, at *2 (E.D. Pa. Sept. 13, 2023) (finding where response "fails to supply contrary authority or to otherwise address Defendant's arguments," the argument was conceded).

Nor does Ingrao distinguish or address Nutrisystem's cited caselaw holding that bare legal conclusions of damage based solely on privacy violations are insufficient to sustain a CDAFA claim. (Mot. at 16 (citing cases).)  Instead, Ingrao claims that "*Facebook Tracking* stands for the proposition that plaintiffs can state an economic injury for their misappropriated data." (Opp. at 18 (quoting *Brown v. Google LLC*, 685 F. Supp. 3d 909, 940 (N.D. Cal. 2023)).)  But in *Brown*, plaintiffs provided the court with evidence that there was a market for their data and that their browsing history carried financial value because Google itself piloted a program where it paid users $3.00 a day for their browsing history. 685 F. Supp. 3d at 940.  Ingrao's complaint contains no such allegation, alleging instead in conclusory fashion that "AddShoppers has caused loss to Plaintiff and the class members in an amount to be proven at trial." (Compl. ¶ 146.)

Ingrao's remaining arguments with respect to her CDAFA claim are irrelevant because she does not and cannot plead damages, such as damage or loss to her computer, computer system, computer network, or data; thus, the Court should dismiss her claims for this independent reason. Cal. Penal Code § 502(c); *In re Google Android Consumer Priv. Litig.*, No. 11-MD-02264 JSW, 2013 WL 1283236 (N.D. Cal. Mar. 26, 2013) (dismissing CDAFA claim because "allegations regarding the diminished value of Plaintiffs' PII are not sufficient to allege damage or loss").

## II.  THE COURT SHOULD STRIKE THE CLASS CLAIMS

Alternatively, the Court should also strike the nationwide class claims now because the "material differences [related to choice of law] are sufficiently obvious from the pleadings,"

making it a pure issue of law presently ripe for the Court's determination. (Mot. at 21 (citing *James v. Walt Disney Co.*, No. 23CV02500EMCEMC, 2023 WL 7392285, at *16 (N.D. Cal. Nov. 8, 2023)).)

In *James*, the court struck the nationwide state law wiretapping class at the motion to dismiss stage. 2023 WL 7392285, at *18. This case presents an identical challenge: Ingrao advances no federal cause of action, yet she seeks to certify a nationwide class on state wiretapping laws which have "material differences" precluding class certification. *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 602, 606 (N.D. Cal. 2015).

Ingrao's argument that "some level of discovery is essential" to class certification is wrong. Whether material differences in state wiretapping laws exist that preclude class certification is a purely legal determination. And, Ingrao nowhere states what discovery she needs. Thus, Ingrao's reliance on *Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 93 (3d Cir. 2011) is misplaced. (Opp. at 19.) First, the Third Circuit acknowledged in *Landsman* that a complaint may demonstrate "that the requirements for maintaining a class action cannot be met" (640 F.3d at 93, n.30). And, that is the case here, as explained in Nutrisystem's motion to dismiss. (Mot. at 21–22 ("Where, as here, it is plain from the face of the pleadings that a nationwide class would be inappropriate, the Court should exercise its discretion to streamline the proceedings…").)

Second, the district court in *Landsman* found at the pleadings stage that a class could not be certified because "crucial *factual* determinations to be made with respect to claims and defenses that will vary from party to party" precluded class certification. 640 F.3d at 93 (emphasis added). The Third Circuit reversed, stating discovery would be appropriate to determine whether individualized *fact* issues would predominate. *Id.* at 93–94. Here, Nutrisystem raises only issues of *law*—not issues of fact—to demonstrate why certification of a nationwide class is improper. (Mot. at 21–22.) Accordingly, the Court may and should strike the nationwide class because "class

7

treatment is evidently inappropriate from the face of the complaint." *Zarichny v. Complete Payment Recovery Servs., Inc.*, 80 F. Supp. 3d 610, 615 (E.D. Pa. 2015) (citing *Landsman*, 640 F.3d at 93 n. 30).

Ingrao's other cited caselaw does not show that a court must wait until class certification to remove nationwide claims either. For instance, Ingrao cites *Grandalski v. Quest Diagnostics Inc.*, 767 F.3d 175, 180–83 (3d Cir. 2014) for the proposition that "the proper time to consider choice of law issues for a nationwide litigation class was at the class certification stage." (Opp. at 19.) However, the Third Circuit actually held that "it was reasonable for the District Court to inquire at the certification stage as to whether the classes posed 'intractable management problems' for trial." *Grandalski*, 767 F.3d at 180. Nothing from *Grandalski* can be read to suggest this same determination cannot also be made *now*, at the motion to dismiss stage. On its face, Ingrao's complaint poses insurmountable case management problems given the vast disparities in state laws, and it thus is reasonable to strike the class claims now. *Zarichny*, 80 F. Supp. 3d at 615.

