IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMELIA INGRAO and ELISABETH PACANA, | : | CIVIL ACTION NO. |
| | : | |
| Plaintiffs, | : | Case No: 2:24-cv-1022-JHS |
| | : | |
| v. | : | |
| | : | |
| ADDSHOPPERS, INC., NUTRISYSTEM, INC. and VIVINT, INC. | : | |
| | : | |
| Defendants. | : | |

## VIVINT, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS

In her Response brief, Plaintiff Pacana fails to show that she suffered any concrete harm as required for Article III standing or to satisfy the requirements of the Pennsylvania Wiretapping and Electronic Surveillance Control Act ("WESCA") as to Vivint. Importantly, Pacana does not allege that any of her personal or private information was obtained through her use of Vivint's website. Indeed, Plaintiff directly states that she did not provide her email address to Vivint, provide personal information to Vivint, or make a purchase on Vivint's website. Complaint at ¶ 66. Pacana also failed to show that any contents of communication protected by WESCA were intercepted.

Further, Vivint's use of technology to collect and share information is not hidden as Plaintiff suggests. To the contrary, Vivint's website includes a privacy policy that specifically informs all users of this fact. Plaintiff herself sought out and used Vivint's website, and by doing so, impliedly consented to Vivint's privacy policy. "Reasonable people understand that what they do on the Internet is not completely private. How could it be?" *Farst v. AutoZone, Inc.*, 2023 WL 7179807, at *4 (M.D. Pa. Nov. 1, 2023) (citations omitted). Finally, Plaintiff Pacana failed to

establish that the communications were allegedly intercepted in Pennsylvania. For these reasons, Plaintiffs' Complaint against Vivint should be dismissed with prejudice.[1]

### I. Plaintiff has failed to state an injury in fact sufficient to confer Article III Standing or to satisfy the elements for a WESCA claim.

In her Response, Plaintiff paints with a broad, generic brush when describing the "harm" she allegedly sustained. But the allegations in her Complaint belie those arguments, instead showing that Plaintiff sustained no actionable harm *as to Vivint*. "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "For an injury to be particularized, it must affect the plaintiff in a ***personal and individual way***." *Id*. (emphasis added). A concrete injury "must actually exist," and be "real, and not abstract." *Id.* at 340. "Even if a plaintiff alleges a statutory violation… Article III standing still 'requires a concrete injury[.]'" *Cook v. GameStop, Inc.,* 689 F. Supp. 3d 58, 63 (W.D. Pa. 2023) (citing *TransUnion LLC v. Ramirez*, 549 U.S. 413, 424 (2021)).

In her Complaint as to Vivint, Plaintiff specifically states that she did not provide any personal information, including her email address, to Vivint. *See* Plaintiff's Complaint at ¶66. Rather, she states that at some unspecified time after she visited the website of another company called Lamin-x, she received an email – ***from Lamin-x***. *Id*. at 63. She later discovered, after receiving the Lamin-x email, that "she had been tracked ***by at least a dozen companies for several years***." *Id*. at 63, 66 (emphasis added). As set forth in Plaintiff's Complaint:

> 66. After she received the email [from Lamin-x], Plaintiff Pacana requested her data from AddShoppers and discovered she had been **tracked by at least a dozen companies for several years**, including the exact dates and times she visited other websites that (unbeknownst to her) were part of the AddShoppers network. One such website was Vivint, which surreptitiously captured information about Plaintiff

---

[1] Given the U.S. Supreme Court's recent decision in *Mallory v. Norfolk Southern Railway Co.*, 600 U.S. 122 (2023) concerning general jurisdiction, Vivint withdraws its personal jurisdiction argument.

>Pacana's visit to its website on January 24, 2023. Although **she never provided personal information (including her email) to Vivint**, the company carefully tracked her visit and sent information back to AddShoppers to be included in the Data Co-Op.

