UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMELIA INGRAO, AND ELIZABETH PACANA, individually and on behalf of all others similarly situated,<br><br>**Plaintiffs,**<br><br>v.<br><br>ADDSHOPPERS, INC., NUTRISYSTEM, INC., VIVINT, INC.<br><br>**Defendants.** | Civil Action No: 2:24-cv-01022-JHS |

ADDSHOPPERS, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS
CLASS ACTION COMPLAINT

**I.      INTRODUCTION**

The Opposition Brief filed by Plaintiffs Amelia Ingrao and Elisabeth Pacana ("Plaintiffs") does not address the deficiencies in their Complaint that were identified in the motion filed by AddShoppers, Inc. ("AddShoppers"). The Court does not have personal jurisdiction over AddShoppers. It is a small company based in North Carolina that operates a website that is available nationwide. Plaintiffs have not alleged that AddShoppers expressly aimed its conduct at Pennsylvania residents, that they were harmed by AddShoppers' alleged conduct while in Pennsylvania, or that AddShoppers knew that they would suffer the brunt of their harm in Pennsylvania.  Nor have Plaintiffs alleged they could plausibly amend to make such allegations, or that any targeted discovery could help them to do so. Personal jurisdiction is lacking, so the claims against AddShoppers case should be dismissed without leave to amend.

Regardless, Plaintiffs have not stated a valid cause of action against AddShoppers under the two statutes at issue here: the Pennsylvania Wiretapping and Electronic Surveillance Control

1

Act, 18 Pa. C.S. §§ 5701, *et seq*. ("WESCA") or the California Computer Access and Data Fraud Act, Cal. Penal Code § 502 ("CDAFA"). The WESCA claim fails because Pacana fails to allege in her Complaint or identify in her brief any facts about the contents of the communications that allegedly were intercepted by AddShoppers. Given this and given her admission that she did not provide any personal identifying information during her website visits, her WESCA claim fails. Regarding the CDAFA claim, Ingrao never alleges in her Complaint or in her brief that she suffered the specific type of damage covered by that statute, *i.e.,* damage to the computer system, network, program, or data contained on her computer. Neither Plaintiff has identified any facts they could include in an amended complaint, if leave to amend were granted.

Finally, if any of Plaintiffs claim survive dismissal, the Court should stay the action. All of the factors supporting a stay under the first filed rule are present here. The *McClung* action filed by the same counsel is substantially similar, has been pending for over a year, and is advancing through discovery toward class certification. There is no reason to burden this Court or these parties with parallel litigation on opposite sides of the country. A stay is appropriate.

II.     **PLAINTIFFS' PERSONAL JURISDICTION ARGUMENTS IGNORE THEIR OWN COMPLAINT AND THE LAW**

Plaintiffs agree that to establish personal jurisdiction over AddShoppers, they must show (1) AddShoppers "committed an intentional tort," (2) Plaintiffs "felt the brunt of the harm in [Pennsylvania] such that the forum can be said to be the focal point of the harm suffered by [Plaintiffs] as a result of that tort," and (3) AddShoppers "expressly aimed" its allegedly "tortious conduct at [Pennsylvania] such that the forum can be said to be the focal point of the tortious activity." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265-66 (3d Cir. 1998). Moreover, Plaintiffs do not dispute that to satisfy the "expressly aimed" element they must "point to specific activity indicating" that AddShoppers "expressly aimed" its conduct at Pennsylvania <u>and</u> facts

2

showing that AddShoppers "knew" Plaintiffs would suffer the brunt of the harm in Pennsylvania. *Id.* at 266. Plaintiffs have not satisfied any of these elements.

A. **Plaintiffs Have Not Shown AddShoppers "Committed An Intentional Tort"**

Plaintiffs' contention that "AddShoppers 'easily' satisfies the intentional tort requirement by installing a wiretap on a retailer's website . . ." ignores the allegations of the Complaint. *See* Dkt. 39 at ECF p. 13. As discussed in AddShoppers' Motion, Plaintiffs admit in their Complaint that AddShoppers does not install the code. *See* Dkt. 31-1 at ECF p. 8 & n. 2; *see also* Dkt. 1, ¶¶ 16, 36-37. Plaintiffs never attempt to explain this blatant contradiction in their pleading. As in *Sacco*, Plaintiffs' allegations about who installed the code "are inherently contradictory" and therefore should be disregarded. *See Sacco v. Mouseflow, Inc.,* 2:20-cv-02330-TLN-KJN, 2022 U.S. Dist. LEXIS 179071, at *10 (E.D. Cal. Sept. 30, 2022) (courts need not accept as true "inherently contradictory" allegations); *see also In re Columbia Tuition Refund Action*, 523 F. Supp. 3d 414, 424, n. 1 (S.D.N.Y. 2021) ("Where a plaintiff's own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss.") (cleaned up) (citation omitted). Plaintiffs do not identify any other "intentional tort" that supposedly satisfies personal jurisdiction, so they have not satisfied the first element.

