IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **Amelia Ingrao and Elisabeth Pacana,** | : |
| *Plaintiffs* | : **CIVIL ACTION NO.** |
| v. | : |
| | : **2:24-cv-01022-JHS** |
| **AddShoppers, Inc., Nutrisystem, Inc., and Vivint, Inc.** | : |
| *Defendants* | : |

**NUTRISYSTEM, INC.'S SUPPLEMENTAL BRIEF
IN SUPPORT OF ITS MOTION TO DISMISS**

Nutrisystem, Inc. submits this supplemental brief in support of its motion to dismiss (ECF No. 25) pursuant to this Court's order at ECF No. 65.

## I. INTRODUCTION

Two binding Third Circuit reported cases mandate dismissing all of Ingrao's claims against Nutrisystem.

***First,*** *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121 (3d Cir. 2022) mandates dismissing Ingrao's WESCA claim (Count 1). *Popa* requires plaintiffs suing for WESCA violations to allege that their communications were intercepted from their browsers located in Pennsylvania. *Id*. at 130–31. Ingrao fails to allege that her communications were intercepted from her web browser located in Pennsylvania. And, she never offered to cure this failure through an amended pleading or otherwise. Indeed, she cannot do so because she alleges that she is a California resident. Thus, the Court should dismiss Ingrao's WESCA claim.

***Second,*** *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125 (3d Cir. 2015) mandates dismissing Ingrao's CIPA claim (Count 4). The Third Circuit in *Google* found that Google did not violate CIPA because it communicated directly with the plaintiffs. *Id.*

at 145, 152. Thus, Google did not intercept anything unlawfully under CIPA by reason of the party exception which provides that a defendant is not liable for communicating directly with the plaintiff. *Id.* at 152. Here, Ingrao alleges that Nutrisystem aided and abetted unlawful interceptions by AddShoppers. (Compl. ¶ 132.) Thus, Nutrisystem can only be liable if AddShoppers violated CIPA. However, Ingrao alleges AddShoppers communicated directly with her. Thus, AddShoppers did not intercept anything under CIPA because Ingrao communicated directly with AddShoppers. Because AddShoppers did not intercept anything under CIPA and thus did not and could not violate the statute, Nutrisystem cannot as a matter of law be held liable for aiding and abetting AddShoppers because AddShoppers is not liable in the first instance.

*Google* also mandates dismissing Ingrao's CDAFA claim (Count 5). The Third Circuit affirmed dismissal of a CDAFA claim where plaintiffs failed to allege damage or loss under the statute. *Google*, 806 F.3d at 152. Plaintiffs in *Google* did not allege, for example, "any impairment to the integrity or availability of data, a program, a system, or information," or any "costs, lost opportunities to sell, or [that they] lost the value of their data." *Id.* at 148–49. Here, Ingrao did not adequately allege damage or loss required by CDAFA. Nor has Ingrao offered to cure this failure through an amended pleading or otherwise. Thus, the Court should dismiss Ingrao's CDAFA claim.

At base, neither Ingrao's briefing nor arguments made during the September 13, 2024, hearing changes these binding authorities or the inescapable conclusion that dismissal is mandated when these authorities are applied to Ingrao's complaint even assuming all of the allegations in her complaint are true. And, to be sure, *McClung* (the earlier California case plaintiffs' counsel filed) cannot and does not change these binding precedents either. Accordingly, the Court should follow these authorities and dismiss all of Ingrao's claims against Nutrisystem.

**II.     ARGUMENT**

    **A.     *Popa* Mandates Dismissing Ingrao's WESCA Claim (Count 1)**

The Third Circuit in *Popa* held that electronic communications are intercepted at the plaintiff's browser. *Popa*, 52 F.4th at 131.  In doing so, the Court noted that "Pennsylvania courts have declined to extend the WESCA to cover conduct occurring wholly outside the Commonwealth." *Id.* at 130.  Here, Ingrao alleges she is a California resident and does not allege that she or her computer were located in Pennsylvania during the alleged interceptions. (Compl. ¶ 6.)  Thus, *Popa* requires dismissing her WESCA claim.

        *1.     Third Circuit Precedent Requires Interception to Occur in Pennsylvania to Support a WESCA Claim.*

The Third Circuit in *Popa* held that the place of interception for electronic communications under WESCA occurs at the plaintiff's browser, which is the point where the third-party service provider routes the communications to itself. *Popa*, 52 F.4th at 131.

