UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMELIA INGRAO, AND ELIZABETH PACANA, individually and on behalf of all others similarly situated,<br><br>**Plaintiffs,**<br><br>v.<br><br>ADDSHOPPERS, INC., NUTRISYSTEM, INC., VIVINT, INC.<br><br>**Defendants.** | Civil Action No: 2:24-cv-01022-JHS |

**ADDSHOPPERS, INC.'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO DISMISS CLASS ACTION COMPLAINT**

Pursuant to the Court's order at the hearing on September 13, 2024, *see* Dkt. 65, Defendant AddShoppers, Inc. ("AddShoppers"), by and through its undersigned counsel, submits this Supplemental Memorandum in support of AddShoppers' Motion to Dismiss the Class Action Complaint. Dkt. 31. For the reasons set forth herein, in the prior briefing, and at the September 13, 2024 hearing, AddShoppers' Motion to Dismiss should be granted.

**I.    INTRODUCTION**

The Third Circuit's recent decision in *Hasson v. FullStory, Inc.*, 114 F.4th 181 (3d Cir. 2024) ("*Hasson*") controls here, and it forecloses the Court from exercising personal jurisdiction over AddShoppers. Plaintiffs have not indicated that they could plausibly amend the complaint, and thus dismissal of the entire action as to AddShoppers, without leave to amend, is warranted.

In *Hasson*, the Court held that where a defendant allegedly provided software code to companies who used it on their nationally available websites to "track" the internet activity of a Pennsylvania resident who visited the site, this does not satisfy "express aiming" under the

1

"effects" test in *Calder v. Jones*, 465 U.S. 783 (1984) ("*Calder*"). *Hasson* at 195-196. Just like the defendant in *Hasson*, AddShoppers allegedly provided its software code to two companies who allegedly used it to "track" Plaintiffs' internet activity when Plaintiffs visited the defendants' nationally available websites. Indeed, Plaintiffs' allegations are even more tenuous than in *Hasson*, where the plaintiff was a Pennsylvania resident who was allegedly "wiretapped" while in Pennsylvania. Here, by contrast, Plaintiff Amelia Ingrao ("Ingrao") is a California resident, and neither Plaintiff alleges (or contends they can allege, if given leave to do so) they were in Pennsylvania when their internet activity was supposedly tracked.

The "traditional" test for personal jurisdiction as established by *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351 (2021) ("*Ford Motor*") does not apply here, and if it did, it also does not establish jurisdiction. AddShoppers is a Delaware corporation located in North Carolina, and there are no allegations it has offices, employees or any alleged presence in Pennsylvania. It did not purposely avail itself of conducting activities in this State. Plaintiffs do not allege they were in Pennsylvania when they were allegedly "wiretapped" by AddShoppers. Nor do Plaintiffs' claims arise out of or relate to any contacts AddShoppers allegedly had with Pennsylvania. It would be patently unfair and unjust to require AddShoppers to be forced to litigate a putative class action in a forum, like Pennsylvania, with which it has essentially no contacts.

## II. *HASSON* FORECLOSES THE COURT FROM EXERCISING PERSONAL JURISDICTION OVER ADDSHOPPERS

In *Hasson*,[1] the plaintiff (Hasson), a Pennsylvania resident, alleged the defendant (FullStory), a Delaware corporation located in Georgia, "unlawfully wiretapped him" by

---

[1] The court decided two related appeals: *Hasson v. Fullstory, Inc.*, No. 2:22-cv-1246, 2023 U.S. Dist. LEXIS 127761 (W.D. Pa. July 25, 2023) and *Schnur v. Papa John's Int'l, Inc.*, 2:22-CV-1620 NR, 2023 U.S Dist. LEXIS 150947 (W.D. Pa. Aug. 28, 2023).

"deploy[ing] a script of computer code" that "intercept[ed] his online communications" when he visited a website. *See Hasson*, 114 F.4th at 185-187. Plaintiff claimed the court had personal jurisdiction over FullStory because: 1) "FullStory partnered with Pennsylvania companies whose websites are accessible there and other website operators who do business in the Commonwealth," like the website on which he was allegedly tracked, 2) "FullStory received communications intercepted from Pennsylvanians while they were in Pennsylvania and commercialized Pennsylvanians' geographical data by sending it to website operators in an analytically useful way," and 3) FullStory knew it was "collecting communications from Pennsylvanians" because it received their "geolocation data." *Id*. at 195 (cleaned up). These alleged facts, however, did not satisfy the "express aiming" test under *Calder*. *Id*. at 195-196.

