**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| AMELIA INGRAO and ELISABETH PACANA, | : | |
| Plaintiffs, | : | Case No: 2:24-cv-1022-JHS |
| v. | : | |
| ADDSHOPPERS, INC., NUTRISYSTEM, INC., and VIVINT, INC., | : | |
| Defendants. | : | |

**VIVINT, INC.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY**

The supplemental authority submitted by Plaintiffs on October 25, 2024, is distinguishable from the present case and therefore irrelevant to the Motions to Dismiss pending before the Court. Plaintiffs submitted the case, *Salazar v. Nat'l Basketball Ass'n*, 2024 WL 4487971 (2d Cir. Oct. 15, 2024), in support of their Article III standing argument. But a review of *Salazar* shows that it is inapplicable to the subject case for multiple reasons:

1) *Salazar* originates from a district court in New York and is a Second Circuit decision; it is not authority from the Third Circuit or a court within the Third Circuit.

2) The "single cause of action" raised by the Plaintiff in *Salazar* was a violation of the Video Privacy Protection Act ("VPPA") 18 U.S.C. § 2710(b), which differs in material ways from the claim asserted by Pacana in this case. The VPPA was enacted in 1988 in response to a newspaper article entitled *The Bork Tapes*, which identified 146 videos that then-Supreme Court nominee Robert Bork had rented. *See Salazar*, 2024 WL 4487971, at *9. The article was printed during the confirmation hearings, with the aim of influencing the proceedings. In response, Congress later enacted the VPPA to prevent "video tape service providers"

from releasing personally identifiable information without a consumer's "informed, written consent." *Id*.

a) The aim of the VPPA and its elements are readily distinguishable from the Pennsylvania Wiretapping and Electronic Surveillance Control Act ("WESCA"), central to this case, further demonstrating that *Salazar* is not relevant to this case.

b) The VPPA specifically ensures a privacy interest in the list of videos watched by a consumer – but WESCA does not.

c) The VPPA requires "informed, written consent" before information can be released – but WESCA requires neither actual knowledge nor written consent.

d) The VPPA protects "personally identifiable information" tied to a consumer – but courts addressing WESCA hold that "Website Users who did not disclose highly sensitive personal information such as medical diagnosis information or financial data from banks or credit cards cannot establish concrete harm." *In re BPS Direct, LLC*, 2023 WL 8458245, at *12 (E.D. Pa. Dec. 5, 2023).

3) Further, the facts in *Salazar* are distinguishable from Pacana's allegations in numerous, significant ways.

a) The *Salazar* plaintiff "signed up for the NBA's online newsletter through NBA.com," and in doing so, "he exchanged personal information in return for emailed NBA-related updates." *Id*. at *1. Here, Ms. Pacana never signed up for any services with Vivint, and in fact, "never provided personal information (including her email) to Vivint." Complaint at ¶ 66.

b) The *Salazar* plaintiff's allegations centered around the NBA's partnership with Meta/Facebook, which is not a factor here. Mr. Salazar had a Facebook account

and alleged that he watched all of the NBA videos through his Facebook account. *Id*. at *3. Facebook has a unique user ID associated with every Facebook member, including Mr. Salazar, which he alleged was personally identifying information. Again, none of these factors are present or applicable for Ms. Pacana.

c) In *Salazar*, the plaintiff received "emails and other communications" from NBA. *Id*. at *3. Plaintiff Pacana does not allege that she ever received any emails or communications from Vivint.

4) In *Salazar*, the court ultimately determined that the plaintiff had standing because his personally identifiable information and his video viewing history was disclosed without his express written consent. *Id*. at *8. Here, as established in Plaintiff's Complaint and in Vivint's briefs before this Court, there was no disclosure of Pacana's "highly sensitive personal information such as medical diagnosis information or financial data from banks or credit cards cannot establish concrete harm," so the applicable legal standard for standing is not satisfied in this case. *In re BPS Direct, LLC*, 2023 WL 8458245, at *12 (E.D. Pa. Dec. 5, 2023).

In sum, Plaintiffs' reliance on *Salazar* is misplaced. If anything, *Salazar* actually highlights the determinative factor for standing analysis under WESCA: whether the claimant had an expectation of privacy. In *Salazar*, the VPPA expressly states that the consumer has a privacy interest in the videos he or she watches. In this case, WESCA does not provide a blanket expectation of privacy. Rather, the nature and extent of the website activity determines whether there is an expectation of privacy. And as discussed in prior briefing and during oral argument, browsing retail webpages does not implicate the type of privacy interests that would traditionally give rise to a cause of action. Plaintiff Pacana did not input any personal, confidential, medical,

or financial information on Vivint's website. Just like a consumer that walks through a brick-and-mortar store, Ms. Pacana had no privacy interest in the webpages that she perused. The *Salazar* case is distinguishable from the instant case in specific and material ways and should not be considered persuasive authority concerning the Defendants' Motions to Dismiss. Instead, the cases cited by Vivint in its previous briefing are on point and relevant to the issues presented in this case.

Respectfully submitted,

FROST BROWN TODD LLP

*/s/ Tara Hopper Rice*

Tara Hopper Rice
PA I.D. #313724
Union Trust Building
501 Grant Street, Suite 800
Pittsburgh, PA 15219
trice@fbtlaw.com

*Counsel for Defendant,*
*Vivint, Inc.*

## CERTIFICATE OF SERVICE

I, TARA HOPPER RICE, ESQUIRE, certify that on this date, the foregoing **VIVINT, INC.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY** has been filed electronically, and is available for viewing and downloading from the ECF System, has been served via the Court's electronic filing service on all counsel of record, and/or was also served via USPS on the following parties who have not consented to electronic service:

Charles E. Schaffer
**Levin Sedran & Berman**
510 Walnut Street, Suite 500
Philadelphia, PA 19106

J. Austin Moore *(pro hac vice)*
Norman E. Siegel *(pro hac vice)*
Kasey Youngentob *(pro hac vice)*
**Stueve Siegel Hanson LLP**
460 Nichols Road, Suite 200
Kansas City, MO 64112

*Attorneys for Plaintiffs,*
*Amelia Ingrao and Elisabeth Pacana*

Tomio B. Narita
**Womble Bond Dickinson**
50 California Street, Ste 2750
San Francisco, CA 94111

*Attorney for Defendant AddShoppers, Inc.*

Joseph Wolfson
**Stevens & Lee, P.C.**
1500 Market Street
East Tower, Suite 1800
Philadelphia, PA 19102

Ari N. Rothman *(pro hac vice)*
Jane B. Baber *(pro hac vice)*
**VENABLE LLP**
600 Massachusetts Avenue NW
Washington, D.C. 20001

*Attorneys for Defendant Nutrisystem, Inc.*

Dated: October 31, 2024

By: */s/ Tara Hopper Rice*
Tara Hopper Rice