Additionally, plaintiffs Ingrao and Pacana are both already members of a putative nationwide class, and Ingrao is already a member of a putative California subclass, in the first-filed Northern District of California litigation, *Lineberry v. AddShopper[s], Inc.*, No. 3:23-cv-01996 (N.D. Cal.). (Mot. at 23–24.) As Nutrisystem explained in its motion, Ingrao therefore is an inadequate class representative because her interests are already being represented in more advanced litigation. (Id. at 1, 4–5.) In opposition, Ingrao fails to address this argument and therefore concedes it. *Litman*, 2023 WL 5985286, at *2. This concession alone invalidates Ingrao's viability as a class representative; if a class is certified in *Lineberry*, the *Lineberry* court will have jurisdiction over all those claims and serve "as a guardian of the rights of absent class members." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir. 2004).

Finally, if the Court strikes the class claims now then only Ingrao's individual claims remain. And, if that happens, the Court and the parties would not need to waste resources litigating a futile class certification motion. It is precisely for this reason that courts have "considerable discretion in disposing of a Rule 12(f) motion to strike" whose purpose is to "clean up the proceedings" and "streamline litigation." *Zarichny*, 80 F. Supp. 3d at 615.

### III. THE LITIGATION SHOULD BE STAYED

If the Court does not dismiss Ingrao's claims, then the Court should stay this litigation pending the outcome of the pending *Lineberry* litigation. Ingrao cannot, on the one hand, argue that the Court should follow *Lineberry* and its ruling on the motion to dismiss, despite that the defendants there failed to raise many of the arguments that Nutrisystem raised in its motion to dismiss here, and, on the other hand, argue that the two cases are so different such that this case should proceed separately and concurrently. Ingrao argues in opposition that "this case differs drastically" from *Lineberry*, including because plaintiffs here "seek to certify a Pennsylvania Class, which is not represented" in the *Lineberry* action. (Opp. at 20.) But, the Pennsylvania subclass here is already represented by the nationwide class in *Lineberry* because a nationwide wiretapping class will require applying each state's wiretapping laws, including Pennsylvania. (ECF No. 25-1 at ¶ 79 (defining the proposed nationwide class).)

Ingrao fails to address Nutrisystem's cited caselaw demonstrating that, in applying the first-filed doctrine, the Court should examine the overlap in classes, rather than class representatives, and determine whether the "subject matter of the later filed case substantially overlaps with that of the earlier one." (Mot. at 23 (quoting *Panitch v. Quaker Oats Co.*, No. CV 16-4586, 2017 WL 1333285, at *2, 4 (E.D. Pa. Apr. 5, 2017)).) Instead, Ingrao cites an older line of cases requiring near-identicality between two cases for the first-filed rule to apply. (Opp. at 21 (citing *Grider v. Keystone Health Plan Cent., Inc.*, 500 F.3d 322, 330 (3d Cir. 2007)).) More recent cases in this

District have rejected this inflexible approach, noting a flexible approach is proper when determining the degree of similarity between the two cases. *Palagano v. NVIDIA Corp.*, No. CV 15-1248, 2015 WL 5025469, at *2 (E.D. Pa. Aug. 25, 2015) (deeming *Grider* to be part of the "inflexible" line of cases and dicta in all events and holding "the flexible approach to be proper because it is more consistent with the purposes of the first-filed rule"). This approach "promote[s] comity because it allows a court greater leeway in deferring to a sister court in which an obviously similar (but not identical) case was first filed." *Id.* The flexible approach looks to the similarity of the subject matter of the two litigations, similarities which Nutrisystem explained at length in its motion. *Id.*; (Mot. at 22–25).

Finally, Ingrao's argument that "[a]pplication of the [first-filed] rule would deprive Plaintiffs of the opportunity to pursue and advance their claims under Pennsylvania law against Defendants Nutrisystem and Vivint" (Opp. at 23) ignores that both named plaintiffs here could bring individual claims rather than attempt to represent dueling classes that will overlap and conflict with the first-filed *Lineberry* litigation.

## IV.   CONCLUSION

For these and all the reasons set forth in Nutrisystem's motion, Nutrisystem requests that the Court dismiss all claims against Nutrisystem, or strike the class claims and stay this case.

Dated:  July 26, 2024                                                       Respectfully submitted,

*/s/ Joseph E. Wolfson*                                                  Ari N. Rothman (*pro hac vice*)
Joseph Wolfson                                                              Jane B. Baber (*pro hac vice*)
**STEVENS & LEE, P.C.**                                            **VENABLE LLP**
1500 Market Street                                                          600 Massachusetts Avenue NW
East Tower, Suite 1800                                                   Washington, D.C. 20001
Philadelphia, PA 19102                                                    Telephone: (202) 344-4000
Telephone: (215) 751-1249                                              Email: anrothman@venable.com
Email: joseph.wolfson@stevenslee.com                       Email: jbbaber@venable.com

*Attorneys for defendant Nutrisystem, Inc.*

## **CERTIFICATE OF SERVICE**

I, JOSEPH WOLFSON, ESQUIRE, certify that on this date, the foregoing Reply in support of Nutrisystem's Motion to Dismiss has been filed electronically, and is available for viewing and downloading from the ECF System, has been served via the Court's electronic filing service on all counsel of record.

|  |  |
|---|---|
|  | By:  */s/ Joseph E. Wolfson*  Joseph Wolfson, Esquire |

Dated: July 26, 2024