*Id*. at ¶66 (emphasis added). Importantly, Plaintiff states that the electronic communication allegedly gathered by Vivint concerning Ms. Pacana's use of its website is the following:

```
vivint_com:
    email campaigns:
    - date entered campaign: '2023-01-24T20:49:30.860000+00:00'
      last status change: '2023-01-24T20:49:30.860000+00:00'
      last visit: '2023-03-10T18:45:58.213000+00:00'
```

*Id*. at ¶66. Plaintiff does not allege that she ever received an email from Vivint. *Id*. She cannot allege that Vivint captured or shared her email address – because she admittedly never gave it to Vivint. *Id.* Inexplicably, Plaintiff did not name the company that ***did send her an email*** as a defendant in this lawsuit. Nor does she name the "at least a dozen" other companies that allegedly tracked her "for several years." *Id*. Instead, she named Vivint, despite the admitted lack of personal information or substance concerning her visit to its website. Based on her own allegations, Vivint collected only a record of her visit to its website. *Id*. The information does not include her name, email address, personal or sensitive information, financial information, or any information for which she could have a reasonable expectation of privacy or that caused her any actual harm.

Plaintiff cannot show that Vivint harmed her in a "***personal and individual way,***" or that she sustained a concrete injury that "actually exist[s]" due to Vivint's conduct. At most, she has only pleaded a "conjectural or hypothetical" or "abstract" theories – which are not sufficient to establish standing or concrete harm as to Vivint. *Spokeo*, 578 U.S. at 338. "Eavesdropping on communications that do not involve personal information, personally identifiable information, or information over which a party has a reasonable expectation of privacy does not amount to a

3

concrete injury." *Massie v. Gen. Motors LLC*, No. 21-CV-787, 2022 WL 534468, at *5 (D. Del. Feb. 17, 2022); *see also TransUnion*, 594 U.S. at 424; *Cook*, 689 F. Supp. 3d at 65.

The Court dismissed almost identical claims for lack of standing in *In re BPS Direct, LLC*, 2023 WL 8458245, at *12 (E.D. Pa. Dec. 5, 2023). Several website users sued the defendant owners of Bass Pro Shops and Cabella's based on their use of "third-party vendors, called session replay providers, to create and deploy session replay code on their websites to track and analyze website visitors' activities." *Id.* at *2. As in this case, plaintiffs alleged that "[s]ession replay code is capable of capturing nearly every action taken by a website visitor while they are on the website" and can "aggregate and store website users' data" across all of the sites they monitor to potentially "match the fingerprint with the user identity." *Id.* at *2-*3. The court also noted that Bass and Cabela's place their Privacy Policy and Terms of Use advising of the data collection "on the homepages of their websites in smaller low-contrasting font at the bottom of the webpages" and "do not prompt website visitors to agree to or view the Privacy Policy or Terms of Use during their website visit." *Id.* at *1.

The *BPS Direct* court found that the plaintiffs whose sensitive personal information was not disclosed lacked standing and dismissed those claims with prejudice. *Id.* at *6. The court held, "[w]e find Website Users who did not disclose highly sensitive personal information such as medical diagnosis information or financial data from banks or credit cards cannot establish concrete harm." *Id.* In other words, plaintiffs' allegations that the session replay *can* collect personal data is insufficient if they did not, in fact, do so for those plaintiffs. *Id.* at *6, *16. The *BPS Direct* court relied on the reasoning in *Adams v. PSP Grp., LLC*, 691 F. Supp. 3d 1031, 1040 (E.D. Mo. 2023), also with similar facts to the instant case:

> Judge White granted Pet Supplies' motion to dismiss for lack of standing because **Ms. Adams did not allege she input sensitive, personal, or confidential information**

**while on the website, she did not allege she made a purchase on the website, and she did not allege she shared any financial information such as credit card details**. Judge White reasoned, "A large portion of the Complaint is devoted to explaining Session Replay Code and its capabilities ... But importantly, **the Complaint does not allege or describe what information Plaintiff provided to Defendant while she was visiting its website**.

*In re BPS Direct, LLC*, 2023 WL 8458245, at *13 (citing *Adams*, 691 F. Supp.3d at 155-156)(emphasis added).  The *BPS Direct* court also explicitly rejected the reasoning and holding of *James v. Walt Disney Co.*, 2023 WL 7392285, at *7 (N.D. Cal. Nov. 8, 2023)[2], also relied upon by Plaintiff here.  As the *BPS Direct* court explained, "[w]e disagree with Judge Chen's reasoning to the extent it suggests viewing activity, search activity, and purchase behavior is enough to establish concrete harm. Judge Chen relied on precedent set by the Court of Appeals for the Ninth Circuit before it had the benefit of the Supreme Court's guidance in *TransUnion*. We are guided instead by the law of standing following *TransUnion*." *Id*. at *14 (citations omitted).