Neither of the cases Plaintiffs cite apply here. In *S.D. v. Hytto Ltd*, the defendant operated the "app" that allegedly intercepted the plaintiff's electronic transmissions. *See* No. 18-cv-00688-JSW, 2019 U.S. Dist. LEXIS 229909, at **3-4 (N.D. Cal. May 14, 2019). In *Saleh v. Nike, Inc.*, the defendant "intentionally installed the wiretap at issue" on the company's website. *See* 562 F. Supp. 3d 503, 512-13 (C.D. Cal. 2021). Here, by contrast, Plaintiffs concede AddShoppers does

3

not install the code, and they do not allege AddShoppers operates the software after AddShoppers' customers install it on their websites.

B.   **Plaintiffs Have Not Satisfied The "Expressly Aimed" Element**

Plaintiffs do not claim Ingrao, an alleged California resident, has any connection whatsoever to Pennsylvania. *See* Dkt. 39 at ECF pp. 12-15. Nor does either Plaintiff contend they were physically located in Pennsylvania when their internet activity was supposedly tracked, or when they allegedly received emails from AddShoppers. *Id*. And although Pacana says she lives in Pennsylvania, Plaintiffs do not argue that Vivint or Lamin-x, the companies who own the websites she allegedly visited, have any connection to Pennsylvania. *Id*.

Rather, Plaintiffs argue AddShoppers expressly aimed its conduct at Pennsylvania because: 1) Nutrisystem (whose website Ingrao allegedly visited) is physically located in Pennsylvania, and 2) "AddShoppers directly interacted with Plaintiff Pacana by sending her targeted personalized emails." *Id.* at ECF pp. 13-14. Neither allegation is sufficient.

Plaintiffs' claims against AddShoppers have nothing to do with Nutrisystem's physical location. Ingrao's claim is based on allegations that AddShoppers "tracked" her "visit[s]" to Nutrisystem's nationally available website. *See* Dkt. 1, ¶¶ 56-57.[1] Plaintiffs would have suffered the same alleged injury regardless of whether Nutrisystem was a Pennsylvania company. The physical location of Nutrisystem is therefore irrelevant to the "expressly aimed" analysis. *See,*

---

[1] Pacana does not allege she visited Nutrisystem's website. *Id.*, ¶¶ 61-68. The personal jurisdiction "determination is claim specific," meaning that "a conclusion that the District Court has personal jurisdiction over one of the defendants as to a particular claim . . . does not necessarily mean it has personal jurisdiction over that same defendant as to [plaintiff's] other claims." *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001) (district court failed to "conduct a claim-specific analysis" in determining personal jurisdiction). Thus, even if the Court finds Nutrisystem's alleged physical presence in Pennsylvania is sufficient to establish personal jurisdiction over Ingrao's claim (it is not), jurisdiction is still not established over Pacana's claim.

4

*e.g.*, *Schnur v. Papa John's Int'l, Inc.*, 2:22-CV-1620 NR, 2023 U.S Dist. LEXIS 150947, at *9 (W.D. Pa. Aug. 28, 2023), *appeal docketed*, No. 23-2573 (3d Cir. Aug. 30, 2023) ("*Schnur*") ("presence or absence of [the defendant's] stores [in Pennsylvania] doesn't touch on the relevant tortious conduct in this case – which is the use of [software code] to instantaneously capture [the plaintiff's] interactions with [the defendant's website], no matter where he is located."); *Doe v. FullStory, Inc.*, 2024 U.S. Dist. LEXIS 11571, at **29-32, _ F. Supp. 3d _ (N.D. Cal. Jan. 17, 2024) ("*FullStory*") (embedding code on website of company located in forum state not enough to confer jurisdiction); *see also Remick*, 238 F.3d at 259 ("Given that the website . . . was accessible worldwide, there is no basis to conclude that the defendants . . . kn[ew] that harm was likely to be caused [in the forum]."). Indeed, as in *Schnur*, AddShoppers' code is "deploy[ed] . . . indiscriminately to a national audience" by its customers and there are no allegations that the code is designed in a way that is "expressly aimed" at Pennsylvania. *Schnur*, 2023 U.S Dist. LEXIS 150947 at **5-6.