In *Popa*, plaintiff sued retailer Harriet Carter and third-party marketing service NaviStone for WECSA violations. *Id.* at 124.  Plaintiff alleged that Harriet Carter's servers were located in Pennsylvania while NaviStone's servers were located in Virginia. *Popa v. Harriet Carter Gifts, Inc.*, 544 F. Supp. 3d 535, 538 n.2 (W.D. Pa. 2021), *vacated and remanded*, 52 F.4th 121 (3d Cir. 2022).  Plaintiff alleged that when she visited the Harriet Carter website, NaviStone placed a cookie on her browser that tracked her activities across the website and transmitted information about her website visit to NaviStone. *Popa*, 52 F.4th at 125.  Plaintiff further alleged that NaviStone violated WESCA by intercepting her communications during plaintiff's website visit on Harriet Carter, and that Harriet Carter violated WESCA by "procuring any other person, *i.e.*, NaviStone, to intercept her communications." *Id.* at 126 (quotation cleaned up).

The district court granted summary judgment for defendants, finding "if an interception did occur, no factfinder could reasonably conclude that the interception occurred in Pennsylvania." *Popa*, 544 F. Supp. 3d at 547.  The district court did so even though plaintiff alleged that the website operated by Harriet Carter had its servers in Pennsylvania. *Id.* at 538, 538 n.2 (alleging NaviStone's website servers were in Virginia and Harriet Carter's website servers were in Pennsylvania).  Plaintiff appealed. *Popa*, 52 F.4th at 125.

On appeal, defendants argued that WESCA could not reach their conduct because any alleged interception occurred outside of Pennsylvania. *Id.* at 126.  Therefore, the Third Circuit had to determine the point of interception for electronic communications and stated that the "answer is important because Pennsylvania courts have declined to extend the WESCA to cover conduct occurring wholly outside the Commonwealth." *Id.* at 130.

After conducting a thorough analysis, the Third Circuit held that "[e]lectronic communications are similarly 'intercepted' when software reroutes communications to an interceptor." *Id.*  In the case of NaviStone's cookie, the Third Circuit held that "NaviStone intercepted Popa's communications at the point where it routed those communications to its own servers" which was "***at Popa's browser***, <u>not</u> where the signals were received at NaviStone's servers." *Id.* at 131 (emphasis added).  Because the record was unclear as to whether plaintiff and her browser were in Pennsylvania when she accessed the Harriet Carter website, the Third Circuit remanded to the district court to make that determination. *Id.* at 132.

In formulating the binding rule that electronic communications are intercepted where the user's browser is located, the Third Circuit considered—and declined to adopt—a different point of interception.  The *Popa* court noted that one possible intercept point "is when Popa's electronic communications reached their final destination at NaviStone's servers in Virginia." *Id.* at 130.  The

Third Circuit declined to adopt this rule and stated in a footnote "[w]hether this theory extends to the WESCA or electronic communications is another question for another day." *Id.* at 131 n.7.

Therefore, the rule set forth by binding Third Circuit authority is that the interception occurs where the plaintiff's browser was located when plaintiff visited the website with the third-party cookie, and that interception must occur in Pennsylvania to support a WESCA claim. *Id.* at 130–31.

### 2. *Ingrao's Alleged Interception Did Not Occur in Pennsylvania*

Applying the *Popa* rule to Ingrao's allegations, the point at which AddShoppers' cookie intercepted Ingrao's electronic communications if at all occurred wholly outside of Pennsylvania in her home state of California. Accordingly, Ingrao's WESCA claim must be dismissed.

Ingrao alleges she is a California resident. (Compl. ¶ 6.) Ingrao alleges that AddShoppers placed a cookie on her browser that tracked her visit on Nutrisystem's website. (Compl. ¶¶ 36, 55–56.) Ingrao alleges that her electronic communications were sent to directly to AddShoppers via the AddShoppers cookie when she arrived on the Nutrisystem website. (Compl. ¶¶ 36, 55–56, 93.)

Thus, like NaviStone's cookie in *Popa*, Ingrao alleges that AddShoppers' cookie on her browser sent the communications directly to the third-party service provider, AddShoppers. *Popa*, 52 F.4th at 125. *Popa* held that the point of NaviStone's interception was where it routed the communications to its own servers at Popa's browsers, and not when the signals were received at NaviStone's servers. *Id.* at 131. Therefore, under binding Third Circuit authority, the point of AddShoppers' interception occurred if at all where Ingrao's browser was located: California where she lives according to the complaint. (Compl. ¶ 6.) Ingrao makes no allegations of being anywhere else when she accessed Nutrisystem's website. Thus, the only plausible inference to be drawn from Ingrao's own allegations, taken as true, is that she and her browser were located in California when the cookie allegedly routed her electronic communications to AddShoppers. Under the *Popa*

rule, the interception occurred in California. Ingrao thus alleges conduct wholly outside of Pennsylvania, which WESCA does not cover. *Popa*, 52 F.4th at 130.