What was missing, the *Hasson* Court explained, were allegations the website the plaintiff visited intentionally <u>targeted</u> Pennsylvania, and that FullStory knew about or participated in the alleged targeting. *Id*. The Court reasoned "if a retailer does not expressly target Pennsylvania merely by operating a website that is accessible here, neither does a software company simply by providing code for that website." *Id*. It did not matter, the *Hasson* Court explained, that FullStory knew the retailers conducted business or made their websites accessible in Pennsylvania. *Id*. at 196. And the *Hasson* Court reiterated that "while a defendant's 'knowledge that the plaintiff is located in the forum is necessary to the application of *Calder*,' that knowledge 'alone is insufficient to satisfy the targeting prong of the effects test.'" *Id*. (quoting *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 266 (3d Cir. 1998)). As the Court explained,

> Hasson had to do more than allege that FullStory harmed him while he happened to be residing in Pennsylvania. []. He had to plead that FullStory *knew* that he would suffer the brunt of the harm caused by the tortious conduct *in the forum*. []. But Hasson's allegations and evidence do not affirmatively prove that FullStory knew that it was targeting him in Pennsylvania when the code was dispatched to

3

his browser.  Hasson did not allege that FullStory knew that he – or any other user – was in Pennsylvania before [the code] was dispatched to his browser.

*Id*. at 196 (emphasis in original, cleaned up).  FullStory was "a degree removed from the alleged harm," the court reasoned, because it was the retailer (not FullStory) that decided "to host the code on its website," and it was "Hasson's decision to access the website while in Pennsylvania." *Id*. "[J]urisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct *by the defendant* that creates the necessary contacts with the forum, not the unilateral activity of a plaintiff, [] or a third person []." *Id*. (emphasis in original, cleaned up).

*Hasson* controls the personal jurisdiction analysis here.  Neither Plaintiff contends they were in Pennsylvania when their browsing activity was allegedly tracked.  This fact alone precludes Plaintiffs from satisfying the "express aiming" element of *Calder*.  Separately, as in *Hasson*, Plaintiffs also do not allege the websites they visited intentionally targeted Pennsylvanians, let alone that AddShoppers knew about or participated in the alleged targeting. Nor are there allegations AddShoppers knew where Plaintiffs – or anyone else – were located before its code was used to allegedly "wiretap" them.  Under *Hasson*, Plaintiffs cannot establish personal jurisdiction consistent with *Calder*.[2]

/ / /

/ / /

/ / /

---

[2] It is irrelevant that AddShoppers allegedly sent emails to Plaintiffs and others who were allegedly "tracked."  The test is whether AddShoppers "expressly aimed its allegedly <u>tortious</u> conduct at Pennsylvania." *Id*. at 196 (emphasis added).  Plaintiffs' claims are not based on the sending of emails. *See* Dkt. 1, ¶¶ 72, 96-110, 135-48.  Moreover, Plaintiffs do not allege there was anything Pennsylvania-specific about the emails, or that AddShoppers knew where Plaintiffs were located when the emails were sent.  Thus, even if Plaintiffs' claims were based on the alleged emails (they are not), the emails would not satisfy "express aiming." *See Hasson*, 114 F.4th at 195-196.

### III.  THE "TRADITIONAL" TEST FOR PERSONAL JURISDICTION DOES NOT APPLY TO THESE ALLEGED FACTS

At the hearing, Plaintiffs argued (for the first time) that the Court has personal jurisdiction over AddShoppers under the "traditional" test.  *See* Transcript, p. 38.  They are wrong, *see infra* IV, but the Court does not need to apply the "traditional" test here.

In *Hasson*, the Third Circuit confirmed the *Calder* test applies "where the allegedly tortious conduct occurs outside the forum but is felt inside the forum."  *See Hasson*, 114 F.4th at 197.  However, because the plaintiff in *Hasson* was allegedly "wiretapped [] in Pennsylvania," the court found the district court should have also considered personal jurisdiction under the "traditional" test in *Ford Motor*.  *Id*.