Plaintiff relies heavily on California cases in support of her argument that she has Article III standing and has sustained actionable harm. Specifically, throughout her Response brief, Plaintiff cites a recent decision (brought by the same counsel) in their own pending litigation in California, *McClung v. AddShopper, Inc.*, 2024 WL 189006 (N.D. Ca. Jan. 17, 2024).  But in doing so, Plaintiff appears to conflate the roles – and respective standing arguments – of AddShoppers with that of the retailers, including Vivint.  Citing *McClung*, Plaintiff argues that ***AddShoppers*** "[m]isappropriates a person's browsing activity across a network of thousands of online retailers and uses it to barrage the person's devices with unwanted email communications (particularly without giving the person a way to put a stop to the communications)," which, she argues, "adequately allege[s] 'the type of intrusion of privacy and seclusion that can be vindicated in federal courts.'" Response at p. 9 (citing *McClung*, 2024 WL 189006, at *1).  But the quoted

---

[2] *Motion to certify appeal denied*, No. 23CV02500EMCEMC, 2024 WL 664811 (N.D. Cal. Feb. 16, 2024).

analysis in *McClung* concerned standing against **AddShoppers** – not the retailers. *See id*. at *1-*2. Even the California district court in *McClung* acknowledged that "standing is a close question" for the retailer defendants. *Id*. at *2. And, in essence, this is merely a long-winded version of the same reasoning that the *Cook* court rejected as "circular reasoning [that] simply folds back onto a bare statutory violation, which the Supreme Court has clarified cannot be the basis for standing." *Cook*, 689 F. Supp. 3d at 64 (citing *TransUnion*, 549 U.S. at 424).

Plaintiff also cites *In re Google Inc. Cookie Placement Consumer Priv. Litig*., 806 F.3d 125, 132 (3d Cir. 2015), in support of her argument that she has sustained concrete harm. But the *Google Cookie Placement* case also predates *TransUnion.* It is also distinguishable because it involved defendants creating code to circumvent the settings on users' browsers and placing third-party cookies on their browsers ***even after the users had activated cookie blockers***. *Id.* That is not the circumstance here. Plaintiff has not alleged that she had activated cookie blockers or that Vivint used code to install cookies to circumvent the browser settings. Plaintiff's reliance on *Google Cookie Placement* case is not persuasive or on point.

Plaintiff criticizes Vivint's reliance on Pennsylvania district court cases on point, arguing that they are "session play" cases, which makes them distinguishable. But a closer look at those cases demonstrates that they are much more aligned with facts of the instant case than other cases cited by Plaintiff. *See Farst v. AutoZone, Inc.,* No. 1:22-CV-1435, 2023 WL 7179807, at *3 (M.D. Pa. Nov. 1, 2023); *Cook v. GameStop, Inc.,* 689 F. Supp. 3d 58, 70 (W.D. Pa. 2023). First, as opposed to the California cases applying California law, *Farst* and *Cook* are decisions from federal district courts in Pennsylvania analyzing the contours of a Pennsylvania statute, WESCA. Second, like this case, the session replay cases involve the alleged collection of website users' keystrokes and browsing activity – ***not*** the collection of personal or sensitive information. Again, Plaintiff

Pacana specifically states that she did not even provide her email address to Vivint; she only alleges that Vivint tracked her browsing activity on its website. *See* Complaint at ¶66. Vivint did not collect any personal, financial, credit card, or health information due to Plaintiff's use of its website. *Id*. The *Farst* and *Cook* cases are instructive and on point with this case.

Plaintiff cannot satisfy the concrete injury requirement of standing because she fails to allege any concrete harm – physical, economic, or otherwise – resulting from her use of the Vivint website. Rather, Plaintiff offers only conclusory allegations of statutory violations, which are insufficient to confer standing. *Cook,* 689 F. Supp. 3d at 63 (citing *TransUnion LLC*, 549 U.S. at 424). Accordingly, Plaintiff's allegation is insufficient to allege concrete harm required for WESCA or Article III, and her complaint should be dismissed.