The factual distinctions Plaintiffs seek to draw between their allegations and the allegations in *FullStory* (*see* Dkt. 39 at ECF p. 14) are not relevant to the personal jurisdiction analysis. While the specifics of each technology may vary, at their core, this suit and *FullStory* are based on allegations that internet companies are using software to illegally track users' interactions with websites or applications, including alleged collection of personal information without consent. It makes no difference that AddShoppers allegedly used the information it collected to send marketing emails to individuals, while the defendant in *FullStory* used the information it collected to "provide analytics and services" to its client. Nor have Plaintiffs made any allegation that the emails contained any Pennsylvania-specific content or were expressly aimed at Pennsylvania. *See Britax Child Safety v. Nuna Int'l B.V.*, 321 F. Supp. 3d 546, 557 (E.D. Pa. 2018) (allegation that

defendant sends "promotional emails through its website to residents of this District" was insufficient to confer personal jurisdiction).

Nor is it relevant that AddShoppers allegedly emailed Pacana.[2] As Plaintiffs concede, *see* Dkt. 39 at ECF p. 14, none of their claims against AddShoppers are based on the sending of emails. *See* Dkt. 1, ¶¶ 72, 96-110, 135-48. Conduct that does not "touch on the relevant tortious conduct in this case" is not relevant to the personal jurisdiction analysis. *Schnur*, 2023 U.S Dist. LEXIS 150947 at *9; *see also Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 504 (9th Cir. 2023) (an injury arising "out of a defendant's forum contacts require[s] 'but for' causation, in which 'a direct nexus exists between a defendant's contacts with the forum state and the cause of action.'").[3] Moreover, Plaintiffs do not allege they were physically present in Pennsylvania when they received the emails. Nor do they claim they can amend to add any such allegation. Even if they could, it would not matter. *See* Dkt. 31-1 at ECF p. 14.

The "expressly aimed" element is not satisfied. Plaintiffs do not – and, indeed, cannot – demonstrate AddShoppers "knew" Plaintiffs would suffer the brunt of the harm in Pennsylvania. *See IMO Indus. Inc.*, 155 F.3d at 266. AddShoppers could not have <u>known</u> Plaintiffs would suffer the brunt of the harm in Pennsylvania. Plaintiffs do not allege AddShoppers knew they would be in Pennsylvania. Indeed, Plaintiffs never claim they were, in fact, in Pennsylvania when they suffered the harm. *See IMO, Indus,* 155 F.3d at 266 ("knowledge that the plaintiff is located in the forum is necessary" but not sufficient "to the application of *Calder*"). It certainly cannot be said

---

[2] For the reasons already discussed, *see* n.1, *supra*, even if the email to Pacana is sufficient to establish jurisdiction over her claim, it is not sufficient to establish jurisdiction over Ingrao's claim. *See Remick*, 238 F.3d at 255.
[3] Plaintiffs do not explain how their assertion that "the sending of emails is a direct byproduct and exploitation" of the alleged tracking, *see* Dkt. 39 at ECF p. 14, is relevant to the personal jurisdiction analysis. It is not.

that Pennsylvania was "the focal point of the tortious activity." *See IMO Indus., Inc.*, 155 F.3d at 265-66.

Plaintiffs' heavy reliance on *McClung v. AddShoppers, Inc.*, No. 23-cv-01996-VC, 2024 U.S. Dist. LEXIS 8725 (N.D. Cal. Jan. 17, 2024), is misplaced for several reasons. Unlike here, both websites the *McClung* plaintiffs allegedly visited (where they were allegedly tracked) were associated with companies located in the forum state (California). *Id*. at \*\*2-3. Here, only one of the three websites Plaintiffs visited (Nutrisystem) is alleged to be affiliated with a Pennsylvania company. *McClung* also, is not persuasive because that court never analyzed whether AddShoppers "expressly aimed" its allegedly "tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity," as this Court must. *See IMO Indus., Inc.*, 155 F.3d at 265-66.[4] The *McClung* court found personal jurisdiction was established because AddShoppers allegedly contracted with California companies (including the two companies whose websites the plaintiffs visited) for "the express purpose of enabling AddShoppers to collect customer data and conduct unsolicited customer outreach," those "agreements with California companies directly caused the harm." *Id*. at \*3. As discussed above, however, the physical location of the companies is irrelevant to the personal jurisdiction analysis in this case, because Plaintiffs would have suffered the same alleged injury regardless of where the companies whose websites they visited were located.