Ingrao's argument during oral argument that the Court should allow discovery on where AddShoppers' servers are located does not save Ingrao's WESCA claim. First, where AddShoppers located its servers is irrelevant under *Popa* because the Third Circuit declined to adopt the rule that the interception occurs where the communications are received. *Popa*, 52 F.4th at 131 n.7. Second, Ingrao alleges that AddShoppers is incorporated in Delaware with its principal place of business in North Carolina and makes no allegations that AddShoppers has servers in Pennsylvania. (Compl. ¶ 8.)

Ingrao's argument during the September 13 hearing that the interception may have occurred in Pennsylvania because Nutrisystem is headquartered there and may have website servers there also is irrelevant under *Popa*. In *Popa*, Harriet Carter was incorporated in Pennsylvania, had its principal place of business in Pennsylvania, and its servers were located in Pennsylvania. *Popa*, No. 2:19-cv-00450-WSS, ECF No. 38, Am. Compl. ¶ 4; *Popa*, 544 F. Supp. 3d at 538 n.2. Despite this, neither the district court nor the Third Circuit found Harriet Carter's presence in Pennsylvania sufficient to support a WESCA claim. *Popa*, 544 F. Supp. 3d at 546 ("[T]he point of acquisition must have occurred within Pennsylvania for WESCA to impose liability upon NaviStone."); *Popa*, 52 F.4th at 131 (finding the location of plaintiff's browser to be the dispositive location under WESCA).

Thus, under *Popa*'s binding precedent, the point of interception as applied to Ingrao's allegations was at Ingrao's browser in California, wholly outside of Pennsylvania. This alone mandates dismissing her WESCA claim. Ingrao's WESCA claim also fails for the other reasons set forth in Nutrisystem's motion to dismiss and reply in support (ECF Nos. 25, 53), and for all

the reasons raised by Nutrisystem's counsel at oral argument including because no contents of Ingrao's communications were ever intercepted.

### B. *Google* Mandates Dismissing Ingrao's Remaining Claims (Counts 4 and 5)

The Third Circuit's decision in *Google* mandates dismissing Ingrao's CIPA claim (Count 4) and CDAFA claim (Count 5) because the *Google* court addressed and affirmed dismissing both causes of action under materially identical circumstances presented in Ingrao's complaint.

#### *1.    The Material Claims in* Google

In *Google*, plaintiffs alleged that Google and third-party marketing companies placed tracking cookies on plaintiffs' web browsers and used the cookies to send messages from plaintiffs' browsers to defendants' servers. *Google*, 806 F.3d at 130, 140–42. Plaintiffs brought federal claims against all defendants, and CIPA and CDAFA claims against Google. *Id.* at 133. Defendants moved to dismiss for failure to state a claim, and the district court granted the motion on that basis. *Id.* at 133–34. On appeal, the Third Circuit affirmed dismissing the CIPA and CDAFA claims against Google. *Id.* at 152.

#### *2.    *Google* Mandates Dismissing Ingrao's CIPA Claim (Count 4)*

##### a.    *Google*'s Application of the Party Exception

CIPA has a party exception that exempts from liability parties to the allegedly intercepted communications. *Williams v. What If Holdings, LLC*, No. C 22-03780 WHA, 2022 WL 17869275, at *3 (N.D. Cal. Dec. 22, 2022) ("[A] party to the communication is exempt from liability under CIPA.").

In *Google*, the Third Circuit affirmed dismissing the CIPA claim because it found the CIPA party exception applied, exempting Google from liability because it was a party to the

7

communications with plaintiffs. *Google*, 806 F.3d at 152. To support its holding, the Third Circuit applied its analysis of the federal Wiretap Act to the CIPA claim because both statutes contain party exceptions. *Id.*

In discussing the federal Wiretap Act claim, the Third Circuit noted that plaintiffs alleged that defendants employed cookies that embedded onto plaintiffs' browsers. *Id.* at 141. Then, plaintiffs alleged that the defendants tracked the plaintiffs' internet history when the cookie on plaintiffs' browser communicated directly with defendants' own servers. *Id.* at 141–42. Based on these allegations, the Third Circuit found that defendants were the "intended recipients of the transmissions at issue—i.e., GET requests that the plaintiffs' browsers sent directly to the defendants' servers." *Id.* at 142.