Unlike the plaintiff in *Hasson*, however, Plaintiffs do not allege they were located in Pennsylvania when they were supposedly "wiretapped."  Ingrao, a California resident, has no alleged connection whatsoever to Pennsylvania. Although Plaintiff Elisabeth Pacana ("Pacana") is allegedly a resident of Pennsylvania, she never says she was in Pennsylvania when her internet activity was allegedly "tracked."  Her residence here is not enough.  *See Rudolph v. Safari Club Int'l*, 2013 U.S. Dist. LEXIS 38790, at *12-13; 19-21 (W.D. Pa. Mar. 20, 2013) (allegations that plaintiff was Pennsylvania resident who suffered brunt of harm caused by tortious conduct in Pennsylvania were too conclusory to satisfy *Calder* test).  Indeed, Pacana does not allege what type of device she was using when she was allegedly tracked.  *See* Dkt. 1, ¶¶ 60-66.  If it was her cell phone, laptop, tablet, or some other portable device, she could have been located anywhere. Regardless, because neither Plaintiff alleges the purported "wiretapping" occurred while they were in Pennsylvania, there is no reason to consider the "traditional" test. The Court's personal jurisdiction analysis should begin and end with *Calder*.

IV.  **THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER ADDSHOPPERS UNDER THE "TRADITIONAL" TEST**

Personal jurisdiction would still be lacking even if the "traditional" test applied here. Under that test, Plaintiffs must first "show that [AddShoppers] has minimum contacts with the forum such that it 'purposefully availed itself of the privilege of conducting activities within the forum and invoked the benefits and protections of the forum's laws." *See Hasson*, 114 F.4th at 186 (citations and quotation marks omitted, cleaned up). Second, Plaintiffs must demonstrate their "claims must arise out of or relate to at least some of those contacts, [], evidencing a strong relationship among [AddShoppers], the forum, and the litigation." *Id*. (citations and quotation marks omitted). Finally, Plaintiffs have the burden to prove "the exercise of jurisdiction over [AddShoppers would] comport with traditional notions of fair play and substantial justice such that [AddShoppers] should reasonably anticipate being haled into court in that forum." *Id*. (citations and quotation marks omitted). None of these elements are satisfied here.

A.  **AddShoppers Did Not Purposefully Avail Itself Of The Privilege Of Conducting Activities In Pennsylvania**

Plaintiffs cannot satisfy the purposeful availment prong of the "traditional" test. They do not allege that AddShoppers engaged in advertising, has any offices, or employs anyone in Pennsylvania. The vague allegation that AddShoppers provided its software code for use on "many Pennsylvania companies' websites[,]"is also insufficient. *See* Dkt. 1, ¶ 14.[3] The "mere

---

[3] Plaintiffs do not allege that AddShoppers had a contract with Nutrisystem, Inc. or any other Pennsylvania company. But even if they had, it is well-settled that, "[c]ontracting with a resident of the forum state does not alone justify the exercise of personal jurisdiction over a non-resident defendant." *Mellon Bank (East) v. DiVeronica Bros., Inc*., 983 F.2d 551, 557 (3d Cir. 1993) (quotation omitted); *see also Vetrotex Certaineed Corp. v. Consolidated Fiber Glass Prods. Co*., 75 F.3d 147, 151 (3d Cir. 1996); *Grand Entertainment Grp. Ltd. v. Star Media Sales, Inc*., 988 F.2d 476, 482 (3d Cir. 1994) ("[A] contract alone does not automatically establish sufficient minimum contacts in the other party's home forum." (citation and quotation marks omitted)). Nor are communications between the contracting parties sufficient to establish purposeful availment.

6

operation of a commercially interactive website" is not enough to establish purposeful availment. *See Toys "R" Us, Inc. v. Step Two S.A.*, 318 F.3d 446, 454 (3d Cir. 2003). Rather, "there must be evidence that the defendant 'purposefully availed' itself of conducting activity in the forum state, by directly targeting its website to the state, knowingly interacting with residents of the forum state via its website, or through sufficient other related contacts." *Id.* If this were not the rule, website operators and vendors who provide technology for those websites would be subject to personal jurisdiction everywhere, which would offend due process. *See, e.g., Admar Int'l v. Eastrock, LLC*, 18 F.4th 783, 788 (5th Cir. 2021) (operating a website does not create "minimum contacts with all 50 states" because accessibility "does not constitute the purposeful availment required to establish personal jurisdiction under longstanding principles of due process"); *be2 LLC v. Ivanov*, 642 F.3d 555, 558-559 (7th Cir. 2011) (similar).