## II. Plaintiff fails to state a claim against Vivint under the Pennsylvania Wiretapping and Electronic Surveillance Control Act.

For similar reasons, Plaintiff Pacana has failed to state a claim under WESCA. As set forth above, Plaintiff has failed to plead or demonstrate any injury or harm. Additionally, Plaintiff has failed to allege that any "contents of communication" were intercepted, as required by WESCA, because website browsing activities and keystrokes are not protected. Vivint's website provided notice in its Privacy Policy of the collection of user information, and Plaintiff had no reasonable expectation of privacy on a retail website. Additionally, Plaintiff fails to plead that the alleged interception occurred in Pennsylvania. Plaintiff Pacana's complaint should be dismissed for failure to satisfy the required elements under WESCA.

### a. Plaintiff Pacana fails to allege that Vivint intercepted any specific contents of communications.

Plaintiff argues that she has pled "a broad scheme in which the defendants generally acquired and tracked the internet usage." Response at p. 12 (quoting *In re Google Cookie Placement*, 806 F.3d at 139), and that this alleged scheme "if it operate[s] as alleged," must involve

7

"the collection of at least some 'content' within the meaning of the Wiretap Act." *Id*. But Plaintiff's vaguely pleaded scheme is not enough. Plaintiff must identify specific content intercepted due to her visit to Vivint's website, which she cannot do. *See* Complaint at ¶66.

Plaintiff cites *Oliver v. Noom, Inc.*, No. 2:22-CV-1857, 2023 WL 8600576, at *1 (W.D. Pa. Aug. 22, 2023)*, another "session replay" case, in support of her argument that Vivint gathered "contents of a communication" in this case. But the *Noom* case is entirely distinguishable on this issue, due to the vast difference in the personal information inputted by the website user and collected. Noom is a weight loss service that requires users to input personal and detailed information in a quiz on its website, including the individual's name, age, weight, personal habits, health information, and goals. As alleged by the plaintiffs in *Noom*, the website uses a session reply provider called FullStory, which "according to the Amended Complaint, 'records all website visitor actions, including information typed by the website users while on the website'" and "can include names, emails, phone numbers, addresses, social security numbers, date[s] of birth, and more[.]'" *Id*. Even in those circumstances, the court held that the "contents of communication inquiry" is "'a case-specific one' that will largely depend on surrounding facts and context," and therefore additional discovery was required to determine whether such information was "content" in the context of that case. *Id*. at *7 (quoting *In re Google Cookie Placement*, 806 F.3d at 137).

By contrast here, Plaintiff Pacana does not allege that she entered any "highly personal information and substantive communications that can be linked directly to a website user's identity" like in *Noom*. *Id.* Rather, she alleged the exact opposite: "**she never provided personal information (including her email) to Vivint**. . . ." *See* Complaint at ¶66 (emphasis added). She never entered her email address, date of birth, social security number, bank account numbers, health information, or any other personal information when using the website. *Id.* at ¶66. She

8

never purchased anything on the website. She never received an email from Vivint. *Id*. at ¶63. She has only identified very limited information concerning her browsing history that Vivint allegedly collected from her use of Vivint's website. *Id*. at ¶66. Any actual "content" of communications" collected was not due to Pacana's use of the Vivint website; to the extent *any* content of communications concerning Pacana was collected – which she has failed to show – it is more likely from her use of the websites of "at least a dozen companies for several years." *Id*. But it was not and cannot be connected with Vivint. Simply put, data concerning Ms. Pacana's browsing history cannot form the basis of a claim under WESCA against Vivint. *See Cook*, 2023 WL 5529772, at *8 ("When a website user moves the cursor or clicks the mouse, it does not plausibly reveal the substance of any communication. . . . Navigating through a website's multiple pages is not the substance of a communication; it's an action taken to go to a digital location.").

### b. Plaintiff consented to the alleged interception of communications.

Additionally, Plaintiff has failed to state a claim under WESCA because she voluntarily used Vivint's website, which contained a clear statement that Vivint may collect information about which Plaintiff complains. Plaintiff argues that she was wiretapped before she could have consented. But Vivint's Privacy Policy states, "[w]e may automatically collect information or inferences about you through tracking technologies such as cookies and tools that track your usage of Vivint Websites or the Vivint mobile app." Plaintiff Pacana consented by accessing the website.