Indeed, the reasoning of *McClung* is at odds with another decision in the same district. *See FullStory*, 2024 U.S. Dist. LEXIS 11571. The plaintiff in *FullStory* argued specific personal jurisdiction was established because the defendant "intentionally provided its [] software to [the

---

[4] Indeed, it is unclear what test the *McClung* court applied. *See McClung*, 2024 U.S. Dist. LEXIS 8725 at \*\*2-3.

company] in California, that it 'assisted' [the company] with incorporating the technology on the [the company's] California-based platform, and that the operation of the technology" invaded the privacy of plaintiff and other Californians. *Id*. at \*\*29-30. The *Fullstory* court held personal jurisdiction was not established because,

> the requisite 'forum-specific' focus for a 'broadly accessible web platform' like FullStory cannot be established solely by allegations that FullStory knew it was processing the data of California-based consumers for a California-based merchant. . . . Something more is required.

*Id*. at \*32. *Fullstory* is more persuasive. As in *Fullstory*, the fact that AddShoppers provided its software for use on a Pennsylvania company's nationally available website, promoting a nationally available service, is not sufficient to establish express aiming.

### C. Plaintiffs Have Not Shown They "Felt The Brunt Of The Harm" In Pennsylvania

Plaintiffs argue "AddShoppers knew harm would occur in Pennsylvania because it placed wiretaps on many Pennsylvania businesses' websites" and it supposedly "knew" a "significant number of Pennsylvanians would visit its partner websites because they form a significant portion of both companies' target market." Dkt. 39 at ECF p. 15. But this "brunt of the harm" element does not turn on whether AddShoppers "knew" harm would be suffered in Pennsylvania or whether other Pennsylvanians would visit the sites. *See LaSala v. Marfin Popular Bank Pub. Co.*, 410 Fed. App'x 474, 477 (3d Cir. 2011) ("[T] the foreseeability of harm being suffered in a forum is insufficient to establish personal jurisdiction under *Calder*"). Rather, it turns on whether <u>these Plaintiffs</u> "felt the brunt of the harm in" Pennsylvania. *See IMO Indus., Inc.*, 155 F.3d at 265-66. Plaintiffs could not have felt the brunt of the harm in Pennsylvania if they were not there.[5]

---

[5] That Pacana is allegedly a resident of Pennsylvania is insufficient. *See Rudolph v. Safari Club Int'l*, 2013 U.S. Dist. LEXIS 38790, at \*12-13; 19-21 (W.D. Pa. Mar. 20, 2013) (allegations that

8

Moreover, as discussed above, Plaintiffs have admitted that AddShoppers' clients, not AddShoppers, install the alleged "wiretaps" (*i.e.*, the software code). *See supra*, II.A. Again, Plaintiffs' contradictory argument should be disregarded.

### III.     PACANA HAS FAILED TO PLAUSIBLY ALLEGE A VIOLATION OF WESCA

"The WESCA offers a private civil cause of action to any person whose wire, electronic or oral communication is intercepted, disclosed or used in violation of [that statute] against any person who intercepts, discloses or uses or procedure any other person to intercept, disclose or use, such communications." *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4d 121, 125 (3d Cir. 2022). In its motion, AddShoppers argued that Pacana's WESCA claim should be dismissed, because she failed to plead: 1) the actual content that was purportedly intercepted, and 2) where the interception allegedly occurred. *See* Dkt. 31-1 at ECF pp. 18-20. In their Opposition, Pacana does not point to any allegations in the Complaint that address these deficiencies, nor does she argue that she could plausibly amend to do so. The WESCA claim should be dismissed.

Pacana still does not describe in her Opposition brief the content of the alleged communication that was captured by AddShoppers. And she has already conceded she did <u>not</u> provide any personal information to Vivint. *See* Dkt. 1, ¶ 66. Given this, she necessarily cannot plausibly allege any substantive content was captured and dismissal is warranted.

Pacana points to cases suggesting that the collection of the URLs visited by a plaintiff could "potentially" support a WESCA claim, depending on what was collected. Dkt. 39 at ECF p. 18. AddShoppers did not argue for a "bright line" ruling that the collection of URLs can never support a WESCA claim, as Pacana suggests. Instead, AddShoppers argued that Pacana had failed to allege

---

plaintiff was Pennsylvania resident who suffered brunt of harm caused by tortious conduct in Pennsylvania were too conclusory to satisfy second element of *Calder* test).

*what* content was purportedly intercepted. Thus, her citation to *Braun v. Phila. Inquirer, LLC*, 2023 WL 7544160 (E.D. Pa. Nov. 13, 2023) does not advance the inquiry, because she has not made factual allegations about the content of what AddShoppers allegedly captured.