In analyzing the CIPA claim and applying the party exception, the Third Circuit found "the pleadings demonstrate that Google itself was a party to all the electronic transmissions that are the bases of the plaintiffs' wiretapping claims." *Id*. at 152. Thus, the Third Circuit held "we will affirm the dismissal of the California Invasion of Privacy Act claim for the same reasons we affirm the dismissal of the federal Wiretap Act claim." *Id.*

      b. <u>The Party Exception Applies to Ingrao's CIPA Claim Against AddShoppers</u>

Here, Ingrao sues Nutrisystem for aiding and abetting CIPA violations by AddShoppers. Thus, Nutrisystem is only liable for violating CIPA if AddShoppers violated CIPA. *Garcia v. Build.com, Inc.*, No. 22-CV-1985-DMS-KSC, 2024 WL 1349035, at *7 (S.D. Cal. Mar. 29, 2024). However, Ingrao's allegations are identical to plaintiffs' allegations in *Google* such that the party exception bars her CIPA claim as to AddShoppers and thus bars her CIPA claim as to Nutrisystem.

Specifically, Ingrao alleges that AddShoppers' cookie was on her browser and tracked her website visit on Nutrisystem's website. (Compl. ¶¶ 36, 55–56, 59.) Then, Ingrao alleges that

8

AddShoppers' cookie on her browser automatically transmitted her website visit information to AddShoppers' servers. (Id. at ¶ 36.)  Thus, Ingrao's own allegations mirror the allegations in *Google*: AddShoppers' cookie communicated directly between her browser and AddShoppers, making AddShoppers the intended recipient of the electronic transmissions sent by the cookie. Under *Google*, AddShoppers is a direct party to the communications such that it falls within the party exception of CIPA. *Google*, 806 F.3d at 152.  And, because AddShoppers did not violate CIPA, then Nutrisystem cannot be held liable for aiding and abetting a violation that did not occur, mandating dismissal of this claim. *Garcia*, 2024 WL 1349035, at *7.

At oral argument, Ingrao attempted to distinguish *Google* by claiming that there was a prior relationship between the plaintiffs and Google which meant that plaintiffs intended to communicate with Google.  This argument does not save her CIPA claim from dismissal.  First, having a prior relationship is irrelevant under *Google*, and there is nothing in the decision holding that having a prior relationship changes the party exception.  Instead, what mattered to the Third Circuit in applying the party exception was that the electronic transmissions were sent from plaintiffs' browsers direct to Google's servers. *Google*, 806 F.3d at 152.  This is exactly what Ingrao alleges occurred between her browser and AddShoppers. (Compl. ¶ 36.)  Second, Ingrao alleges that she *did* have a relationship with AddShoppers prior to her visit to the Nutrisystem website by alleging that the AddShoppers cookie was already on her browser by the time she landed on the Nutrisystem website. (Compl. ¶ 59.)

Accordingly, *Google*'s application of the party exception mandates dismissing Ingrao's CIPA claim against Nutrisystem.  Ingrao's CIPA claim also fails for all the reasons set forth in Nutrisystem's motion to dismiss and reply in support (ECF Nos. 25, 53) and for all the reasons raised by Nutrisystem's counsel at oral argument, including because no contents of Ingrao's communications were ever intercepted.

### 3. *Google* Mandates Dismissing Ingrao's CDAFA Claim (Count 5)

#### a. *Google* Affirmed Dismissal of CDAFA Claim Due to No Allegations of Damage or Loss

The district court in *Google* dismissed plaintiffs' CDAFA claim because plaintiffs failed to allege damage or loss under the statute. *Google*, 806 F.3d at 152. In reaching its conclusion, the district court applied the same reasoning it used for dismissing the Computer Fraud and Abuse Act ("CFAA") claim. *Id.*

Both CDAFA and the CFAA require allegations of damage or loss to state a claim. *Id.* at 148, 152. "Damage" under the CFAA means "any impairment to the integrity or availability of data, a program, a system, or information" while "loss" means that plaintiffs "incurred costs, lost opportunities to sell, or lost the value of their data as a result of their data having been collected by others." *Id.* at 148–49. Similarly, under CDAFA, a plaintiff may recover compensatory damages in the form of "any expenditure reasonably and necessarily incurred by the owner or lessee to verify that a computer system, computer network, computer program, or data was or was not altered, damaged, or deleted by the access." Cal. Penal Code § 502(e)(1).