A website operator's use of software code that allegedly "tracks" website visitors does not satisfy the purposeful availment prong merely because a resident of the forum state visits the website. *See, e.g.*, *Rosenthal v. Bloomingdales, Inc.*, 101 F.4th 90, 97 (1st Cir. 2024) (plaintiff did not demonstrate website operator "purposefully deployed [the code on its website] to intentionally target users in Massachusetts."); *Hernandez v. Bloomingdale's Inc.*, No. 23-cv-00519-LKG, 2024 U.S. Dist. LEXIS 131296, *10 (D. Md. July 25, 2024) (allegations that Maryland resident was tracked on defendant's nationally available website insufficient to demonstrate purposeful availment). As the First Circuit explained,

> [a]lthough the allegations and evidence that the plaintiff does provide do show that Bloomingdales intentionally targeted the plaintiff when he happened to be in

---

*See Creative Waste Mgmt., Inc. v. Capitol Envtl. Servs.*, No. 04-1060, 2004 U.S. Dist. LEXIS 21497, *19 (E.D. Pa. Oct. 22, 2004) ("It is well established that informational communications in furtherance of a contract between a resident and a nonresident does not establish the purposeful activity necessary for a valid assertion of personal jurisdiction over the nonresident defendant." (citation and quotation marks omitted)).

Massachusetts, they do not affirmatively prove that Bloomingdales <u>knew</u> that it was targeting him in Massachusetts.

*Rosenthal*, 101 F.4th at 97 (emphasis in original; citation omitted). The Third Circuit in *Hasson* relied on *Rosenthal* in conducting its personal jurisdiction analysis. *See Hasson*, 114 F.4th at 191, 196.

If purposeful availment is not satisfied as to website operators who <u>actually use</u> the code that supposedly tracks the internet activity of site visitors, then personal jurisdiction plainly is not established as to companies, like AddShoppers, who merely provide the code. *Hasson,* at 195-196 ("if a retailer does not expressly target Pennsylvania merely by operating a website that is accessible there, neither does a software company simply by providing the code for that website").[4]

Lastly, that AddShoppers allegedly sent emails to Pennsylvanians does not establish purposeful availment. There is no allegation AddShoppers <u>knew</u> the recipients were in Pennsylvania before the emails were sent. And Plaintiffs have not alleged they were in Pennsylvania when they received emails from AddShoppers. It is irrelevant if AddShoppers knew that, generally speaking, it was possible Pennsylvanians might access websites that contained its code. *See Rosenthal*, 101 F.4th at 97 at n. 1 ("The fact that Bloomingdales presumably knew that its website was being accessed by users located in Massachusetts given that it operated a nationally available website is beside the point. What is crucially lacking here is that Bloomingdales had the specific knowledge and intent that it was operating its website and [the code] on the plaintiff's Massachusetts-based browser when it allegedly gave rise to the injuries in the complaint.")

---

[4] While the *Hasson* Court left open the possibility that the plaintiff could establish personal jurisdiction over FullStory under the "traditional" test based on its "contacts" with other Pennsylvania companies that use its code, the court did not find or suggest that merely providing the code to Pennsylvania companies is sufficient. *See Hasson*, 114 F.4th at 197. It is not.

### B. Plaintiffs' Claims Do Not Arise Out Of Or Relate To Any Of AddShoppers' Alleged Contacts With Pennsylvania

Pacana's claims unquestionably do not arise out of relate to any of AddShoppers' purported contacts with Pennsylvania. She was allegedly "tracked" when she visited the websites of a Georgia company (Lamin-X) and a Delaware company located in Utah (Vivint). *See* Dkt. 31-1 at ECF p. 9; Dkt. 1, ¶¶ 61-63. Thus, there is no relationship, let alone a "strong relationship" between AddShoppers, Pennsylvania, and Pacana's claims. *See Hasson*, 114 F.4th at 194 ("unlike the plaintiffs in *Ford Motor*, [plaintiff's] complaint lacks a 'strong relationship' between Pennsylvania and [defendant's] use of [the] code" that allegedly track plaintiff).[5]