Further, although Plaintiff complains that she did not *expressly consent* to the collection of data, express consent is not required under WESCA. In *Popa v. Harriet Carter Gifts, Inc*., 52 F.4th 121, 125 (3d Cir. 2022), the Third Circuit noted that plaintiff's failure to read terms and conditions is not dispositive with respect to consent:

> The Defendants argue Popa impliedly consented to the interception because Harriet Carter included a privacy policy on the website when she visited. Though Popa

claims she never saw the policy, the Pennsylvania Supreme Court has said that **"prior consent" in § 5704(4) does not require "actual knowledge."** *Commonwealth v. Byrd*, –––– Pa. ––––, 235 A.3d 311, 319 (2020).

*Id.* (emphasis added). Implied consent is sufficient to defeat a WESCA claim. As the *Farst* Court stated, "[r]easonable people understand that what they 'do on the Internet is not completely private. How could it be?'" 2023 WL 7179807, at *4 (citations omitted). "Farst's decision to visit AutoZone's publicly accessible website rather than its physical store did not increase his expectation of privacy or expose him to a concrete harm that otherwise did not exist." *Id*. at *6.

By accessing and using Vivint's website, Plaintiff impliedly consented to the terms of Vivint's privacy policy, including the potential collection of data. Plaintiff's claim under WESCA should be dismissed for this reason as well.

### c. Plaintiff fails to allege that the alleged interception took place in Pennsylvania.

Plaintiff argues that because Pacana "is a Pennsylvania resident, the reasonable inference is she accessed the website using a computer in the Commonwealth." Response at p. 13. But Plaintiff failed to plead where the alleged interception occurred. "Pennsylvania courts have declined to extend the WESCA to cover conduct occurring wholly outside the Commonwealth—at least in the context of recording telephone conversations." *Popa*, 52 F.4th at 130 (citing *Larrison v. Larrison*, 750 A.2d 895, 898 (Pa. Super. Ct. 2000)). Plaintiff cannot rely on inferences alone to confer jurisdiction in this Court. It is an equally reasonable inference that Plaintiff accessed Vivint's website outside of the Commonwealth. Plaintiff failed to plead anything other than that she is a Pennsylvania resident. This is not sufficient, and Plaintiff's complaint should be dismissed.

## CONCLUSION

Defendant Vivint respectfully requests that the Court grant the motion to dismiss.

        Respectfully submitted,

        FROST BROWN TODD LLP

By: */s/ Tara Hopper Rice*
    Tara Hopper Rice
    PA I.D. #313724
    Union Trust Building
    501 Grant Street, Suite 800
    Pittsburgh, PA 15219
    trice@fbtlaw.com

    *Counsel for Defendant,*
    *Vivint, Inc.*

**CERTIFICATE OF SERVICE**

I, TARA HOPPER RICE, ESQUIRE, certify that on this date, the foregoing **VIVINT, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS** has been filed electronically, and is available for viewing and downloading from the ECF System, has been served via the Court's electronic filing service on all counsel of record, and/or was also served via USPS on the following parties who have not consented to electronic service:

Charles E. Schaffer
**Levin Sedran & Berman**
510 Walnut Street, Suite 500
Philadelphia, PA 19106


J. Austin Moore *(pro hac vice)*
Norman E. Siegel *(pro hac vice)*
Kasey Youngentob *(pro hac vice)*
**Stueve Siegel Hanson LLP**
460 Nichols Road, Suite 200
Kansas City, MO 64112


*Attorneys for Plaintiffs,*
*Amelia Ingrao and Elisabeth Pacana*


Tomio B. Narita
**Womble Bond Dickinson**
50 California Street, Ste 2750
San Francisco, CA 94111

*Attorney for Defendant AddShoppers, Inc.*


Joseph Wolfson
**Stevens & Lee, P.C.**
1500 Market Street
East Tower, Suite 1800
Philadelphia, PA 19102

Ari N. Rothman *(pro hac vice)*
Jane B. Baber *(pro hac vice)*
**VENABLE LLP**
600 Massachusetts Avenue NW
Washington, D.C. 20001

*Attorneys for Defendant Nutrisystem, Inc.*

Dated: July 26, 2024              By:   */s/ Tara Hopper Rice*
                                        Tara Hopper Rice