Nor is this case like *Oliver v. Noom,* 2023 WL 8600576 (W.D. Pa. Aug. 22, 2023), where the plaintiff allegedly provided specific weight loss goals and other personal information in connection with taking an online quiz. The *Oliver* court was persuaded that type of information, which "relate[d] to Oliver's health and weight loss goals" *could be* " 'content' <u>*if it is part of the substantive information conveyed to the recipient*</u>." *Id.* (emphasis added); *see also In re Google Inc. Cookie Placement Consumer Priv. Litig.,* 806 F. 3d 125, 137 (3d Cir. 2015). Once again, unlike *Oliver*, Pacana admits she "never provided **_any_** personal information to [Lamin-x]" and "she never provided personal information (including her email) to Vivint." Dkt. 1, ¶¶ 61, 66 (emphasis added).

Plaintiffs' reliance on *McClung* is misplaced because *McClung* did not involve a claim under WESCA. And *James v. Walt Disney Co.*, --- F. Supp. 3d ---, 2023 U.S. Dist. LEXIS 200997 *28 (N.D. Cal. Nov. 8, 2023), is distinguishable because, unlike here, the defendant there allegedly intercepted plaintiffs' "mouse clicks and keystrokes." The court there noted that this level of pleading was a closer call in light of *Cook v. GameStop*, 689 F.Supp.3d 58, (W.D. Pa. Aug 28, 2023), but did not rule on that issue because leave had been granted to replead.

In sum, unlike Plaintiffs' cases, there are no allegations here describing what information was purportedly intercepted. It necessarily was <u>not</u> personal information, because Pacana admits she did not provide personal information when she visited either website. She has not stated a claim and has not said she could amend to do so. Dismissal without leave to amend is proper.

10

### IV. INGRAO FAILS TO ALLEGE QUALIFYING DAMAGE OR LOSS UNDER THE CDAFA

Ingrao argues she adequately pleads damages based on the ruling in *Brown v. Google, LLC*, 685 F. Supp. 3d 909 (N.D. Cal. 2023), which held "that plaintiffs can state an economic injury for their misappropriated data." *Id.* at 940. The *Brown* Court did not specifically address the argument raised by AddShoppers here, however, which is whether Ingrao can allege an economic injury of the <u>specific</u> <u>type</u> contemplated by the CDAFA, *i.e.*, damage to the plaintiff's computer system, network, program, or data contained on that computer. Instead, *Brown* simply observed that because Google had created a market for browsing data, offering users $3.00 for their browsing history, the Court could not grant summary judgment for Google on the grounds that plaintiffs had suffered no damages. *See id*. If Google raised the argument made here by AddShoppers, the *Brown* Court never addressed it.

The courts that have specifically addressed this argument have <u>rejected</u> the notion that allegations regarding the loss of control over one's data are sufficient injury to support a CDAFA claim:

> [w]hile the Court agrees with the *Brown* court that a loss of control over personal data may constitute an economic injury, the Court disagrees that such an injury is contemplated by the CDAFA. Instead, the Court agrees with the majority of courts to consider the issue, and finds that the CDAFA's private right of action contemplates some damage to the computer system, network, program, or data contained on that computer, as opposed to data generated by a plaintiff while engaging with a defendant's website.

*Heiting v. Taro Pharms. United States, Inc.,* 2023 U.S. Dist. LEXIS 233570, at *24 (C.D. Cal. Dec. 26, 2023); *see also Cottle v. Plaid Inc.,* 536 F. Supp. 3d 461, 488 (N.D. Cal. 2021) ("Plaintiffs offer no support for their theories that the loss of the right to control their own data, the loss of the value of their data, and the loss of the right to protection of the data, as discussed above, is 'damage or loss' within the meaning of the CDAFA."); *Doe v. Meta Platforms, Inc.,* 2023 U.S. Dist. LEXIS

158683, at *23-24 (N.D. Cal. Sept. 7, 2023) (dismissing CDAFA claim, no damage or loss under the statute: "diminished value of information claim is foreclosed by the reasoning in *Cottle*."); *Pratt v. Higgins,* 2023 U.S. Dist. LEXIS 122849, at *27-28 (N.D. Cal. July 17, 2023) (finding access to communications, notes, and medical information did not create the type of loss contemplated by CDAFA's private civil cause of action).  Here, as in *Heiting*, *Cottle*, *Doe*, and *Pratt*, Ingrao's failure to allege the specific type of "damage or loss" that may be recovered under California Penal Code § 502(e)(1) warrants dismissal of her CDAFA claim as to AddShoppers.