On appeal, the *Google* plaintiffs argued that they had properly pleaded "loss" under the CFAA because they had alleged their personally identifiable information ("PII") was both a currency and marketable commodity that was taken from them. *Google*, 806 F.3d at 148. The Third Circuit noted that the "complaint plausibly alleges a market for internet history information such as that compiled by the defendants." *Id.* at 149. However, plaintiffs failed to allege facts "suggesting that they ever participated or intended to participate in the market they identify, or that the defendants prevented them from capturing the full value of their internet usage information for themselves." *Id.* The Third Circuit also found that plaintiffs failed to allege they had incurred any "costs, lost opportunities to sell, or lost the value of their data." *Id.* The Third Circuit did not

disturb the district court's finding that plaintiffs failed to allege "damage" and affirmed the district court's dismissal for plaintiffs' failure to plead "loss" within the meaning of the CFAA. *Id*. at 148–49.  Based on this, the Third Circuit affirmed dismissal of the CDAFA claim for the same reasons. *Id.* at 152.

            b.  <u>Ingrao Also Fails to Allege Damage or Loss Under CDAFA</u>

  Ingrao fails to allege damage or loss as required by CDAFA and the Third Circuit.

  First, Ingrao fails to allege that she was damaged by defendants' actions, such as by "any expenditure reasonably and necessarily incurred by the owner or lessee to verify that a computer system, computer network, computer program, or data was or was not altered, damaged, or deleted by the access." Cal. Penal Code § 502(e)(1).

  Second, while Ingrao alleges that there is a market for her PII generally (Compl. ¶¶ 29, 69), she fails to allege that she "ever participated in or intended to participate in the market" for her PII that she identifies in her complaint, or that she "sought to monetize information" about her internet usage or "stored [her] information with a future sale in mind." *Google*, 806 F.3d at 149.

  Third, Ingrao fails to allege she incurred any costs, such as spending any money to cure any computer system or data that AddShoppers or Nutrisystem altered, damaged, or deleted. *Id.*

  Fourth, Ingrao makes only the general allegation that, "[a]s a direct and proximate result of AddShoppers' unlawful conduct under California Penal Code § 502, AddShoppers has caused loss to Plaintiff and the class members in an amount to be proven at trial." (Compl. ¶ 146.)  This is a mere legal conclusion that should be disregarded when ruling on a motion to dismiss. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (finding legal conclusions "are not entitled to the assumption of truth").

  Finally, during oral argument, plaintiff's counsel simply relied on the California litigation's ruling in *McClung* to support damage or loss under Ingrao's CDAFA claim.  But *McClung* is out

11

of circuit and non-binding on this Court, unlike *Google* which mandates dismissal under binding Third Circuit precedent.

Accordingly, for the same reasons as set forth in *Google*, Ingrao's CDAFA claim should be dismissed. Ingrao's CDAFA claim also fails for all the reasons set forth in Nutrisystem's motion to dismiss and reply in support (ECF Nos. 25, 53) and for all the reasons raised by Nutrisystem's counsel at oral argument, including because she failed to allege specific elements of her subclaims, such as that her data was accessed in contravention of technical or code-based barriers.

### III. CONCLUSION

For any and all of these reasons, those set forth in Nutrisystem's motion to dismiss and reply in support thereof (ECF Nos. 25, 53), and those provided during oral argument on September 13, 2024, Nutrisystem requests that the Court dismiss all claims against Nutrisystem.

Dated:  October 15, 2024                                          Respectfully submitted,

/s/

Joseph Wolfson
**STEVENS & LEE, P.C.**
1500 Market Street
East Tower, Suite 1800
Philadelphia, PA 19102
Telephone: (215) 751-1249
Email: joseph.wolfson@stevenslee.com

Ari N. Rothman (*pro hac vice*)
Jane B. Baber (*pro hac vice*)
**VENABLE LLP**
600 Massachusetts Avenue NW
Washington, D.C. 20001
Telephone: (202) 344-4000
Email: anrothman@venable.com
Email: jbbaber@venable.com

*Attorneys for defendant Nutrisystem, Inc.*

**CERTIFICATE OF SERVICE**

    I, JOSEPH WOLFSON, ESQUIRE, certify that on this date, the foregoing Supplemental Brief in support of Nutrisystem's Motion to Dismiss has been filed electronically, and is available for viewing and downloading from the ECF System, has been served via the Court's electronic filing service on all counsel of record.

By: _____

Joseph Wolfson, Esquire

Dated: October 15, 2024