Nor does Ingrao's claim against AddShoppers – for purportedly violating California's Computer Access and Data Fraud Act (*see* Dkt. 1, ¶¶ 135-148) – arise out of or relate to AddShoppers' alleged contacts with Pennsylvania. "[B]ecause the traditional test's 'relate to' requirement 'incorporates real limits,' [the plaintiff] must offer facts regarding [the defendant's] efforts to specifically direct or connect *Pennsylvanians* to the alleged harm." *Hasson*, 114 F.4th at 194 (emphasis in original) (quoting *Ford Motor*, 592 U.S. at 362). That AddShoppers' code was allegedly used by another defendant (Nutrisystem, Inc.) to track the internet activity of a California resident (Ingrao) who visited that defendant's nationally available website. This cannot possibly establish an effort by AddShoppers "to specifically direct or connect *Pennsylvanians* to the alleged harm." *Id*. The "connection is too weak." *Id*. at 193.[6]

---

[5] The personal jurisdiction "determination is claim specific," so Pacana and Ingrao must establish the Court has personal jurisdiction over AddShoppers as to each of their claims. *See* Dkt. 56 at ECF p. 4, n. 1.

[6] Nor are the emails AddShoppers allegedly sent Plaintiffs sufficient, because their claims are not related to the sending of emails. *See* Dkt. 1, ¶¶ 72, 96-110, 135-48. Moreover, there is no allegation AddShoppers knew the recipients were in Pennsylvania before the emails were sent. Thus, the emails also do not demonstrate "efforts" by AddShoppers "to specifically direct or

9

### C. The Exercise Of Jurisdiction Over AddShoppers Would Not Comport With The Notions Of Fair Play And Substantial Justice

"To determine whether the exercise of jurisdiction is reasonable and comports with 'traditional notions of fair play and substantial justice,' courts consider the following factors: the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the judicial system's interest in obtaining efficient results." *Fisher v. Teva PFC SRL*, 212 Fed. Appx. 72, 77 (3d Cir. Dec. 22, 2006) (citing *Asahi Metal Ind. Co. v. Superior Court of Cal.*, 480 U.S. 102, 114 (1987)). All these factors demonstrate exercising jurisdiction over AddShoppers in this court would offend the notions of fair play and would be substantially unjust.

The burden placed on AddShoppers – a North Carolina company with no alleged presence in Pennsylvania – of having to defend a class action lawsuit in Pennsylvania would questionably be substantial. Pennsylvania has little, if any, interest in the lawsuit, as Ingrao is a California resident and neither Plaintiff alleges they were "tracked" while in Pennsylvania. Ingrao does not have any interest obtaining relief in Pennsylvania, as she is a member of a putative class seeking the same relief against AddShoppers in California. Pacana's claims are based on alleged visits to websites hosted by companies located in Georgia and Utah (not Pennsylvania). Finally, given that most of the parties (including one of two Plaintiffs) are located outside of Pennsylvania, *see* Dkt. 31-1 at pp. 7-8, exercising personal jurisdiction over AddShoppers would not further the judicial system's interest in obtaining efficient results.

### VI. <u>CONCLUSION</u>

For the reasons stated herein, in AddShoppers' prior briefs, and at the September 13, 2024 hearing, AddShoppers respectfully requests that the Court dismiss Plaintiffs' claims against it for

---

connect *Pennsylvanians* to the alleged harm." *See Hasson*, 114 F.4th at 194 (emphasis in original) (quoting *Ford Motor*, 592 U.S. at 362).

lack of personal jurisdiction or, in the alternative, for failure to state a claim on which relief can be granted. Absent dismissal, AddShoppers requests the Court stay this action pending a final judgment in the *McClung* action.

|  | RESPECTFULLY SUBMITTED: |
|---|---|
| Dated: October 15, 2024 | **WOMBLE BOND DICKINSON (US) LLP** |

*/s/ Sarah E. Meyer*
Sarah E. Meyer (Pa. Bar No. 319388)
100 Light Street, 26th Floor
Baltimore, MD 21202
Phone: (410) 545-5807
Email: Sarah.Meyer@wbd-us.com

*/s/ Tomio B. Narita*
Tomio B. Narita (admitted *pro hac vice*)
50 California Street, Suite 2750
San Francisco, CA 94111
Phone: (415) 765-6274
Email: Tomio.Narita@wbd-us.com

*/s/ Jeffrey A. Topor*
Jeffrey A. Topor (admitted *pro hac vice*)
50 California Street, Suite 2750
San Francisco, CA 94111
Phone: (415) 765-6276
Email: Jeff.Topor@wbd-us.com

Attorneys for Defendant AddShoppers, Inc.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on October 15, 2024, a copy of the foregoing was filed and served via the Court's CM/ECF system upon all counsel of record.

*/s/ Sarah E. Meyer*
Sarah E. Meyer (Pa. Bar No. 319388)