### V.     THIS ACTION SHOULD BE STAYED UNDER THE FIRST-FILED RULE[6]

To the extent any claims remain after the Court rules on this motion, the case should be stayed under the first-filed rule. Plaintiffs do not dispute, nor could they reasonably dispute, that the subject matter of this case is substantially similar to the subject matter of the *McClung* action that their counsel are prosecuting in California.  Indeed, in opposing Defendants' Rule 12(b)(6) challenges, Plaintiffs rely on the *McClung* court's ruling. Yet, when opposing AddShoppers' motion to stay, Plaintiffs do an about-face, claiming this case is unlike *McClung*.  It is not.

It is undisputed that, like the plaintiffs in *McClung*, the plaintiffs here assert a claim under California's CDAFA, and that the plaintiff's WESCA claim in this case is akin to the plaintiff's CIPA claim in *McClung*.  Plaintiffs also do not dispute that two of the three classes they seek to represent are identical to the proposed classes in the *McClung* action.  Nor do they dispute that the *McClung* action has been, and is being, actively litigated, with the parties engaged in extensive discovery efforts. A recent mediation session in that case ended without any settlement, and the

---

[6] Plaintiffs do not oppose Defendant AddShoppers' Request for Judicial Notice. *See* Dkt. 32.

parties are now engaged in discovery to prepare for class certification.[7]

Plaintiffs identify a smattering of minor, inconsequential differences between the two actions and suggest – erroneously – that they will be foreclosed from litigating their claims if this case is stayed. This makes no sense. AddShoppers does not seek to dismiss (or even to transfer) Plaintiffs' claims under the first-filed rule. Rather, it seeks very narrow relief, designed to facilitate sound and efficient judicial administration of this case, and to avoid duplicative efforts and possibly inconsistent rulings.

As they must, Plaintiffs concede there "is a common thread" between the two actions, and acknowledge that a court can "enjoin[] the subsequent prosecution of similar cases." Dkt. 39 at ECF p. 26 (internal quotation marks omitted). Despite this, they contend the cases do not sufficiently overlap to justify applying the first-filed rule and resist a stay because this case "involves a Pennsylvania plaintiff, Pennsylvania causes of action, and claims against [different retailer defendants], and because they "seek to certify a Pennsylvania Class, which is not represented in the *McClung* action." *Id.* at ECF pp. 26-27. According to Plaintiffs, a stay "would deprive [them] of the right to pursue their" Pennsylvania law claims against Nutrisystem and Vivint, "a resolution of the *McClung* action could only resolve some of [their] claims against AddShoppers," and they "would still have their Pennsylvania claims against Nutrisystem and Vivint remaining, which will require discovery and briefing just as the *McClung* action required extensive discovery and briefing for the claims against the different party retailers in that case."

---

[7] Defendants Nutrisystem and Vivint also participated in the July 2, 2024 mediation in the *McClung* action. Plaintiffs, of course, are represented by the same counsel who represent the plaintiffs in the *McClung* action.

*Id.* at 21. Plaintiffs do not cite any authority, binding or otherwise, holding that the first-filed rule applies only when the parties and claims are identical.[8]

As AddShoppers explained in its opening memorandum (Dkt. 31-1 at ECF p. 28), a minority of courts "have adopted a narrow approach to the first-filed rule, requiring practically identical claims between identical parties arising from identical circumstances for the rule to apply," *Palagano v. NVIDIA Corp.*, 2015 U.S. Dist. LEXIS 112146, *4-5 (E.D. Pa. Aug. 25, 2015), but the Third Circuit "has not definitively ruled on the scope of the first-filed rule," *see Landau v. Viridian Energy Pa LLC*, 274 F. Supp. 3d 329, 333 (E.D. Pa. 2017) (summarizing the two approaches). Given the objectives the first-filed rule seeks to achieve – efficiency and comity – AddShoppers urges the Court to align with the majority of courts that "have adopted a more flexible approach to the first-filed rule, finding that the rule applies to cases that are *substantially similar*." *Palagano*, 2015 U.S. Dist. LEXIS 112146 at *4-6 (italics added; cataloging cases taking both approaches).

Those courts note the "rule is not limited to mirror image cases" involving only perfectly aligned parties and issues, emphasizing "the principles underlying the rule support its application where the subject matter of the later filed case substantially overlaps with that of the earlier one." *Palagano,* 2015 U.S. Dist. LEXIS 112146 at *5 (internal quotation marks omitted). Crucial for those courts "'is subject matter.'" *Id.* (quoted citation omitted); *see Phoenix Ins. Co. v. Teva*

---

[8] *Grider v. Keystone Health Plan Cent., Inc.*, 500 F.3d 322, 323 (3d Cir. 2007) addressed the scope of the "permissible exercise of power [by a district court] under the All Writs Act," 28 U.S.C. § 1651(a). There, defendants in a pending, similar MDL proceeding suggested the *Grider* case would be appropriate for transfer to the MDL proceeding as a tag-along action. The Chairman of the Judicial Panel on Multidistrict Litigation denied transfer. Subsequently, a settlement was reached in the MDL proceeding that would release the *Grider* plaintiffs' claims. Those plaintiffs successfully obtained an injunction from the district court enjoining the parties to the MDL proceeding from settling, or attempting to settle, the case "without express approval of this court." *See id.* at 324-27. *Grider* could not be more unlike this case.

*Pharm. Indus.*, 381 F. Supp. 3d 416, 421 (E.D. Pa. 2019) ("Substantial overlap in subject matter between two actions is significant under the first-filed rule."). Plaintiffs do not and cannot dispute the subject matter of their lawsuit substantially overlaps with the subject matter of *McClung*. Indeed, it is identical. *See Phoenix Ins. Co.*, 381 F. Supp. 3d at 422 ("Plaintiffs in both cases rely upon nearly identical theories of liability.").

Plaintiffs rely on two District Court decisions, from Missouri and Virginia, neither of which justify letting this case proceed simultaneously with the *McClung* action. In *Martin v. Medicredit, Inc.*, 4:16CV01138 ERW, 2016 U.S. Dist. LEXIS 157690 (E.D. Mo. Nov. 15, 2016), the court declined to stay the action because there was "a lack of identity among the defendants in the two actions," *id.* at *10, and there were "significant differences" between the putative classes in the two cases, *see id.* at *10-11. The court emphasized that while there was some overlap between the "class descriptions" in the two cases, there were also "several distinctions between the two putative classes." *Id.* at *12. Given this, the court concluded the parties in the two cases were "dissimilar. Moreover, the Court finds the issues in the case do not sufficiently overlap." *Id.* at *13-14. In essence, that court followed the inflexible, minority approach.

Here, again, it is undisputed the subject matter and the legal issues in the two cases overlap greatly, and there is more than minimal overlap between the putative classes in the two cases.[9] It

---

[9] The McClung plaintiffs seek to represent two classes, the first of which they defined as:

> All persons who had their personal information collected by AddShoppers and whose online activity was tracked by AddShoppers (the "Class").

Dkt. 32 at Ex. 3 at ¶ 79. They also seek to represent a "California subclass," defined as:

> All California residents who had their personal information collected by AddShoppers and whose online activity was tracked by AddShoppers (the "California Subclass").

15

is of no consequence that there may be some differences in the proposed class definitions. *See Thompson v. Global Mktg. Research Servs.*, 2016 U.S. Dist. LEXIS 6350, *7-9 (E.D. Pa. Jan. 20, 2016) (first-to-file rule applied where subject matter of cases was "substantially the same," even though class definitions differed). Nor does it matter that the plaintiffs differ between the actions or that there are different website defendants in the two lawsuits. The "parties need not be identical." *Havassy v. Keller Williams Realty, Inc.*, 2022 U.S. Dist. LEXIS 177637, *10 (E.D. Pa. Sept. 29, 2022) (citation omitted).

Unlike here, the *Martin* court also observed that the first-filed case was "not advanced much further than the instant action," and noted that the moving party "has taken inconsistent positions regarding the viability of the proposed class certification in" the two cases, assuming "for purposes of its motion here that a class will be certified in" the earlier-filed case even though it had "oppose[d] class certification in its answer to the plaintiff's complaint" in that case. Combined, these facts "militate[d] against application of the 'first-to-file rule." *Id.,* 2016 U.S. Dist. LEXIS at *14-15. No such considerations are present here.

*Gibbs v. Haynes Invs., LLC*, 368 F. Supp. 3d 901 (E.D. Va. 2019), does not help Plaintiffs as it is wholly inapposite. The *Gibbs* court was not asked to, nor did it consider, staying the later-filed action under the rule. Although that court found the first-to-file factors did not support a transfer, it also determined that even if the factors were present, it would exercise its discretion

---

*Id.*
      Plaintiffs here seek to represent three classes, the first two of which (the Class and the California Subclass) are <u>identical</u> to the classes the McClung plaintiffs seek to represent. *See* Dkt. 1 at ¶ 72. The third class – the "Pennsylvania Subclass" – is defined as follows:

> All Pennsylvania residents who had their personal information collected by AddShoppers and whose online activity was tracked by AddShoppers ("Pennsylvania Subclass").

*Id*.

and decline to transfer the case.  *See id.* at *918-19.  But the court engaged in no such exercise with respect to whether a stay was appropriate.  *Gibbs* does not aid Plaintiffs.

Nor does it matter that this case invokes an additional state's laws, because "the Plaintiff's claims are substantially similar to the claims in the [*McClung* action]."  *See Orndorff v. Ford Motor Co.*, 2020 U.S. Dist. LEXIS 56592, *8-9 (E.D. Pa. Mar. 31, 2020) (first-to-file rule supports decision to grant joint motion to transfer case, where other pending lawsuits involved similar claims, as well as "breach of applicable consumer protection statutes," noting all claims arose from same conduct and involved same witnesses and evidence); *Panitch v. Qaker Oats Co.*, 2017 U.S. Dist. LEXIS 51737 at *11 (E.D. Pa. April 5, 2017), (rejecting argument that transfer was not appropriate because, *inter alia*, plaintiffs sought to represent different state subclasses; "The additional claims in this action do not render the first-filed rule inapplicable.") (citation omitted).

Plaintiffs contend that although they "were tracked by AddShoppers' tracking cookies, they were tracked while visiting different and unrelated websites owned by different defendants," and their "claims arise out of their visit to a particular website, not other websites that other plaintiffs visited."  Dkt. 39 at ECF p. 28.  They do not, however, explain the significance (if any) of this difference, other than to say that it would not be just to permit the *McClung* action "to be the only one that can move forward, while other plaintiffs are left with no ability to pursue their largely unrelated claims against different defendants."  *Id.*  Again, however, AddShoppers does not seek to eliminate plaintiffs' "ability to pursue" their claims; it seeks only to stay the case while the *McClung* action is prosecuted.

Plaintiffs maintain that one of the many cases AddShoppers cited (*MLI RX, LLC v. GlaxoSmithKline LLC,* 2023 U.S. Dist. LEXIS 94271 (E.D. Pa. May 30, 2023)), is "inapposite" simply because it involved identical claims and actions.  *Id.*  As was readily apparent from its

citation to the case, though, AddShoppers cited it for the fact that, like this case, the later-filed complaint was a "cut and paste complaint with minimal alterations or edits." *See* Dkt. 31-1 at ECF p. 29. In any event, as AddShoppers made clear in its opening memorandum, the later-filed action need not involve the exact same parties, exact same claims, or even the exact same issues for the first-filed rule to apply.

AddShoppers is a defendant in both actions. Plaintiffs in both cases challenge AddShoppers' business model in the same way. The "central issue" in both cases is whether AddShoppers impermissibly tracked, monitored, and collected website users' information and then used that information to communicate with those users. Proving this will likely require much of the same evidence from a substantially overlapping list of witnesses. Counsel are the same in both cases. Two of the classes proposed in this case are identical to the classes proposed in the *McClung* action, and the third is at most a subclass of the first. The parties have engaged in extensive written discovery in the *McClung* action, and deadlines in that action are approaching. That the plaintiffs differ between the actions or that there are different website defendants in the two lawsuits does not prevent applying the first-filed rule. The two actions could hardly be more similar. AddShoppers submits this action should be stayed.

## VI.   CONCLUSION

For the reasons stated herein, and in the AddShoppers' opening brief, AddShoppers respectfully requests that the Court dismiss Plaintiffs' claims against it for lack of personal jurisdiction or, in the alternative, for failure to state a claim on which relief can be granted. Absent dismissal, AddShoppers requests the Court stay this action pending a final judgment in the *McClung* action.

|  |  |
|---|---|
|  | **RESPECTFULLY SUBMITTED:** |
| Dated: July 26, 2024 | **WOMBLE BOND DICKINSON (US) LLP** |

*/s/ Sarah E. Meyer*
Sarah E. Meyer (Pa. Bar No. 319388)
100 Light Street, 26th Floor
Baltimore, MD 21202
Phone: (410) 545-5807
Email: Sarah.Meyer@wbd-us.com

*/s/ Tomio B. Narita*
Tomio B. Narita (admitted *pro hac vice*)
50 California Street, Suite 2750
San Francisco, CA 94111
Phone: (415) 765-6274
Email: Tomio.Narita@wbd-us.com

*/s/ Jeffrey A. Topor*
Jeffrey A. Topor (admitted *pro hac vice*)
50 California Street, Suite 2750
San Francisco, CA 94111
Phone: (415) 765-6276
Email: Jeff.Topor@wbd-us.com

Attorneys for Defendant AddShoppers, Inc.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 26th day of July 26, 2024, a copy of the foregoing was filed and served via the Court's CM/ECF system upon all counsel of record.

*/s/ Sarah E. Meyer*
Sarah E. Meyer (Bar No. 319388)